**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

SPORTBOX, LLC. and
WILLIAM V. FRABIZIO III

        Plaintiffs,

v.

ELECTRIC-SPORTS, INC., JOHN E. CONWAY,
and MARK BORTMAN,

        Defendants.

CIVIL ACTION No.

04-12588 DPW

Referred to MJ RB Collinp

## COMPLAINT

Plaintiffs Sportbox, LLC. And William V. Frabizio III (Collectively "Plaintiffs") allege as follows:

### JURISDICTION AND VENUE

1. This is a civil action seeking damages and equitable and injunctive relief for violation of feral statues, in particular the Computer Fraud and Abuse Ac (18 U.S.C. § 1030) the Stored Communication Act (18 U.S.C. § 2701, *et seq.*), the Federal Wiretap Act (18 U.S.C. § 2510 *et seq.*) and the Copyright Act (17 U.S.C § 101 *et seq.*), as well as for violations of Massachusetts statutes and common law, in particular Massachusetts Wiretap Act (M.G.L. ch. 272 § 99), the Massachusetts common law and statues concerning the tortuous misappropriation of trade secret (M.G.L. ch. 93A, § 11) barring unfair and deceptive business practices, as well as for invasion of privacy, conversion and defamation.

2. This Court has jurisdiction over the subject matter of this complaint under 28 U.S.C. § 1331.1338(a) (Copyright), 18 U.S.C. § 1030 (Computer Fraud and Abuse Act), 18 U.S.C. § 2701 *et seq.* (Stored Communications Act); and 18 U.S.C. § 2510 *et seq.* (Federal Wiretap Act). This Court also has supplement jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(a).

## GENERAL ALLEGATIONS

### 1. Parties

4. Sportbox, LLC. ("Sportbox") is a Massachusetts Limited Liability Company with its principle place of business located at 17 Bridge Street, Newton, Massachusetts.

5. William V. Frabizio III ("Frabizio"), a resident of Newton, Massachusetts is the Chief Executive Officer of Sportbox and former employer of John E. Conway and Mark Bortman.

6. Electric-Sports, Inc. ("ESi") is a Delaware Corporation with its principal place of business located at 14 Mica Lane, Suite 202 Wellesley, Massachusetts.

7. John E. Conway ("Conway"), a resident of Winchester, Massachusetts, is the Chief Executive Officer of ESi and former consultant and was a paid Advisor on Sportbox's Board Of Advisors ("Board")

8. Mark Bortman ("Bortman"), a resident of Millis, Massachusetts, is the Marketing and Sales Officer of ESi and former marketing and salesperson of Sportbox

### 2. Background

9. For the past four (4) years, Frabizio has built Sportbox from the ground up. Prior to the fall of 2003 Mr. Frabizio worked graveyard shifts at many different venues throughout Boston for $10.00 per hour, so that he could concentrate on Sportbox during the daytime.

10. As of February 1, 2003 Frabizio secured a license, with a year of deferred payments, to produce branded miniature AM/FM radios for Major League Baseball ("MLB"). Frabizio continued to work his night job to try and pay the rent for his apartment in the non-affluent area of Newton, Nonantum, also known as "The Lake."

11. In the summer of 2003 MLB demanded 5,000 radios to put in their gift bags for their VIP's for the All-Star Game in Chicago. As a provision in Frabizio's License agreement, MLB has the right to demand up to fifteen thousand (15,000) radios or units.

12. Frabizio cashed in his, and his girlfriend's savings, got rid of his car, and in lieu of paying his rent made an agreement to his landlord whereas he would make major renovations to the apartment, but still had to pay his debt in full, without interest applied thereto, once he got back from Chicago and attained funding.

13. Mr. Frabizio produced the radios for MLB and was had work at the events leading up to All-Star Game, known as "Fan Fest."

14. MLB provided Sportbox with two tickets for the All-Star Game. In an attempt to get the attention of the IMG empire and its digital division TWIi, Frabizio offered both of his tickets to IMG along with VIP credentials to get in and out of convention center at will.

15. Frabizio was contacted by Conway and expressed interest on behalf of IMG. As of July 22, 2003 a Mutual Nondisclosure Agreement **[Exhibit A attached hereto]** was signed on behalf of IMG by Mr. James Nauen, VP of Digital Media Solutions.

16. Frabizio provided a business plan and many of the different radios, other technologies, and Sportbox relationships with all of the major league sports including, but not limited to, the National Football League ("NFL"), National Basketball Association ("NBA"), National Hockey League ("NHL"), and the National Collegiate Athletic Association ("NCAA").

17. Conway, in a letter dated July 31, 2003, **[Exhibit B attached hereto]** falsely represents many issues including finding funding in the amount of five million (5,000,000) dollars. IMG and/or TWIi had zero knowledge of this letter until now.

18. Sportbox, now in an agreement with IMG/TWIi, had moved its office to IMG/TWIi's local only to be to be locked out, without its files or computers, until Conway introduced two (2) investors, John Moriarty and Gerry Morris. Sportbox only attained 10% of the aforementioned funding, hence slowing operations and development.

19. Mr. Frabizio, to this day, never took home salary of which was verified by independent accountants and by Sportbox's investors.

20. In February of 2004 Conway introduced Bortman to Frabizio and Sportbox. Conway asked Sportbox to hire him as a favor. Conway provided Bortman's resume **[Exhibit C attached hereto]**, and assured Sportbox that a thorough background check and an investigation was conducted by IMG/TWIi.

21. Sportbox provided Bortman with an "Offer Letter" dated and signed by Bortman as of March 26, 2004 **[Exhibit D attached hereto]**. Accordingly, Bortman dated and signed a "Nondisclosure Non-Solicitation And Development Agreement For Employees" **[Exhibit E attached hereto]**.

22. Unbeknownst to Sportbox, Conway was asked to resign from IMG/TWIi for gross misconduct along with other charges of misrepresentation. IMG/TWIi provided a severance package. Conway told Frabizio that he decided he wanted to leave and would like to work for Sportbox. Sportbox agreed to have Conway on the Advisory Board as of March 25, 2004 of which he signed and dated the "Advisory Board, Advisory Agreement" **[Exhibit F attached hereto]** receiving compensation of ten-thousand (10,000) dollars yearly.

23. When Conway was leaving IMG/TWIi, he met with Sportbox and told Frabizio that he resigned in order to work for Sportbox. Sportbox provided a three month consulting agreement was signed and dated by Conway as of **[Exhibit G attached hereto]**

24. When Conway was leaving IMG/TWIi Frabizio offered a very unique deal that would consist of a trade of all of Conway's contacts for a Hewlett-Packard laptop computer. Conway has yet to part with his contact list promised to Sportbox.

25. Throughout August 2003 and November 2004 Sportbox maintain office space at 20 Guest Street, Brighton Landing East, in Brighton Massachusetts. During this time Frabizio allowed Conway and Bortman with open access to his office.

### 3. Defendants' Surreptitious Surveillance Of Frabizio, His Associates, and Friends.

26. Between April 2004 and August 2004 Bortman and Conway surreptitiously record oral and telephone conversation involving Frabizio using a mini-cassette audio recording device. Bortman and Conway would then transfer Frabizio's highly confidential conversations to Conway's computer. Bortman and

Conway were confronted about this issue and Bortman confessed that they were "just trying to keep track of all of the information so they didn't have to bother Frabizio for any names or telephone numbers" and that "the information never left the office" Bortman and/or Conway recorded conversation between Michael Napolitano (Major League Baseball), George Naddaff (Know-Fat-Low-Fat), Paul Stewart (Boston Bruins Foundation), Leo Donahue (Sportbox Investor), Todd McCormack (IMG), Bill Squadron (IMG), Scott Philips (EMS-Miami), and Greg Brownell (IMG). Bortman and Conway never provided and warning or notice or asked for consent to any method of surveillance, nor did Frabizio ever Consent.

27. Frabizio, upon notice of their illegal activities confiscated one of the conversations that Bortman had initiated with, Image Innovations, a potential partner of Sportbox on Thursday, August 05, 2004. **[Exhibit H attached to and enclosed herewith Compact Disk].**

28. Conway, a MIT Electrical Engineer and a NASA Engineer, has at his disposal a vast array of technology. Being so, Frabizio suspected that his computer had been tampered with and that listen devices had been put throughout the office and yet more disgusting and sick the men's and women's bathrooms.

29. Bortman's admitted underhanded dealings with recording conversations, aligned with Conway's technical knowledge became would be criminal. After Frabizio received the aforementioned recording he discovered a "key logging" device on his office computer of which Conway and Bortman had twenty-four (24) hours access, for seven (7) days a week completed the ring of corporate espionage and current sabotage.

30. Bortman and Conway had recorded and pilfered a significant amount of trade knowledge and secrets that they were taking as much information about Frabizio, even illegally accessing and tampering with his personal credit file (admitted by Conway and Bortman in the presence of two attorneys, and officers of the court, Peter Hermes and David Hutchinson). Conway and Bortman had very easily taken advantage of Frabizio, even stealing his Corporate Bank Card for transactions over the world wide web.

### 4. Conway and Bortman Leave Sportbox

31. After months suspicious conduct by Conway, Frabizio states his concerns in a very calm manner. What Frabizio suspected then is now true, and given his position Frabizio attempted to initiate a friendly dialogue with Conway at such time goes into a rant nothing short of a person who has lost contact of reality. Conway continues to state that he and Bortman are older and how they would run "their company."

32. Frabizio then warns Conway and Bortman that they are both contractually bound not to disclose any information, and not to work in any interest to the contrary of Sportbox success.

33. In July 2004 Conway and Bortman started to take orders from for radios but never instructed Frabizio, hence making sure that Sportbox was not going to fulfill purchase orders and the company's reputation was completely sabotaged and did not receive needed sales opportunities.

34. In July of 2004, Frabizio was informed that Conway, supposedly as a joke, was using a U.P.C. bar code from a tube of adult sexual lubrication jelly that his wife bought for him, supposedly as a joke, for when he "slips-out of the assholes at IMG." Frabizio, not knowing anything about U.P.C bar codes at that time. Frabizio's attorneys advised him to make sure that Conway ceases this action immediately; adding that the use thereof bar codes is proprietary for every company.

35. Conway and Bortman had now taken all of the intellectual, trade, copyright, and/or all other information of the like, including tangible property that they could now destroy Sportbox with the help of one Attorney Michele A. Whitham. Initially Ms. Whitham was provided with all of Sportbox's extremely confidential information including, but not limited to investors, trade secrets, production, shipping, corporate structure, and all of the other facets of the company that were furnished for her and her associates, specifically Jeffrey Quillen, David Broadwin, Michael Boudett, and Eric Damon to represent Sportbox of which transpired on or about Friday, July 9, 2004 **[Exhibits G attached hereto]**

36. Conway proceeded on a campaign between Friday August 6 and Tuesday August 10 to quite literally assassinate Frabizio's character, good name, and business life. Conway wrote an open letter to investors and attorneys alike alleging that Frabizio was in some way shape or form mentally ill. Coincidently, Conway cleaned out his new office in the week prior, taking home all of his family pictures, trinkets, and gadgets.

37. Conway's efforts were not received well by Frabizio or any of Sportbox's investors. Conway's letter prompted a very serious meeting with all of the investors, Bortman, and Conway at which time the investors, Bortman, and Conway had an open floor to air any complaints that they had to any and all of Sportbox's investors and executives. Notably there were no questions asked by Conway that did not receive a clear and concise answer satisfactory to his, but more importantly any of the investors complete satisfaction.

### 5. Defendants' theft of Frabizio and Sportbox's Property.

38. Any and perhaps all the software license contained on Conway's "Hewlett-Packard" laptop computer. Discounting the fact that Conway has never handed over his contacts as per the agreement for the hardware. The majority of the systems software, including its XP operating system, is still the property of Sportbox.

### 6. Defendants' Theft of the Sportbox Business Plan

39. Conway and Bortman outright stole trade Secrets, Copyrights, Passwords, Contacts, legal documents, financial documents, vendors, corporate structure, and everything else of the like with the direct intent of starting their own company to rival Sportbox.

40. During their time at Sportbox they had access to all of the files, but managed to break in to Frabizio's files computer files and copied, identically in most cases, formatting, structure, and verbiage, with such blatant disregard for the law that it is frivolous and insulting to entertain any ideas to the contrary.

41. Frabizio and Sportbox rely on the weight of the documents set fourth from Sportbox **[Exhibits H attached hereto]** a Sportbox Business Plan for past funding and projections for investors created by Sportbox and Frabizio as compared to Documents legally sent to Sportbox by Conway **[Exhibits I attached hereto]** the "Sportswhere" Business Plan.

42. Conway and Bortman have breached numerous provisions in their aforementioned contracts, nondisclosure, non-compete, etc… All previously contained in this complaint.

### Count I

**Violation of the Computer Fraud and abuse act as amended by the USA Patriot Act of 2001 (18 U.S.C § 1030)**

43. Plaintiff incorporates the allegations in each of the foregoing paragraphs as is fully set forth herein.

Defendant wrongful course of conduct, as set forth above, constitutes violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, because Defendants intentionally accessed a computer without authorization and/or exceeded authorized access, and thereby obtained information from a protected computer in a manner that involved interstate or foreign communications.

## Count II

**Violations of the Stored Communications Act. (18 U.S.C. § 2701, *et seq.*)**

44. Plaintiff incorporates the allegations in each of the foregoing paragraphs as is fully set forth herein.

45. Defendants' wronglul course of conduct, as set forth above, constitutes a violation of the Electronic Comminication Privacy Act 18 U.S.C. § 2701, *et seq.*, because the Defendants intentionally accessed without the authorization and/or intentionall exceeded their authorization to access a facility through which an electronic communication service is provided and thereby obtained, altered or prevented authorized access to a wire or electronic communications while they were in electronic storage.

46. Plaintiffs have been and continue to be damaged by Defendants' conduct and, pursuat to 18 U.S.C. § 2707, Plaintiffs are entitled to such preliminary or other equitable or declaratory relief as may be appropriate, actual damages to equal or exceed $1,000 in statutory damages, disgorgment of the profits Defendant have earned as a result of their illegal conduct, punitive damages, as well as costs and reasonable attorneys' fees.

## Count III

Copyright Infringement (17 U.S.C. § 101, et seq.)

47. Plaintiff incorporates the allegations in each of the foregoing paragraphs as is fully set forth herein.

48. Plaintiffs are, and at all relevant times have been the copyright owners or licensees of the exclusive right under United States copyright to the Sportbox business plan, concerning which an application is currently pending before the Regiser of Copyrights

49. Among the exclusive rights granted to plaintiffs under the Copyright Act are the exclusive rights to reproduce the copyrighted works.

50. Defendants obtained unauthorized access to the Plaintiffs' copyrighted works and made unauthorized electronic copies in violation of the Plaintiffs' exclusive rights of reproduction. Defendants' actions constitute infringement of Plaintiffs' copyrights.

51. The forgoing acts of infringement have been willful and intention in disregard of and with indifference to the rights of the Plaintiffs

52. Plaintiffs have been and continue to be damaged by Defendats' conduct and, pursuant to 15 U.S.C. §§ 501-05, Plaintiffs are entitled to temporary and permanent injunctive relief, impoundment of infringing copies of copyrighted works, actual damages, and disgorgement of the profits Defendant have earned as a result of their illegal conduct, or, in the alternative, statutory damages up to $150,000 per infringement, as well as costs and reasonable attorneys' fees.

Count IV

Violations of the Federal Wiretap act (18 U.S.C. § 2510. *et seq.*)

53. Plaintiff incorporates the allegations in each of the foregoing paragraphs as is fully set forth herein.

54. Defendants intentionally intercepted, endeavored to intercept, and/or procured another person to intercept or endeavor to intercept, Plaintiffs wire, oral, or electronic communications.

55.     Defendants intentionally disclosed and endeavored to disclose, to another person the contents of Plaintiffs' wire, oral and electronic communications, knowing and having reason to know that the information was obtained through the illegal interception of Plaintiffs' wire, oral, and electronic communication.

### Count V

### Violations of the Massachusetts Wiretap Act (M.G.L. ch. 272 § 99)

56.     Plaintiff incorporates the allegations in each of the foregoing paragraphs as is fully set forth herein.

### Count VI

### Misappropriation of Trade Secrets, Confidential and proprietary Information

57.     Plaintiff incorporates the allegations in each of the foregoing paragraphs as is fully set forth herein.

### Count VII

### Violation of M.G.L. Ch. 93§§ 42 abd 42A

58.     Plaintiff incorporates the allegations in each of the foregoing paragraphs as is fully set forth herein.

### Count VIII

### Violation of Massachusetts Consumer Protection Act. (M.G.L. ch. 93A, § 11

59.     Plaintiff incorporates the allegations in each of the foregoing paragraphs as is fully set forth herein. Plaintiff incorporates the allegations in each of the foregoing paragraphs as is fully set forth herein.

### Count IX

**Invasion of Privacy**

60.     Plaintiff incorporates the allegations in each of the foregoing paragraphs as is fully set forth herein.

### Count X

### Conversion of Frabizio's personal computer files

61.     Plaintiff incorporates the allegations in each of the foregoing paragraphs as is fully set forth herein.

### Count XI

### Defamation

62.     Plaintiff incorporates the allegations in each of the foregoing paragraphs as is fully set forth herein.

### Equitable Relief

63.     Plaintiff incorporates the allegations in each of the foregoing paragraphs as is fully set forth herein.

64.     Unless a temporary Restraining Order is issued, substantial and irreparable injury to Plaintiff's business, property, and reputation will be unavoidable.

**WHEREFORE,** Plaintiffs respectfully request that this honorable Court:

1.   Allow Plaintiffs to amend this Complaint within a reasonable amount of time as deemed by this court

2.   Provide the Plaintiffs with a reasonable amount of time to acquire proper legal counsel or representation accordinly

3.  Grant Plaintiff equitable relief by a Temporary Restraining Order issued without hearing, to be continued until hearing, and after that made permanent, restraining and enjoining Defendant, their agents, and all those acting in concert, sympathy or conspiring with them to the determent of the plaintiffs

Sportbox, LLC.

*[signature]*

William V. Frabizio III
Pro Se
Sportbox, LLC.
107 Bridge Street
Newton, MA 02458
(617) 916-1862

Dated: December 10, 2004