UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SPORTBOX LLC, and<br>WILLIAM V. FRABIZIO III<br><br>       Plaintiffs,<br><br>v.<br><br>ELECTRIC-SPORTS, INC.,<br>JOHN E. CONWAY, and MARK BORTMAN<br><br>       Defendants. | CIVIL ACTION No. 04-12588 DPW<br><br>**ANSWER AND<br>AFFIRMATIVE DEFENSES** |

| | |
|---|---|
| ELECTRIC SPORTS, INC.,<br>JOHN E. CONWAY, and MARK BORTMAN<br><br>       Plaintiffs in Counterclaim,<br><br>v.<br><br>SPORTBOX LLC, and<br>WILLIAM V. FRABIZIO III<br><br>       Defendants in Counterclaim. | CIVIL ACTION No. 04-12588 DPW<br><br>**VERIFIED COUNTERCLAIMS** |

### DEFENDANTS' ANSWER TO
### PLAINTIFF WILLIAM V. FRABIZIO III'S AMENDED COMPLAINT[1]

Pursuant to Fed. R. Civ. P. 8 and 12, Defendants Electric Sports. Inc., John E. Conway

and Mark Bortman (collectively, the "Defendants") answer as follows in response to the

numbered allegations set forth in Plaintiff William V. Frabizio III's Amended Complaint:[2]

---

[1] As is set forth in Defendants' Motion to Dismiss Complaint as to Sportbox LLC For Failure to Appear, Sportbox LLC -- as a corporate defendant unrepresented by counsel -- has not (as a matter of black letter law) appeared in this action, asserted legal claims against the Defendants, or engaged the jurisdiction or process of this Court. In consequence, the Complaint and Amended Complaint, the Summons issued in this case, and service of process on the Defendants are all defective as to Sportbox pursuant to Fed. R. Civ. P. 4, 7, 11. The lawsuit should thus be dismissed in its entirety as to Sportbox, pursuant to Fed. R. Civ. P. 12(b)(4), 12(b)(6) and 41(b) and the Defendants have so moved and answer here only as those claims properly asserted by the individual plaintiff, William V. Frabizio III.

[2] Defendant's Answer and Verified Counterclaims are timely filed per the Court's electronic order dated January 13, 2005. In this regard, the Plaintiff's Motion to Quash (Court Docket No. 4) is moot.

## JURISDICTION AND VENUE

1.      Paragraph 1 contains conclusions of law to which no response is required. Further answering, the Complaint and Amended Complaint make no allegations that this Court possesses personal jurisdiction over the parties.

2.      Paragraph 2 contains conclusions of law to which no response is required.

3.      Paragraph 3 contains conclusions of law to which no response is required.

## GENERAL ALLEGATIONS

### 1. Parties

4.      Defendants, upon information and belief, admit that Sportbox is a Massachusetts limited liability company with a last known address at 105 Bridge Street Newton, Massachusetts, but are without knowledge or information sufficient to form a belief as to the present business location of Sportbox.

5.      Defendants, upon information and belief, admit the averments of Paragraph 5 concerning the residence of William V. Frabizio ("Frabizio" or "Plaintiff"), deny that Frabizio is the Company's Chief Executive Office, admit that Frabizio is the former employer of Mark Bortman  ("Bortman"), and deny that Frabizio is the former employer of John E. Conway ("Conway").

6.      As to the averments of Paragraph 6, Defendants deny that there is a company named Electric-Sports, Inc.  Further answering, Defendants admit that Electric Sports, Inc. ("ESi") is a Delaware Corporation with its principal place of business located at 14 Mica Lane, Suite 202 Wellesley, Massachusetts.

7.      Defendants admit that Conway, a resident of Winchester, Massachusetts, is the Chief Executive Officer of ESi and a former consultant to Sportbox, and that Conway was a paid Advisor on Sportbox's Board of Advisors.

8.      Defendants admit that Bortman, a resident of Millis, Massachusetts, is a marketing and sales employee of ESi and a former marketing and sales person of Sportbox.

## 2. Background

9.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 9 of the Amended Complaint and therefore deny them.

10.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 10 of the Amended Complaint and therefore deny them.

11.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 11 of the Amended Complaint and therefore deny them.

12.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 12 of the Amended Complaint and therefore deny them.

13.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 13 of the Amended Complaint and therefore deny them.

14.     As to the averments of Paragraph 14, Defendants are without knowledge or information sufficient to for a belief as to the identity of "the IMG empire," which is an undefined third party referenced in the Amended Complaint, and are further without knowledge or information sufficient to form a belief as to the truth of the other averments of Paragraph 14 of the Amended Complaint and therefore deny them.

15.     Defendants admit that, at one point in time, Conway had contacted Frabizio, but deny Plaintiff's characterization of the substance of those communications. Defendants further deny that any documents or things were attached as Exhibit A to the Amended Complaint. Defendants are without knowledge or information sufficient to form a belief as to the truth of the other averments of Paragraph 15 of the Amended Complaint and therefore deny them.

16.    Defendants deny each and every averment of Paragraph 16 of the Amended Complaint, except admit that Frabizio provided a business plan and radios.

17.    Defendants deny the averments of Paragraph 17 of the Amended Complaint.

18.    Defendants deny each and every averment of Paragraph 18 of the Amended Complaint, except admit that at a point in time IMG Worldwide, Inc. ("IMG") provided Sportbox office space at IMG's offices.

19.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 19 of the Amended Complaint and therefore deny them.

20.    Defendants deny each and every averment of Paragraph 20 of the Amended Complaint, except admit that Conway did provide Sportbox with Bortman's resume.

21.    Defendants deny that Sportbox provided Bortman with an offer letter dated and signed by Bortman and admit that Bortman dated and signed a Nondisclosure, Non-Solicitation and Development Agreement for Employees.

22.    Defendants deny each and every averment of Paragraph 22 of the Amended Complaint, except admit that on March 25, 2004 Conway signed an Advisory Board Agreement with Sportbox.

23.    Defendants deny the averments of Paragraph 23 of the Amended Complaint, except admit that Conway entered into a three-month consulting agreement with Sportbox.

24.    Defendants deny the averments of Paragraph 24 of the Amended Complaint, except admit that Frabizio, on behalf of Sportbox, agreed to provide Conway with a Hewlett-Packard laptop computer in exchange for Conway's contact list.

25.    Defendants admit that Sportbox had use of a large, single-room office space at IMG's offices in Brighton, Massachusetts, deny that its use of the space was uninterrupted

between August 2003 and November 2004 and deny Frabizio's characterization of the space as "his office."

### 3. Defendants' Surreptitious Surveillance Of Frabizio, His Associates and Friends.

26.     Defendants deny the averments of Paragraph 26 of the Amended Complaint.

27.     Defendants deny the averments of Paragraph 27 of the Amended Complaint, except admit that Conway has a degree in Electrical Engineering and that he worked for NASA.

28.     Defendants deny the averments of Paragraph 28 of the Amended Complaint, except admit that Bortman had access to a telecom closet.

29.     Defendants deny the averments of Paragraph 29 of the Amended Complaint.

30.     Defendants deny the averments of Paragraph 30 of the Amended Complaint.

31.     Defendants deny the averments of Paragraph 31 of the Amended Complaint.

### 4. Conway and Bortman Leave Sportbox.

32.     Defendants deny the averments of Paragraph 32 of the Amended Complaint.

33.     Defendants deny the averments of Paragraph 33 of the Amended Complaint.

34.     Defendants deny the averments of Paragraph 34 of the Amended Complaint.

35.     Defendants deny the averments of Paragraph 35 of the Amended Complaint.

36.     Defendants deny the averments of Paragraph 36 of the Amended Complaint.

37.     Defendants deny the averments of Paragraph 37 of the Amended Complaint, except admit that Conway moved his office contents in connection with the expansion of the Sportbox office into new space (including by taking some personal items home) and that Conway sent an email to Sportbox's investors asking for a meeting to discuss issues with the Company.

38.     Defendants deny the averments of Paragraph 38 of the Amended Complaint, except admit that, following the delivery of Conway's email, Sportbox investors organized a meeting.

### 5. Defendants' theft of Frabizio and Sportbox's Property.

39.     Defendants deny the averments of Paragraph 39 of the Amended Complaint.

### 6. Defendants' Theft of the Sportbox Business Plan

40.     Defendants deny the averments of Paragraph 40 of the Amended Complaint.

41.     Defendants deny the averments of Paragraph 41 of the Amended Complaint.

42.     Defendants deny the averments of Paragraph 42 of the Amended Complaint.

43.     Defendants deny the averments of Paragraph 43 of the Amended Complaint.  To the extent that Paragraph 43 incorporates other Paragraphs of the Amended Complaint, Defendants incorporate herein their prior responses to those Paragraphs.

### COUNT I

### Violations of the Computer Fraud and Abuse Act
### as amended by the USA PATRIOT Act of 2001 (18 U.S.C. § 1030)

44.     Defendants incorporate their responses to each of the foregoing Paragraphs as if fully set forth herein.

45.     Paragraph 45 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 45 of the Amended Complaint, to the extent that Paragraph 45 contains any allegations of fact.

46.     Paragraph 46 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 46 of the Amended Complaint, to the extent that Paragraph 46 contains any allegations of fact.

- 6 -

47.     Paragraph 47 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 47 of the Amended Complaint, to the extent that Paragraph 47 contains any allegations of fact.

## COUNT II

### Violations of the Stored Communications Act. (18 U.S.C. § 2701, *et seq.*)

48.     Defendants incorporate their responses to each of the foregoing Paragraphs as if fully set forth herein.

49.     Paragraph 49 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 49 of the Amended Complaint, to the extent that Paragraph 49 contains any allegations of fact.

50.     Paragraph 50 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 50 of the Amended Complaint, to the extent that Paragraph 50 contains any allegations of fact.

## COUNT III

### Copyright Infringement (17 U.S.C. § 101, *et seq.*)

51.     Defendants incorporate their responses to each of the foregoing Paragraphs as if fully set forth herein.

52.     Paragraph 52 contains conclusions of law to which no response is required.  To the extent that Paragraph contains factual allegations, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 152 and therefore deny them.

53.     Paragraph 53 contains conclusions of law to which no response is required.

54.    Paragraph 54 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 54 of the Amended Complaint, to the extent that Paragraph 54 contains any allegations of fact.

55.    Paragraph 55 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 55 of the Amended Complaint, to the extent that Paragraph 55 contains any allegations of fact.

56.    Paragraph 56 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 56 of the Amended Complaint, to the extent that Paragraph 56 contains any allegations of fact.


## COUNT IV

### Violations of the Federal Wiretap Act (18 U.S.C. § 2510, _et seq._)

57.    Defendants incorporate their responses to each of the foregoing Paragraphs as if fully set forth herein.

58.    Paragraph 58 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 8 of the Amended Complaint, to the extent that Paragraph 58 contains any allegations of fact.

59.    Paragraph 59 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 59 of the Amended Complaint, to the extent that Paragraph 59 contains any allegations of fact.

60.    Paragraph 60 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 60 of the Amended Complaint, to the extent that Paragraph 60 contains any allegations of fact.

61.     Paragraph 61 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 61 of the Amended Complaint, to the extent that Paragraph 61 contains any allegations of fact.

## COUNT V

### Violations of the Massachusetts Wiretap Act (M.G.L. ch. 272, § 99)

62.     Defendants incorporate their responses to each of the foregoing Paragraphs as if fully set forth herein.

63.     Paragraph 63 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 63 of the Amended Complaint, to the extent that Paragraph 63 contains any allegations of fact.

64.     Paragraph 64 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 64 of the Amended Complaint, to the extent that Paragraph 64 contains any allegations of fact.

65.     Paragraph 65 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 65 of the Amended Complaint, to the extent that Paragraph 65 contains any allegations of fact.

66.     Paragraph 66 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 66 of the Amended Complaint, to the extent that Paragraph 66 contains any allegations of fact.

## COUNT VI

### Misappropriation of Trade Secrets, Confidential and Proprietary Information

67.    Defendants incorporate their responses to each of the foregoing Paragraphs as if fully set forth herein.

68.    Paragraph 68 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 68 of the Amended Complaint, to the extent that Paragraph 68 contains any allegations of fact.

69.    Paragraph 69 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 69 of the Amended Complaint, to the extent that Paragraph 69 contains any allegations of fact.

## COUNT VII

### Violation of M.G.L. ch. 93, §§ 42 and 42A

70.    Defendants incorporate their responses to each of the foregoing Paragraphs as if fully set forth herein.

71.    Paragraph 71 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 71 of the Amended Complaint, to the extent that Paragraph 71 contains any allegations of fact.

72.    Paragraph 72 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 72 of the Amended Complaint, to the extent that Paragraph 72 contains any allegations of fact.

73.    Paragraph 73 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 73 of the Amended Complaint, to the extent that Paragraph 73 contains any allegations of fact.

74.    Paragraph 74 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 74 of the Amended Complaint, to the extent that Paragraph 74 contains any allegations of fact.

## COUNT VIII

## Violation of the Massachusetts Consumer Protection Act (M.G.L. ch. 93A, § 11)

75.    Defendants incorporate their responses to each of the foregoing Paragraphs as if fully set forth herein.

76.    Paragraph 76 is ambiguous, unclear and contains conclusions of law to which no response is required.

77.    Paragraph 77 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 77 of the Amended Complaint, to the extent that Paragraph 77 contains any allegations of fact.

78.    Paragraph 78 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 78 of the Amended Complaint, to the extent that Paragraph 78 contains any allegations of fact.

79.    Paragraph 79 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 79 of the Amended Complaint, to the extent that Paragraph 79 contains any allegations of fact.

## COUNT IX

### Invasion of Privacy

80.     Defendants incorporate their responses to each of the foregoing Paragraphs as if fully set forth herein.

81.     Paragraph 81 contains conclusions of law to which no response is required. To the extent that Paragraph 81 contains any allegations of fact, Defendants are without knowledge or information sufficient to form a belief as to the truth of such allegations and therefore deny them.

82.     Paragraph 82 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 82 of the Amended Complaint, to the extent that Paragraph 82 contains any allegations of fact.

83.     Paragraph 82 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 82 of the Amended Complaint, to the extent that Paragraph 82 contains any allegations of fact.

## COUNT X

### Conversion of Frabizio's Personal Computer Files

84.     Defendants incorporate their responses to each of the foregoing Paragraphs as if fully set forth herein.

85.     Paragraph 85 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 85 of the Amended Complaint, to the extent that Paragraph 85 contains any allegations of fact.

86.     Paragraph 86 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 86 of the Amended Complaint, to the extent that Paragraph 86 contains any allegations of fact.

## COUNT XI

### **Defamation**

87.     Defendants incorporate their responses to each of the foregoing Paragraphs as if fully set forth herein.

88.     Paragraph 88 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 88 of the Amended Complaint, to the extent that Paragraph 88 contains any allegations of fact.

89.     Paragraph 89 contains conclusions of law to which no response is required. Defendants deny the averments of Paragraph 89 of the Amended Complaint, to the extent that Paragraph 89 contains any allegations of fact.

### **Equitable Relief**

90.     Defendants incorporate their responses to each of the foregoing Paragraphs as if fully set forth herein.

91.     Paragraph 91 contains conclusions of law to which no response is required. To the extent that Paragraph 91 contains any allegations of fact, Defendants deny them.

92.     Paragraph 92 contains conclusions of law to which no response is required. To the extent that Paragraph 92 contains any allegations of fact, Defendants deny them.

93.     Paragraph 93 contains conclusions of law to which no response is required. To the extent that Paragraph 93 contains any allegations of fact, Defendants deny them.

94.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 94 of the Amended Complaint and therefore deny them.

95.     Defendants deny the averments of Paragraph 95 of the Amended Complaint.

96.     Paragraph 96 contains conclusions of law to which no response is required. To the extent that Paragraph 96 contains any allegations of fact, Defendants deny them.

## AFFIRMATIVE DEFENSES

1.      Plaintiff's Amended Complaint must be dismissed insofar as process and service of process were insufficient and/or defective.

2.      Plaintiff has failed, in whole or in part, to state a claim upon which relief can be granted.

3.      Plaintiff's Complaint and Amended Complaint were filed without any reasonable investigation and with an intentional disregard for the falsity of the factual allegations found therein, and should be dismissed as a violation of the requirements of Fed. R. Civ. P. 11.

4.      Plaintiff's Amended Complaint should be dismissed as an abuse of process, and will, upon judgment on the merits, constitute malicious prosecution.

5.      At all times alleged in Plaintiff's Amended Complaint, Sportbox and Frabizio were guilty of unfair competitive practices, including but not limited to surreptitious oral and electronic surveillance, unauthorized access to private files and communications, conversion of private property, defamatory statements and misrepresentations to Plaintiff's own business partners, causing such damage to Defendants as to bar Plaintiff's claims under the doctrine of unclean hands.

6.      Plaintiff's claims are barred because they are an unlawful attempt to prevent lawful competition.

7.      Plaintiff's claims are barred under the doctrine of acquiescence.

8.      Plaintiff's claims are barred under the doctrines of waiver, estoppel and laches.

- 14 -

9.     Plaintiff's copyright claims must be dismissed as Plaintiff does not own registrations for the works that Defendants allegedly infringed.

10.    Plaintiff's copyright claims must be dismissed as Plaintiff has failed to specify the works, or portions of the works, allegedly copied or the trade secrets allegedly misappropriated, which denies Defendants their rights and ability to defend this action, including its constitutional right to due process and notice and opportunity to be heard.

11.    Plaintiff's copyright claims must be dismissed as the acts complained of by Plaintiff constitute fair use and are not infringement by virtue of 17 U.S.C. § 107.

12.    Plaintiff's copyright claims must be dismissed as the acts complained of by Plaintiff are specifically authorized under 17 U.S.C. §117.

13.    Plaintiff's copyright claims must be dismissed as Plaintiff's alleged copyrights are invalid.

14.    Plaintiff's copyright claims must be dismissed as Plaintiff's copyright registrations are invalid.

15.    Plaintiff's copyright claims must be dismissed as Plaintiff's claimed copyrights are invalid for improper or lack of copyright notice.

16.    Plaintiff's copyright claims must be dismissed as the acts complained of by Plaintiff, if infringement, constituted innocent infringement.

17.    Plaintiff's copyright claims must be dismissed as Plaintiff's alleged works are and/or contain non-copyrightable subject matter.

18.    Plaintiff's copyright claims must be dismissed as the accused infringing works were independently created works.

19.   Plaintiff's copyright claims must be dismissed as the alleged copied material is not copyrightable because it is an idea, procedure, system, method of operation, concept, principle, discovery, and/or procedure foreclosed from protection by 17 U.S.C. § 102(b).

20.   Plaintiff's copyright claims must be dismissed as Plaintiff's activities with respect to the subject matter in its Complaint violate the antitrust laws of the United States and/or constitute copyright misuse

21.   Plaintiff's defamation claims fail because the statements at issue were and, at all times relevant to this lawsuit, have been true.

22.   Plaintiff's claims for misappropriation of trade secrets must be dismissed because the information and material allegedly involved was not secret, confidential or proprietary and therefore, cannot be considered trade secrets.

23.   Plaintiff's claims for misappropriation of trade secrets fail because Defendants were not, at any relevant time, subject to a duty to protect the confidentiality of information relating to Plaintiff.

24.   Plaintiff's claims fail because Defendants did not possess the requisite scienter.

25.   Plaintiff's claims, in whole or in part, are subject to a settlement and/or an accord and satisfaction.

26.   Plaintiff has not suffered any damage.

27.   To the extent that Plaintiff has suffered any damages whatsoever, he has failed to mitigate his damages.

28.   Some or all of Plaintiff's claims are barred or their recovery should be reduced insofar as any injury allegedly suffered by the Plaintiff was the result of the Plaintiff's own intentional and negligent acts.

29.     Plaintiff's claims are barred on the ground that he would be unjustly enriched if his claims are allowed.

30.     Plaintiff has failed to allege facts sufficient to state an actionable claim for injunctive relief.

31.     Plaintiff is not entitled to injunctive relief because he is not likely to succeed on the merits of his claims, has an adequate remedy at law and Plaintiff will not be irreparably harmed.


Defendants reserve the right to amend their Answer and Affirmative Defenses to assert other and further defenses as may become available or apparent during discovery proceedings in this case.

## VERIFIED COUNTERCLAIMS OF
## ELECTRIC SPORTS, INC., JOHN E. CONWAY AND MARK BORTMAN

Plaintiffs in Counterclaim Electric-Sports, Inc., John E. Conway and Mark Bortman (collectively, "Counterclaim Plaintiffs"),[3] for their counterclaims (the "Counterclaims"), allege as follows:

### PARTIES

1.      Electric Sports, Inc. ("ESi") is a Delaware corporation with its principal place of business located at 14 Mica Lane, Suite 202 Wellesley, Massachusetts.

2.      Conway, a resident of Winchester, Massachusetts, is the Chief Executive Officer of ESi and a former consultant to Sportbox, Inc. as well as a paid Advisor on Sportbox's Board of Advisors.

3.      Mark Bortman ("Bortman"), a resident of Millis, Massachusetts, is a marketing and sales employee of ESi and a former marketing and sales employee of Sportbox, Inc.

4.      Sportbox, LLC ("Sportbox") is a Massachusetts limited liability company with a last known primary place of business located at 107 Bridge Street, Newton, Massachusetts.

5.      On information and belief, Frabizio is an individual residing at 107 Bridge Street, Newton, Massachusetts.

### JURISDICTION AND VENUE

6.      Counterclaim Plaintiffs seek damages and equitable and injunctive relief for violations of federal statutes, in particular the Computer Fraud and Abuse Act (18 U.S.C. § 1030), the Stored Communications Act (18 U.S.C. § 2701, *et seq*.) and the Federal Wiretap Act (18 U.S.C. § 2510, *et seq*.), as well as for violations of Massachusetts statutes and common law, in particular the Massachusetts Wiretap Act (M.G.L. ch. 272, § 99), the Massachusetts common

---

[3] Sportbox and Frabizio hereinafter will be referred to collectively as "Counterclaim Defendants."

law and statutes concerning the tortious misappropriation of trade secrets (M.G.L. ch. 93, §§ 42 and 42A), the Massachusetts Consumer Protection Act (M.G.L. ch. 93A, § 11) barring unfair and deceptive business practices, as well as for invasion of privacy, conversion, defamation, nonpayment of wages, and abuse of process.

7.      This Court has jurisdiction over the subject matter of these Verified Counterclaims under 18 U.S.C. § 1030 (Computer Fraud and Abuse Act), 18 U.S.C. § 2701, *et seq*. (Stored Communications Act); and 18 U.S.C. § 2510, *et seq*. (Federal Wiretap Act). This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

8.      This Court has personal jurisdiction over Counterclaim Defendants, as Sportbox is a Massachusetts limited liability company and Frabizio resides in Newton, Massachusetts. Counterclaim Defendants act and have acted directly or by an agents, to regularly transact business in the Commonwealth of Massachusetts, to derive substantial revenue from goods used or consumed or services rendered, in this Commonwealth, and to contract to supply services or things in Massachusetts. Counterclaim Defendants also have engaged in a course of conduct which was intended or reasonably calculated to, and will inevitably cause and lead to, tortious injury in Massachusetts by acts or omissions both inside and outside the Commonwealth. In consequence, personal jurisdiction over Counterclaim Defendants is proper pursuant to the Massachusetts long-arm statute, M.G.L. ch. 223A §§ 3 (a), (b), (c) and (d). In addition, by instituting this action, Frabizio has subjected himself to the personal jurisdiction of this Court.

9.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a).

## FACTS OF THE CASE

### 1. Background

10.    Until April 2004, Conway was an Executive Vice-President in the Digital Media Division of IMG Worldwide, Inc. ("IMG"). During the three years that Conway worked at IMG, he assisted in the creation of over a dozen business ventures between IMG and start-up companies, including Sportbox. Conway's responsibilities included assisting in developing the business plans and locating investors for start-ups.

11.    During Conway's employment with IMG, Frabizio approached IMG on behalf of Sportbox with a business idea that involved selling AM/FM radios branded with the trademarks of Major League Baseball teams.

12.    IMG agreed to do business with Sportbox and assigned Conway the task of assisting with Sportbox's development. In fall 2003, Conway helped to attract certain venture capital investors who provided around $500,000 of first-round investment to Sportbox.

13.    In February 2004, with Conway's assistance, Sportbox hired Bortman to act as a sales and marketing representative. Bortman's duties consisted of contacting potential licensors, such as college and professional sports teams and organizations, to obtain the rights to use sports trademarks and graphics on Sportbox products. Bortman also solicited and obtained orders for Sportbox radios from potential retail merchants.

14.    In early 2004, following the death of IMG's founder, IMG undertook a reorganization of its business units and, among other things, discontinued Digital Media and other business development divisions. In consequence of the dissolution of its Digital Media Division, IMG offered Conway, among other things, assistance in obtaining a position at one of IMG's start-up clients.

15.     In April 2004, Sportbox, Frabizio and Sportbox's investors sought to retain Conway as a consultant to assist with business development at Sportbox. Pursuant to a consulting agreement, Sportbox agreed to pay Conway a fee of $5,000 per month, deferred until Sportbox began generating sufficient revenues. Conway also agreed to become a member of Sportbox's Board of Advisors.

16.     When Conway ended his employment at IMG, he fully complied with IMG policies that required him to return all IMG notebooks, files, communications and proprietary information. As a result, when Conway began consulting for Sportbox in August 2004, he did not possess any IMG proprietary communications, documents or files.

17.     On or around April 15, 2004, Sportbox agreed to purchase a laptop computer for Conway in exchange for Conway providing Sportbox with access to his personal contacts. Conway did deliver his contacts to Sportbox and received the computer for his personal use. The computer belonged solely to Conway.

18.     Between August 2003 and November 2004, with some interruption in residence due to Sportbox's inability to make required payments, Sportbox maintained office space in Brighton, Massachusetts. During this time, Frabizio and Anna Mariani (later Anna Mariani-Frabizio, after her marriage to Frabizio) ("Mariani"), and Bortman were Sportbox's only employees. Frabizio acted as Managing Director and Mariani acted as Chief Financial Officer. At all times relevant to the allegations in this complaint, Frabizio acted on behalf of, in the service of, and as the representative and Managing Director of Sportbox.

### 2. Counterclaim Defendants' Surreptitious Surveillance of Conway and Bortman

19.     Between April 2004 and August 2004, Frabizio surreptitiously recorded oral and telephone conversations involving Bortman and Conway using a mini-cassette audio recording device. Frabizio would transfer surreptitious recordings from his mini-cassette recording device

to his office computer and distribute recordings to third-parties by email. Bortman and Conway were never given warning or notice or asked for consent to any method of surveillance, nor did they ever consent.

20.     Between April 2004 and August 2004, Frabizio installed surveillance software, *i.e.* "spyware," on the computers physically located in the Sportbox office, including Conway's personal computer. The spyware installed by Frabizio allowed him to read emails, view computer activity, obtain passwords, and control access to and copy files from computers used by Bortman and Conway, including Conway's personal computer. Frabizio used this software to access Bortman's and Conway's private files and communications.

21.     On or around August 4, 2004, Bortman and Conway discovered the spyware installed on their computers and disabled it. Bortman also notified Frabizio, on his and Conway's behalf, that such software was a violation of state and federal laws and provided a written summary of federal and state statutes violated by Frabizio's activity. Notwithstanding their refusal to agree to the installation of spyware, Frabizio secretly reinstalled the software and continued surreptitiously to access Bortman and Conway's files and communications. During April and August 2004, Frabizio also covertly created backup copies of the entire contents of the computers used by Bortman and Conway, including Plaintiffs' personal files.

22.     While employed at Sportbox, Bortman maintained personal cellular phone service with Sprint. Without Bortman's permission or authorization, Frabizio accessed Bortman's personal voicemail account and retrieved voice mail messages intended for Bortman through Bortman's Sprint account. Bortman discovered this activity in August 2004, when he attempted to check his voicemail and was informed that his voicemail was in use. A Sprint account

- 22 -

representative confirmed that Bortman's voicemail was being accessed from Frabizio's telephone line at Sportbox.

### 3. Conway and Bortman Leave Sportbox

23.     In April 2004, Bortman secured an order for several thousand Sportbox radios for a Father's Day baseball game hosted by the Los Angeles Dodgers.  Under the terms of the agreement between Sportbox and the Dodgers, Sportbox agreed to deliver several thousand Sportbox branded radios to the Dodgers prior to June 20, 2004.

24.     Despite Bortman's best and successful efforts to obtain purchase orders from potential customers, Frabizio never instructed the factory that assembled the Sportbox products to fill orders that had been made. Among others, Frabizio failed to instruct Sportbox's manufacturing facility to fill the June 2004 order, resulting in lost business opportunities. Frabizio similarly failed to consummate several other orders obtained through Bortman's activities as sales and marketing representative.

25.     In July 2004, Conway confronted Frabizio concerning his failure to fill Sportbox orders.  Conway warned Frabizio that, by failing to fill purchase orders, Frabizio was damaging Sportbox's business reputation and sabotaging much needed sales opportunities.  Frabizio first maintained that Sportbox had sufficient assets to fill the orders, but later confessed that Sportbox did not have sufficient funds to defray the costs of filling purchase orders, despite adequate investment by Sportbox's investors.  Bortman attempted to negotiate an alternative financing arrangement to permit future Sportbox orders to be fulfilled, only to discover that Frabizio's credit rating was so low that third parties would not agree to finance Sportbox's orders.

26.     In July 2004, Conway discovered that Frabizio was improperly labeling Sportbox radios with the U.P.C. bar codes for adult lubrication products.  Conway confronted Frabizio with regard to the inaccurate labeling and indicated that such practices were improper,

- 23 -

unacceptable and would hurt Sportbox's business reputation. Bortman and Conway arranged to have Sportbox radios relabeled with the correct U.P.C. codes.

27.     On August 10, 2004, Conway and Bortman attended a meeting with the New England Patriots to negotiate a possible license on behalf of Sportbox. When they returned to the Sportbox office, Conway was told by security personnel that his consulting services with Sportbox had been terminated and that he was not allowed to enter the office. Sportbox informed Conway that Sportbox could no longer afford to pay Conway's consulting fees. At the time, Sportbox owed Conway over $11,000 in deferred compensation.

28.     On or around August 17, 2004, in consequence of Sportbox's limited ability to fulfill purchase orders or continue business operation, Bortman was constructively discharged from his employment with Sportbox. When he ended his employment, Sportbox owed Bortman unpaid wages, commissions and vacation pay, in addition to unreimbursed business expenses. Sportbox and Frabizio refused to reimburse to Bortman unpaid wages and expenses in an amount in excess of $10,000.

### 4. Counterclaim Defendants' Confiscation of Conway's Personal Computer

29.     Between August 10 and September 1, 2004, Frabizio and Sportbox maintained exclusive control over several items of personal property solely owned by Conway, including Conway's personal computer and other electronic equipment that Conway maintained in his office at Sportbox prior to the termination of his consulting arrangement.

30.     On August 10, 2004, when Bortman discovered that Conway had been terminated, Bortman returned to the Sportbox offices. When Bortman entered the office, he observed Frabizio connecting a Sportbox computer to Conway's personal computer and transferring all of Conway's personal files from Conway's computer to one owned by Sportbox. Bortman warned Frabizio that such access was improper, but Frabizio continued to access, view

and copy Conway's personal files. On August 19, 2004, Frabizio told Conway that Conway's personal computer was no longer functioning.

31.   Between August 10 and September 1, 2004, Conway requested numerous times that Sportbox or Frabizio return his personal computer.

32.   At no time did Conway create copies of IMG proprietary documents or files on his personal computer or on any computer after he stopped working at IMG in April 2004. In early April 2004, Conway had returned or destroyed all IMG proprietary documents and files in his possession and Conway did not receive his personal computer from Defendants until weeks later. Upon information and belief, Frabizio created unauthorized copies of IMG documents and files during the period that Conway was an IMG-engaged consultant deployed to Sportbox and, after August 10, 2004, Frabizio created unauthorized copies of these IMG files on Conway's personal computer, with the intent to frame Conway for the theft or conversion of IMG proprietary business information. In August 2004, Frabizio contacted Laurence Lewis, counsel for IMG, and falsely accused Conway of the theft of IMG proprietary files, telling Attorney Lewis that Frabizio had accessed Conway's personal computer and identified IMG proprietary information among Conway's personal files. In consequence of Frabizio's false accusation, IMG took custody of Conway's personal computer and removed all of the IMG-related material that Defendants uploaded to Conway's computer. IMG then returned the computer to Frabizio and Sportbox.

33.   On September 1, 2004, after Conway repeated his written demands for return of his property, Frabizio returned Conway's personal computer in damaged form. Investigation of Conway's personal computer revealed that between August 10 and September 1, 2004, Frabizio (a) rendered the wireless networking capability of Conway's computer inoperable, (b) removed

computer memory cards from Conway's computer, (c) obtained access to Conway's personal email account at America Online ("AOL"), and (d) accessed Conway's personal files, including those files accessible only through Conway's AOL account. Among the personal files accessed by Sportbox were a copyrighted manuscript of *Catboat Summers* (Sheridan House 2003), ISBN 1574091719, a book authored by Conway, a copyrighted, unpublished manuscript also authored by Conway, personal documents concerning Conway's authorship rights, Conway's federal and state tax returns, personal and business contact information, and prior employment information. The continuing investigation into the unauthorized access and modifications made by Frabizio and Sportbox will cost Conway over $5,000.

### 5. Counterclaim Defendants' Theft of the ESi Business Plan

34.    Following the departures of Conway and Bortman from Sportbox in August 2004, they discussed developing a business to sell portable, wearable electronic devices that did not include AM/FM radios. As a result of these discussions, Bortman and Conway developed a plan for a new start-up company (the "ESi business plan"). During the time that Bortman and Conway developed the ESi business plan, Conway stored the first version of this business plan in his America Online (AOL) Internet account.

35.    Following the departures of Conway and Bortman from Sportbox in August 2004, Frabizio used Conway's personal laptop computer to obtain unauthorized access to Conway's personal email account at AOL. While Frabizio had access to Conway's AOL account, he viewed private emails to Conway and obtained a copy of the then extant version of the ESi business plan. By September 2004, Frabizio had sent emails to several third-party investors that disparaged ESi, Bortman and Conway and accused them of the theft of Sportbox proprietary information. These disparaging emails contained unauthorized, electronic copies of the ESi business plan that Frabizio had copied.

- 26 -

36.     In September 2004, Conway and Bortman discovered that Frabizio had sent emails to several third-party investors that disparaged ESi, Bortman and Conway and accused them of the theft of Sportbox proprietary information. These disparaging emails contained unauthorized, electronic copies of a certain version of the ESi business plan that Conway and Bortman had developed between their departures from Sportbox and September 2004.

37.     Conway and Bortman investigated the disclosure of this version of the ESi business plan and discovered that the particular version of the ESi business plan had been stored within Conway's AOL account. Conway accessed his AOL account primarily from his laptop computer which would log in to Conway's AOL account when Conway executed AOL software. Conway concluded that Frabizio had obtained the ESi business plan through Conway's personal laptop computer and personal AOL account.

38.     In September 2004, Conway contacted the AOL to determine whether his AOL account had been accessed without his authorization. The AOL fraud detection personnel stated that Conway's AOL account had been accessed from three phone numbers during the time that Conway's laptop computer was held by Sportbox and Frabizio. The phone numbers identified by the AOL fraud detection personnel were registered to Frabizio, Mariani (Frabizio's fiancée at the time), and a Frabizio family member.

39.     On September 24, 2004, Bortman and Conway incorporated Electric Sports, Inc. ("ESi") as a Delaware corporation with its primary place of business in Massachusetts. ESi designs and manufactures cutting-edge, personal technology products, based upon the ESi business plan developed by Bortman and Conway. Unlike Sportbox, ESi does not sell or promote AM/FM radios.

40.    In order to attract first-round venture capital investment, ESi distributed to potential investors versions of the ESi business plan that Sportbox and Frabizio had obtained and disseminated.  Counterclaim Plaintiffs are informed and believe that Sportbox and Frabizio have copied and currently maintain copies of Bortman's and Conway's personal and private conversations, communications, files, documents, trade secrets and proprietary business information.

## 6. Frabizio's Filing of this Baseless, Copycat Lawsuit

41.    Frabizio filed the Complaint and Amended Complaint as part of a series of acts designed to destroy Counterclaim Plaintiffs' business.  Counterclaim Defendants accessed Counterclaim Plaintiffs private communications and files, then distributed Counterclaim Plaintiffs' trade secrets and proprietary files in disparaging emails.  In November and December 2004, confronted by an itemized list of Counterclaim Plaintiffs' legal claims, Frabizio filed the Complaint and Amended Complaint asserting identical legal claims as though they were his own in order to lodge in the public record false and damaging allegations, to alarm potential investors and to prevent ESi from obtaining capital investment required for continued business operations.

42.    During November and December 2004, Bortman and Conway sought to initiate meaningful settlement discussions concerning these events, including, on November 24, 2004, by submitting a plan involving several steps to settle the dispute and avoid judicial intervention. Counterclaim Defendants never responded to the November 24 proposal.

43.    On December 9, 2004, in the effort to initiate settlement discussions, Counterclaim Plaintiffs provided Counterclaim Defendants a copy of a draft complaint alleging violations of federal statutes, in particular the Computer Fraud and Abuse Act (18 U.S.C. § 1030), the Stored Communications Act (18 U.S.C. § 2701, *et seq.*), the Federal Wiretap Act (18 U.S.C. § 2510, *et seq.*) and the Copyright Act (17 U.S.C. § 101, *et seq.*), as well as for violations

of Massachusetts statutes and common law, in particular the Massachusetts Wiretap Act (M.G.L. ch. 272, § 99), the Massachusetts common law and statutes concerning the tortious misappropriation of trade secrets (M.G.L. ch. 93, §§ 42 and 42A), the Massachusetts Consumer Protection Act (M.G.L. ch. 93A, § 11) barring unfair and deceptive business practices, as well as for invasion of privacy, conversion and defamation. *See Exhibit A.*

44.     On December 13, 2004, Frabizio represented that he and Sportbox wished to postpone the filing of ESi's draft complaint to permit the Parties to meet and discuss the settlement of the matters alleged in ESi's draft complaint. Counterclaim Plaintiffs agreed to postpone the filing of their draft complaint and undertake settlement discussion. However, the Counterclaim Defendants never responded to Counterclaim Plaintiffs' efforts to schedule a settlement conference.

45.     Instead, on the evening of December 13, 2004, constables served the Counterclaim Plaintiffs with a copy of the Complaint filed in the present action that had been redacted in several places.

46.     Unbeknownst to Counterclaim Plaintiffs, Frabizio had in fact previously filed the Complaint in the instant lawsuit in the United States District Court for the District of Massachusetts on December 10, 2004, three days before Frabizio called and requested that the Counterclaim Plaintiffs agree to postpone filing of ESi's draft complaint because Frabizio and Sportbox were willing to engage in settlement discussions.

47.     Frabizio's Complaint copied, in many places word for word, the text of Counterclaim Plaintiffs' draft complaint, but asserted ESi, Bortman and Conway's claims as though they were Sportbox's and Frabizio's own claims. *Compare Court Dkt. No. 1 with Exhibit*

*A.* In addition, Frabizio added to the allegations in the Complaint false statements intended to be damaging concerning ESi, Bortman, Conway and their counsel.

48. On December 13, 2004, Frabizio filed the Amended Complaint.

49. In the Amended Complaint, Frabizio added text identical to the text of ESi's draft complaint. *Compare Court Dkt. No. 2 with Exhibit A.*

50. On December 21, 2004, Counterclaim Plaintiffs served Frabizio with a demand letter pursuant to Fed. R. Civ. P. 11, requesting the immediate withdrawal of the Complaint and Amended Complaint on the grounds that Frabizio has, at all relevant times, known that allegations of wrongdoing in the Complaint and Amended Complaint are false and that they were filed for improper purposes. *See Exhibit B.*

51. On or around December 28, 2004, Bortman and Conway discovered that ESi's computers had been compromised by the same spyware software that Frabizio and Sportbox had installed on computers used by Bortman and Conway when they worked at Sportbox. Counterclaim Defendants, upon information and belief, continue to use such spyware to obtain unauthorized access to Counterclaim Plaintiffs' private communication and proprietary files.

52. The safe harbor period provided by Rule 11 for the withdrawal of the Counterclaim Defendants' defective pleadings expired on January 11, 2005. Counterclaim Defendants refuse to withdraw the defective pleadings filed in this case.

53. As a result of Counterclaim Defendants' disparaging emails and the filing of the baseless Complaint and Amended Complaint, several potential investors who had previously indicated an interest in investing certain sums in ESi represented that they would not invest in ESi or introduce other investors to ESi until the dispute with Sportbox was resolved. In consequence, Counterclaim Defendants' attempt to block investment by defaming ESi, Bortman

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ELECTRIC-SPORTS, INC.,
JOHN E. CONWAY, and MARK BORTMAN

Plaintiffs,

v.                                                          CIVIL ACTION No.

SPORTBOX LLC, and
WILLIAM V. FRABIZIO III

Defendants.

## COMPLAINT

Plaintiffs Electric-Sports, Inc., John E. Conway and Mark Bortman (collectively,

"Plaintiffs") allege as follows:

### JURISDICTION AND VENUE

1.      This is a civil action seeking damages and equitable and injunctive relief for

violations of federal statutes, in particular the Computer Fraud and Abuse Act (18 U.S.C. §

1030), the Stored Communications Act (18 U.S.C. § 2701, *et seq.*), the Federal Wiretap Act (18

U.S.C. § 2510, *et seq.*) and the Copyright Act (17 U.S.C. § 101, *et seq.*), as well as for violations

of Massachusetts statutes and common law, in particular the Massachusetts Wiretap Act (M.G.L.

ch. 272, § 99), the Massachusetts common law and statutes concerning the tortious

misappropriation of trade secrets (M.G.L. ch. 93, §§ 42 and 42A), the Massachusetts Consumer

Protection Act (M.G.L. ch. 93A, § 11) barring unfair and deceptive business practices, as well as

for invasion of privacy, conversion and defamation.

2.      This Court has jurisdiction over the subject matter of this Complaint under 28

U.S.C. § 1331, 1338(a) (Copyright), 18 U.S.C. § 1030 (Computer Fraud and Abuse Act), 18

U.S.C. § 2701, *et seq.* (Stored Communications Act); and 18 U.S.C. § 2510, *et seq.* (Federal

Wiretap Act). This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

3.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a).

## GENERAL ALLEGATIONS

### 1. Parties

4.      Electric-Sports, Inc. ("ESi") is a Delaware corporation with its principal place of business located at 14 Mica Lane, Suite 202 Wellesley, Massachusetts.

5.      John E. Conway ("Conway"), a resident of Winchester, Massachusetts, is the Chief Executive Officer of ESi and a former consultant to Sportbox, Inc.

6.      Mark Bortman ("Bortman"), a resident of Millis, Massachusetts, is the Marketing and Sales Officer of ESi and a former marketing and sales representative of Sportbox, Inc.

7.      Sportbox, LLC ("Sportbox") is a Massachusetts limited liability company with its principal place of business located at 107 Bridge Street, Newton, Massachusetts.

8.      On information and belief, William V. Frabizio III ("Frabizio") is an individual residing at 107 Bridge Street, Newton, Massachusetts.

### 2. Background

9.      Until April 2004, Conway was an Executive Vice-President in the Digital Media Division of IMG Worldwide, Inc. ("IMG"). During the three years that Mr. Conway worked at IMG, he assisted in the creation of over a dozen business ventures between IMG and start-up companies, including Sportbox. Conway's responsibilities included developing the business plans and securing investors for start-up companies.

10.     During Conway's employment with IMG, Frabizio approached IMG on behalf of Sportbox with a business idea that involved selling AM/FM radios branded with the trademarks of Major League Baseball teams.

11.    IMG agreed to do business with Sportbox and assigned Conway the task of finding first-round investors to provide the investment capital necessary to fund Sportbox's business operations. In fall 2003, Conway helped to attract several venture capital investors to Sportbox, including John Moriarty, Jerry Morris and Leo Donahue.

12.    In February 2004, with Conway's assistance, Sportbox hired Mark Bortman ("Bortman") to act as a sales and marketing representative. Bortman's duties consisted of contacting potential licensors, such as college and professional sports teams and organizations, to obtain the rights to use sports trademarks and graphics on Sportbox products. Bortman also solicited and obtained orders for Sportbox radios from potential retail merchants.

13.    In early 2004, following the death of IMG's founder, IMG undertook a reorganization of its business units and, among other things, discontinued Digital Media and other business development divisions. In consequence of the dissolution of its Digital Media Division, IMG offered Conway, among other things, assistance in obtaining a position at one of IMG's start-up clients.

14.    In April 2004, Sportbox, Frabizio and Sportbox's investors agreed to hire Conway as a consultant to assist with business development at Sportbox. Under their consulting agreement, Sportbox agreed to pay Conway a fee of $5,000 per month, deferred until Sportbox began generating sufficient revenues.

15.    When Conway ended his employment at IMG, he fully complied with IMG policies that required him to return all IMG notebooks, files, communications and proprietary information. As a result, when Conway began consulting for Sportbox in August 2004, he did not possess any IMG proprietary communications, documents or files.

16.     On or around April 15, 2004, Defendants agreed to purchase a laptop computer

for Conway in lieu of compensation and did purchase a Hewlett-Packard laptop computer, which

Frabizio presented to Conway as a form compensation for his consulting services. This

computer was given to Conway for his personal use and it belonged solely to Conway.

17.     Between August 2003 and November 2004, Sportbox maintained office space in

Brighton, Massachusetts. During this time, Frabizio, his wife, Anna Frabizio, and Bortman

were Sportbox's only employees. Frabizio acted as Director and Anna Frabizio acted as Chief

Financial Officer. At all times relevant to the allegations in this complaint, Frabizio acted on

behalf of, in the service of, and as the representative and CEO of Sportbox.

### 3. Defendants' Surreptitious Surveillance of Conway and Bortman

18.     Between April 2004 and August 2004, Frabizio surreptitiously recorded oral and

telephone conversations involving Bortman and Conway using a mini-cassette audio recording

device. Frabizio would transfer surreptitious recordings from his mini-cassette recording device

to his office computer and distribute recordings to third-parties by email, including Michael

Napolotano (Major League Baseball), George Nadiff (Lo-Fat/Ko-Fat, Inc.), Paul Stewart (Boston

Bruins, Inc.), Leo Donahue, Douglas Billman (SportsNet, Inc), Todd McCormack (IMG),

William Squadron (IMG), Laurence Lewis (Staples, Inc.), John Pendleton (Digitas-Boston),

Buster Pike (IMG), Scott Philips (EMS-Miami), and Greg Brownell (IMG). Bortman and

Conway were never given warning or notice or asked for consent to any method of surveillance,

nor did they ever consent.

19.     Between April 2004 and August 2004, Frabizio installed surveillance software,

i.e. "spyware," on the computers physically locates in the Sportbox office, including Conway's

personal computer. The spyware installed by Frabizio allowed him to read emails, view

computer activity, obtain passwords, and control access to and copy files from computers used

by Bortman and Conway, including Conway's personal computer. Frabizio used this software to access Bortman and Conway's private files and communications.

20.    On or around August 4, 2004, Bortman and Conway discovered the spyware installed on their computers and disabled it. Bortman also notified Frabizio, on his and Conway's behalf, that such software was a violation of state and federal laws and provided a written summary of federal and state statutes violated by Frabizio's activity. Notwithstanding their refusal to agree to the installation of spyware, Frabizio secretly reinstalled the software and continued surreptitiously to access Bortman and Conway's files and communications. During April and August 2004, Frabizio also covertly created backup copies of the entire contents of the computers used by Bortman and Conway, including Plaintiffs' personal files.

21.    While employed at Sportbox, Bortman maintained personal cellular phone service with Sprint. Without Bortman's permission or authorization, Frabizio accessed Bortman's personal voicemail account and retrieved voice mail messages intended for Bortman through Bortman's Sprint account. Bortman discovered this activity in August 2004, when he attempted to check his voicemail and was informed that his voicemail was in use. A Sprint account representative confirmed that Bortman's voicemail was being accessed from Frabizio's telephone line at Sportbox.

### 4. Conway and Bortman Leave Sportbox

22.    In April 2004, Bortman secured an order for several thousand Sportbox radios for a Father's Day baseball game hosted by the Los Angeles Dodgers. Under the terms of the agreement between Sportbox and the Dodgers, Sportbox agreed to deliver several thousand Sportbox branded radios to the Dodgers prior to June 20, 2004.

23.    Despite Bortman's best and successful efforts to obtain purchase orders from potential customers, Frabizio never instructed the factory that assembled the Sportbox products

to fill orders that had been made. Among others, Frabizio failed to instruct Sportbox's manufacturing facility to fill the June 2004 order, resulting in lost business opportunities. Frabizio similarly failed to consummate several other orders obtained through Bortman's activities as sales and marketing representative.

24.    In July 2004, Conway confronted Frabizio concerning his failure to fill Sportbox orders. Conway warned Frabizio that, by failing to fill purchase orders, Frabizio was damaging Sportbox's business reputation and sabotaging much needed sales opportunities. Frabizio first maintained that Sportbox had sufficient assets to fill the orders, but later confessed that Sportbox did not have sufficient funds to defray the costs of filling purchase orders, despite adequate investment by Sportbox's investors. Bortman attempted to negotiate an alternative financing arrangement to permit future Sportbox orders to be fulfilled, only to discover that Frabizio's credit rating was so low that third-parties would not agree to finance Sportbox's orders.

25.    In July 2004, Conway discovered that Frabizio was improperly labeling Sportbox radios with the U.P.C. bar codes for adult lubrication products. Conway confronted Frabizio with regard to the inaccurate labeling and indicated that such practices were improper, unacceptable and would hurt Sportbox's business reputation. Bortman and Conway arranged to have Sportbox radios relabeled with the correct U.P.C. codes.

26.    On August 10, 2004, Conway and Bortman attended a meeting with the New England Patriots to negotiate a possible license on behalf of Sportbox. When they returned to the Sportbox office, Conway was told by security personnel that his consulting services with Sportbox had been terminated and that he was not allowed to enter the office. Sportbox informed Conway that Sportbox could no longer afford to pay Conway's consulting fees. At the time, Sportbox owed Conway over $11,000 in deferred compensation.

27.    On or around August 13, 2004, in light of Sportbox's limited ability to fulfill purchase orders or continue business operation, Bortman ended his employment with Sportbox. When he ended his employment, Sportbox owed Bortman over $10,000 in deferred compensation.

### 5. Defendants' Confiscation of Conway's Personal Computer

28.    Between August 10 and September 1, 2004, Frabizio and Sportbox maintained exclusive control over several items of personal property solely owned by Conway, including Conway's personal computer and other electronic equipment that Conway maintained in his office at Sportbox prior to his termination.

29.    On August 10, 2004, when Bortman discovered that Conway had been terminated, Bortman returned to the Sportbox offices. When Bortman entered the office, he observed Frabizio connecting a Sportbox computer to Conway's personal computer and transferring all of Conway's personal files from Conway's computer to one owned by Sportbox. Bortman warned Frabizio that such access was improper, but Frabizio continued to access, view and copy Conway's personal files. On August 19, 2004, Frabizio told Conway that Conway's personal computer was no longer functioning.

30.    Between August 10 and September 1, 2004, Conway requested numerous times that Sportbox or Frabizio return his personal computer.

31.    At no time did Conway create copies of IMG proprietary documents or files on his personal computer or on any computer after he stopped working at IMG in April 2004. In early April 2004, Conway had returned or destroyed all IMG proprietary documents and files in his possession and Conway did not receive his personal computer from Defendants until weeks later. Upon information and belief, Frabizio created unauthorized copies of IMG documents and files during the period that Conway was an IMG-engaged consultant deployed to Sportbox and,

after August 10, 2004, Frabizio created unauthorized copies of these IMG files on Conway's personal computer, with the intent to frame Conway for the theft or conversion of IMG proprietary business information. In August 2004, Frabizio contacted Laurence Lewis, counsel for IMG, and falsely accused Conway of the theft of IMG proprietary files, telling Attorney Lewis that Frabizio had accessed Conway's personal computer and identified IMG proprietary information among Conway's personal files. In consequence of Frabizio's false accusation, IMG took custody of Conway's personal computer and removed all of the IMG-related material that Defendants uploaded to Conway's computer. IMG then returned the computer to Frabizio and Sportbox.

32.    On September 1, 2004, after Conway repeated his written demands for return of his property, Frabizio returned Conway's personal computer in damaged form. Investigation of Conway's personal computer revealed that between August 10 and September 1, 2004, Frabizio (a) rendered the wireless networking capability of Conway's computer inoperable, (b) removed computer memory cards from Conway's computer, (c) obtained access to Conway's personal email account at America Online ("AOL"), and (d) accessed Conway's personal files, including those files accessible only through Conway's AOL account. Among the personal files accessed by Sportbox were a copyrighted manuscript of *Catboat Summers* (Sheridan House 2003), ISBN 1574091719, a book authored by Conway, a copyrighted, unpublished manuscript also authored by Conway, personal documents concerning Conway's authorship rights, Conway's federal and state tax returns, personal and business contact information, and prior employment information. The continuing investigation into the unauthorized access and modifications made by Frabizio and Sportbox will cost Conway over $5,000.

### 6. Defendants' Theft of the ESi Business Plan

33.    Following the departures of Conway and Bortman from Sportbox in August 2004, they discussed developing a business to sell portable, wearable electronic devices. As a result of these discussions, Bortman and Conway developed a plan for a new start-up company (the "ESi business plan"). During the time that Bortman and Conway developed the ESi business plan, Conway stored the first version of this business plan in his America Online (AOL) email account.

34.    Following the departures of Conway and Bortman from Sportbox in August 2004, Frabizio accessed Conway's personal email account at AOL without authorization and obtained a copy of the ESi business plan. By September 2004, Frabizio had sent emails to several third-party investors including Paul Stewart, Laurence Lewis, Doug Billman, John Moriarty, Jerry Morris and Leo Donahue that disparaged ESi, Bortman and Conway and accused them of the theft of Sportbox proprietary information. These disparaging emails contained unauthorized, electronic copies of the ESi business plan.

35.    In September 2004, Conway and Bortman discovered that Frabizio was distributing copies of the ESi business plan by email. Conway concluded that Frabizio had accessed Conway's personal AOL account in order to obtain the ESi business plan. Conway contacted AOL to determine whether unauthorized access had occurred. AOL fraud detection personnel confirmed that unauthorized access to Conway's personal email account had occurred after the departures of Conway and Bortman from Sportbox in August 2004 from telephone numbers registered to Frabizio and his fiancé at the time, Anna Mariani Frabizio.

36.    On September 24, 2004, Bortman and Conway incorporated Electric-Sports, Inc. ("ESi") as a Delaware corporation with its primary place of business in Massachusetts. ESi designs and manufactures cutting-edge, personal technology products, based upon the ESi

- 9 -

business plan developed by Bortman and Conway. Unlike Sportbox, ESi does not sell or promote AM/FM radios.

37.    In order to attract first-round venture capital investment, ESi distributed to potential investors versions of the ESi business plan that Defendants had obtained and disseminated. As a result of Defendants' disparaging emails, several potential investors indicated that they would not invest in ESi or introduce other investors to Plaintiffs until the issue with Sportbox was resolved. Defendants' attempt to block investment by defaming Bortman and Conway successfully prevented first-round investment of over $2,800,000.

38.    Plaintiffs are informed and believe that Defendants have copied and currently maintain copies of the Plaintiffs' personal and private conversations, communications, files, documents, copyrighted material, trade secrets and proprietary business information.

## COUNT I

### Violations of the Computer Fraud and Abuse Act, as amended by the USA PATRIOT Act of 2001 (18 U.S.C. § 1030)

39.    Plaintiffs incorporate the allegations in each of the foregoing paragraphs as if fully set forth herein.

40.    Defendants' wrongful course of conduct, as set forth above, constitutes a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, because the Defendants intentionally accessed a computer without authorization and/or exceeded authorized access, and thereby obtained information from a protected computer in a manner that involved an interstate or foreign communication.

41.    Defendants' wrongful course of conduct, as set forth above, constitutes a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, because the Defendants intentionally

accessed a protected computer without authorization, and as a result of such conduct, caused damage and recklessly caused damage to Plaintiffs.

42.     Defendants' conduct has caused damage to Plaintiffs aggregating at least $5,000 in value during a one-year period and, pursuant to 18 U.S.C. § 1030, Plaintiff is entitled to such preliminary or other equitable or declaratory relief as may be appropriate and damages.

## COUNT II

### Violations of the Stored Communications Act (18 U.S.C. § 2701, *et seq.*)

43.     Plaintiffs incorporate the allegations in each of the foregoing paragraphs as if fully set forth herein.

44.     Defendants' wrongful course of conduct, as set forth above, constitutes a violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2701, *et seq.*, because the Defendants intentionally accessed without authorization and/or intentionally exceeded their authorization to access a facility through which an electronic communication service is provided and thereby obtained, altered or prevented authorized access to a wire or electronic communications while they were in electronic storage.

45.     Plaintiffs have been and continue to be damaged by Defendants' conduct and, pursuant to 18 U.S.C. § 2707, Plaintiffs are entitled to such preliminary or other equitable or declaratory relief as may be appropriate, actual damages to equal or exceed $1,000 in statutory damages, disgorgement of the profits Defendants have earned as a result of their illegal conduct, punitive damages, as well as costs and reasonable attorneys' fees.

**COUNT III**

**Copyright Infringement (17 U.S.C. § 101, _et seq._)**

46.     Plaintiffs incorporate the allegations in each of the foregoing paragraphs as if fully set forth herein.

47.     Conway is, and at all relevant times has been, the copyright owner or licensee of the exclusive rights under United States copyright to _Catboat Summers_ (Sheridan House 2003), ISBN 1574091719, Registration No. TX-5-890-180 which is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights.

48.     Conway is, and at all relevant times has been, the copyright owner or licensee of the exclusive rights under United States copyright to the unpublished manuscript authored by Conway, concerning which an application is currently pending before the Register of Copyrights.

49.     Plaintiffs are, and at all relevant times have been, the copyright owners or licensees of the exclusive rights under United States copyright to the ESi business plan, concerning which an application is currently pending before the Register of Copyrights.

50.     Among the exclusive rights granted to the Plaintiffs under the Copyright Act are the exclusive rights to reproduce the copyrighted works.

51.     Defendants obtained unauthorized access to the Plaintiffs' copyrighted works and made unauthorized electronic copies in violation of the Plaintiffs' exclusive rights of reproduction.  Defendants' actions constitute infringement of Plaintiffs' copyrights.

52.     The foregoing acts of infringement have been willful and intentional, in disregard of and with indifference to the rights of Plaintiffs.

53.     Plaintiffs have been and continue to be damaged by Defendants' conduct and, pursuant to 15 U.S.C. §§ 501-05, Plaintiffs are entitled to temporary and permanent injunctive

relief, impoundment of infringing copies of the copyrighted works, actual damages and disgorgement of the profits Defendants have earned as a result of their illegal conduct, or, in the alternative, statutory damages up to $150,000 per infringement, as well as costs and reasonable attorneys' fees.

## COUNT IV

### Violations of the Federal Wiretap Act (18 U.S.C. § 2510, et seq.)

54.    Plaintiffs incorporate the allegations in each of the foregoing paragraphs as if fully set forth herein.

55.    Defendants intentionally intercepted, endeavored to intercept, and/or procured another person to intercept or endeavor to intercept, Plaintiffs wire, oral, or electronic communications.

56.    Defendants intentionally disclosed, and endeavored to disclose, to another person the contents of Plaintiffs' wire, oral, and electronic communications, knowing and having reason to know that the information was obtained through the illegal interception of Plaintiffs' wire, oral, and electronic communication.

57.    Defendants intentionally used, and endeavored to use, the contents of Plaintiffs' wire, oral, and electronic communications, knowing or having reason to know that the information was obtained through the illegal interception of Plaintiffs' wire, oral, and electronic communications.

58.    Plaintiffs have been and continue to be damaged by Defendants' conduct and, pursuant to 18 U.S.C. § 2520, Plaintiffs are entitled to such preliminary or other equitable or declaratory relief as may be appropriate, actual damages or, in the alternative, statutory damages equal to the greater of $100 a day for each day of violation or $10,000, disgorgement of the

profits Defendants have earned as a result of their illegal conduct, punitive damages, as well as costs and reasonable attorneys' fees.

## COUNT V

### Violations of the Massachusetts Wiretap Act (M.G.L. ch. 272, § 99)

59.    Plaintiffs incorporate the allegations in each of the foregoing paragraphs as if fully set forth herein.

60.    Defendants secretly heard, secretly recorded, and/or aided another to secretly hear or secretly record the contents of Plaintiffs' wire or oral communication through the use of intercepting devices, without any authorization from Plaintiffs.  Plaintiffs are informed and believe that Defendants' willfully intercepted, attempted to commit an interception, or procured another person to commit interceptions or to attempt to commit interceptions of Plaintiffs' wire or oral communications.

61.    Defendants willfully disclosed or attempted to disclose to third-parties indicated above the contents of Plaintiffs' wire or oral communications, knowing that the information was obtained through interception and without Plaintiffs' consent or authorization.

62.    Defendants willfully used or attempted to use the contents of Plaintiffs' wire or oral communications, knowing that the information was obtained through interception and without Plaintiffs' consent or authorization.

63.    Plaintiffs have been and continue to be damaged by Defendants' conduct and, pursuant to M.G.L. ch. 272, § 99Q, Plaintiffs are entitled to actual damages but not less than liquidated damages computed at the rate of $100 per day for each day of violation or $1000, whichever is higher, punitive damages, as well as litigation disbursements reasonably incurred and reasonable attorneys' fees.

## COUNT VI

### Misappropriation of Trade Secrets, Confidential and Proprietary Information

64.     Plaintiffs incorporate the allegations in each of the foregoing paragraphs as if fully set forth herein.

65.     Defendants have misappropriated confidential and proprietary business information and trade secrets owned by Plaintiffs by improper means and in violation of a confidential relationship with Plaintiff.

66.     As a result of Defendants' actions as set forth above, Plaintiffs have suffered and continues to suffer substantial, immediate and irreparable harm and damages.  Plaintiffs are entitled to actual and compensatory damages and equitable relief.

## COUNT VII

### Violation of M.G.L. Ch. 93 §§ 42 and 42A

67.     Plaintiffs incorporate the allegations in each of the foregoing paragraphs as if fully set forth herein.

68.     Defendants have stolen, copied, and carried away confidential and proprietary information and trade secrets of Plaintiffs with intent to disclose it and convert it to their own use.

69.     Defendants have misappropriated Plaintiffs' confidential and proprietary information and trade secrets by improper means and in violation of a confidential relationship with Plaintiffs.

70.     Defendants' misappropriation of Plaintiffs' confidential and proprietary information and trade secrets as set forth above constitutes a violation of M.G.L. ch. 93, §§ 42

and 42A.

71.     As a result of Defendants' actions as set forth above, Plaintiffs have suffered and continue to suffer substantial, immediate and irreparable harm and damages. Plaintiffs are entitled to actual and compensatory damages as well as up to double damages for Defendants' willful conduct and equitable relief.

## COUNT VIII

### Violations of the Massacusetts Consumer Protection Act (M.G.L. ch. 93A, § 11)

72.     Plaintiffs incorporate the allegations in each of the foregoing paragraphs as if fully set forth herein.

73.     Plaintiff and Defendant engage in the conduct of a trade or commerce.

74.     Defendants have employed unfair methods of competition and unfair and deceptive acts or practices.

75.     The foregoing acts have been willful, intentional and malicious.

76.     Defendants unfair acts or practices have caused Plaintiffs to suffer and continue to suffer substantial, immediate and irreparable harm and damages. Plaintiffs are entitled to actual and compensatory damages as well as up to treble damages for Defendants' willful conduct and equitable relief.

## COUNT IX

### Invasion of Privacy

77.     Plaintiffs incorporate the allegations in each of the foregoing paragraphs as if fully set forth herein.

78.     Plaintiffs possessed a reasonable and legitimate expectation of privacy.

- 16 -

79.    Defendants course of conduct was unreasonable and unjustified and amounting to serious or substantial interferences with Plaintiffs' privacy interest.

80.    As a result of Defendants' actions as set forth above, Plaintiffs have suffered and continue to suffer substantial, immediate and irreparable harm and damages.  Plaintiffs are entitled to actual and compensatory damages as well as equitable relief.

## COUNT X

### Conversion of Conway's Personal Computer

81.    Plaintiff Conway incorporates the allegations in each of the foregoing paragraphs as if fully set forth herein.

82.    Defendants intentionally and wrongfully exercised acts of ownership, control or dominion over the personal property of Plaintiff Conway to which Defendants had no right of possession at the time, and in the course of so doing, damaged said property.

83.    As a result of Defendants' actions as set forth above, Plaintiff Conway has suffered and continue to suffer substantial, immediate and irreparable harm and damages. Plaintiffs are entitled to actual and compensatory damages as well as equitable relief.

## COUNT XI

### Defamation

84.    Plaintiffs incorporate the allegations in each of the foregoing paragraphs as if fully set forth herein.

85.    Defendants intentionally made statements concerning Plaintiffs to numerous third-parties.  These statements were made orally and in writing and designed to damage

Plaintiffs' reputation by charging Plaintiffs with a crime and prejudicing the Plaintiffs' profession and business.

86.    As a result of Defendants' actions as set forth above, Plaintiffs have suffered and continue to suffer substantial, immediate and irreparable harm and damages, including the loss of $2,800,000 in needed investment capital. Plaintiffs are entitled to nominal, actual and compensatory damages including recovery for Plaintiffs' economic, non-economic and reputational injuries. Plaintiffs are also entitled to equitable relief.

## EQUITABLE RELIEF

87.    Plaintiffs incorporate the allegations in each of the foregoing paragraphs as if fully set forth herein.

88.    Plaintiffs have no adequate remedy at law. The injuries described above are, in part, not susceptible of being assessed monetarily with sufficient accuracy to permit their recovery in damages and, to the extent they are so assessable, greatly exceed the ability of Defendants to pay.

89.    As to each item of relief sought by Plaintiffs, greater injury will be inflicted upon Plaintiffs by the denial of relief than will be inflicted upon Defendants by the granting of relief. More specifically, Plaintiffs are suffering and will suffer substantial and irreparable injury, more fully described above, whereas Defendants cannot and will not be injured by being prevented from continuing their invasive, misleading and unlawful acts.

90.    Defendants' unlawful acts constitute serious violations of federal and state statutes and policies intended to prevent indiscriminate intrusions caused by covert surveillance, the theft of and distribution of private property, and outright public misinformation aimed at

destroying perceived business competitors. In consequence, Defendants' conduct endangers the public good. No harm will befall the public if an injunction prohibiting the described conduct is issued. In fact, an injunction will further ensure that Defendants' avoid such invasive, misleading and unlawful conduct when dealing with the public-at-large.

91.    The public officers charged with the duty to protect Plaintiffs from Defendants' conduct are unable or unwilling to furnish adequate protection. More specifically, Plaintiffs have requested the police of the Town of Winchester to investigate and prevent the defendants' illegal conduct described above, and the said police have responded that they could not and have failed to prevent said illegal conduct.

92.    Plaintiffs have made every reasonable effort to settle this dispute and has fully complied with all obligations imposed by law.

93.    Unless a Temporary Restraining Order is issued, substantial and irreparable injury to Plaintiffs' business, property and reputation will be unavoidable.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court:

1. Grant plaintiff equitable relief by a Temporary Restraining Order issued without hearing, to be continued until hearing, and after that, made permanent, restraining and enjoining Defendants, their agents, and all those acting in concert, sympathy or conspiring with them from:

   a. Accessing, copying or distributing the ESi business plan as well as any of Plaintiffs proprietary files, documents, communications and information obtained from Plaintiffs' or their agents' computer systems, voice mail accounts or email accounts;

   b. Accessing, copying or distributing any existing audio, video or electronic recordings of or involving Plaintiffs or their agents;

   c. Obtaining access to Plaintiffs' or their agents' computer systems, email accounts, voice mail accounts, or any written, oral, wire or electronic communications involving Plaintiffs' or their agents' not directed specifically to Defendants;

   d. Recording by any means, whether audio, video or electronic, Plaintiffs or Plaintiffs' agents and their communications and computer activity without Plaintiffs' prior written authorization;

2. Order Defendants to immediately identify all parties and individuals to whom Defendants have distributed unauthorized copies of the ESi business plan as well as any of Plaintiffs proprietary files, documents, communications and information obtained from Plaintiffs' or their agents' computer systems, voice mail accounts or email accounts;

- 20 -

3.  Order the immediate impoundment of the infringing copies of the Plaintiffs' copyrighted works made by Defendants, pursuant to 17 U.S.C.A. § 503;

4.  Enter judgment in favor of Plaintiffs on each of their claims;

5.  Award statutory, actual and compensatory damages for the unlawful acts and practices alleged herein in an amount to be determined at trial;

6.  Award all monies and profits wrongfully obtained by Defendants as a result of the unlawful acts and practices alleged herein in an amount to be determined at trial;

7.  Award multiple, exemplary and punitive damages to be determined at trial;

8.  Award pre- and post-judgment interest as provided by statute;

9.  Award Plaintiffs' costs reasonably incurred in this action together with reasonable attorneys' fees incurred herein; and

10. Award such other relief as the Court deems just and proper.


## JURY DEMAND

Plaintiffs demand a jury trial on all claims so triable.

ELECTRIC-SPORTS, INC.,

_____
Michele A. Whitham  (BBO #553705)
Gabriel M. Helmer (BBO #652640)
Foley Hoag LLP
155 Seaport Blvd.
Boston, MA  02210
(617) 832-1000


ATTORNEYS FOR PLAINTIFF

Dated: December 13, 2004



## FOLEY
## HOAG LLP
ATTORNEYS AT LAW

Michele A. Whitham
Boston Office
617.832.1239
mwhitham@foleyhoag.com

December 21, 2004

**By Hand Delivery and Federal Express**

William V. Frabizio III
107 Bridge Street
Newton, Massachusetts 02458

**Re:** ***RULE 11 REQUEST FOR IMMEDIATE WITHDRAWAL OF PLEADING***
***Sportbox LLC v. Electric-Sports, Inc.[sic], Civil Action No. 04-12588 DPW***

Dear Mr. Frabizio:

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, I write to request that you immediately withdraw the complaint you have filed in the United States District Court for the District of Massachusetts in the above-referenced matter for the reasons set forth below.

As you know, on November 24, 2004, this firm wrote to your former counsel (David P. Hutchinson, Esquire of Taylor Ganson and Perrin LLC) requesting that Sportbox immediately return to Electric Sports, Inc. ("ESi") a business plan that you had misappropriated from the personal email account of one of ESi's founders, John Conway, and distributed to various third parties. The November 24th letter also requested that Sportbox take certain additional steps to ensure that all copies of the purloined business plan were retrieved and none were disclosed or disseminated further. *See Exhibit 1.* When Sportbox failed to respond to ESi's request, this firm provided a draft complaint to Mr. Hutchinson on December 9th, setting forth the claims it would file in connection with the misappropriation of its business plan if Sportbox continued to refuse to meet to attempt to resolve the matter short of litigation. *See Exhibit 2.* In response to our December 9th communication, we were informed by Mr. Hutchinson that his firm has withdrawn as counsel to Sportbox and to you. *See Exhibit 3.*

Thereafter, on December 13, 2004, you contacted me by telephone and twice requested that ESi delay the filing of the draft complaint so that the parties could in fact meet and discuss a resolution to this matter. You also requested that I send you an email suggesting dates and times for our meeting, which I promptly did. *See Exhibit 4.* Shortly thereafter, this firm learned that, notwithstanding your calls to me, you had instead filed a complaint in the United States District Court for the District of Massachusetts. The filed complaint copied, in many places word for word, ESi's draft papers, amending those papers only so far as necessary to present ESi's claims as if they were your own. Your secret filing of the cribbed complaint demonstrates that your intention in making settlement overtures to this firm had been to induce this office, through

Seaport World Trade Center West / 155 Seaport Blvd. / Boston, MA 02210-2600 / TEL: 617.832.1000 / FAX: 617.832.7000
Foley Hoag LLP                    BOSTON                    WASHINGTON, DC                    www.foleyhoag.com

William V. Frabizio III
December 21, 2004
Page 2

deception, to delay the filing of ESi's legitimate legal claims in order to win the race to the courthouse. Moreover, even preliminary investigation of the claims as pleaded by you establishes that your complaint, like your conversations with me, is grounded in demonstrably false assertions.

If you believe that a strategy of litigation by ambush and deception will confer on Sportbox some litigation or settlement advantage, I write today to inform you that you have made a serious mistake. The Federal Rules of Civil Procedure govern the action you have filed and, in this regard, you should attend in particular to Rule 11. *See Exhibit 5.* Pursuant to Rule 11, when you signed the complaint (and the amended complaint) in the above-referenced action, you made several certifications to the Court. First, you certified that the lawsuit was not being presented for any improper purpose, such as to harass my clients or to cause unnecessary delay or needless cost. Second, you certified that the claims asserted in the complaint are warranted by existing law. Third, you certified that the allegations contained in the complaint are, based upon your reasonable investigation, supported by evidence. In general, Rule 11 prohibits litigants from filing a complaint based on statements reasonably known to be false or unfounded or for improper purposes.

As you well know and contrary to the requirements of Rule 11, your complaint and amended complaint contain numerous false factual allegations that violate the Rule. By way of example only, testimonial and documentary evidence will establish that the following allegations set forth in your complaint are false:

- Paragraph 18 - You allege in this provision that Sportbox had moved its office to IMG/TWI "only to be locked out, without its files or computers" until it was able to raise investor money with Mr. Conway's assistance. In fact, you were provided space at IMG/TWI for a period of 90 days and at a price of $10,000 per month in accordance with the terms of a multi-page contract with IMG/TWI, including a requirement that an initial $10,000 payment be made by you up front. Based on representations made by you to the effect that you would be able to make the required payment imminently based on your receipt of anticipated funding, IMG/TWI permitted you to move into the space. When you were unable to make that payment even after a grace period of approximately two weeks, IMG/TWI requested that Sportbox leave the space in accordance with the terms of the contract. In response to this request, you asked for permission to leave Sportbox's property on IMG's premises, which permission was granted. It was only at this point that Mr. Conway stepped forward and offered Sportbox assistance in finding angel investors in response to your apparent lack of financing that contradicted your prior representations. We understand these facts to be supported by both IMG documents and third party witnesses to the events in question.

- Paragraph 24 - You allege in this provision that you traded a Hewlett-Packard laptop computer for Mr. Conway's personal contacts, but that "Conway has yet to part with his contact list promised to Sportbox." In fact, as you well know, Mr. Conway delivered his personal contact cards to Sportbox and the information was scanned into Sportbox's

William V. Frabizio III
December 21, 2004
Page 3

ACT! contact management software, where it exists to this day unless that software has subsequently been tampered with. (In this regard, you are reminded of your obligation not to destroy or delete any documents or information (whether electronic or hard copy) in view of the pending disputes between Sportbox and ESi, as previously set forth in this firm's letter of December 9th. *See Exhibit 6.*) Were it not the case that you were aware that Conway had delivered his contacts as promised, you would not have admitted to Mr. Conway at a meeting held on August 18, 2004, in the presence of numerous third party witnesses (described below) that you knew you "owed" Conway his computer back.

- Paragraph 31 - Your allegation that Messrs. Conway and Bortman admitted in a meeting with various third parties that they were "taking . . . information about Frabizio, even illegally accessing and tampering with his personal credit file" is also demonstrably false. As you well know, information regarding your personal credit situation was reported to Sportbox by a representative of Merchant Bank (and also by you to Messrs. Conway and Bortman) in consequence of Sportbox's attempt to enlist the Bank as its factor. Among other things, the Bank determined in conducting its background investigation of Sportbox that your personal credit rating did not meet the Bank's requirements and informed the Company that the Bank could thus not approve the account. As you know, in connection with Merchant Bank's refusal to act as a factor, Sportbox's investors convened a meeting on August 18, 2004 to discuss, among other things, the credit issue. This meeting was attended by you, Messrs. Conway and Bortman, Sportbox's investors, and both the Company's attorney and Peter Hermes, an attorney for one of the investors. In sum, your personal credit situation was thoroughly investigated and generally disclosed by banking professionals (and more specifically disclosed by you) in the normal course of business, facts documented by bank records and third-party witnesses.

These examples are but a sample of the number of demonstrably false allegations set forth in your complaint, in violation of Rule 11. Wherefore, by this letter ESi and Messrs. Conway and Bortman formally request that you immediately withdraw your filing and seek dismissal of your lawsuit with prejudice. Should you fail to withdraw the improper pleadings by January 11, 2005, Rule 11 allows my clients to seek sanctions against you, including the immediate dismissal of the case, fines, reasonable expenses and attorneys fees.

As I referenced in our communications of December 13, 2004, I urge you to obtain legal counsel for advice in this matter. If, by January 11, 2005, you have not withdrawn the pleadings that you have filed, this firm is prepared to take all necessary and appropriate legal actions to

William V. Frabizio III
December 21, 2004
Page 4

stop your ongoing course of improper conduct and to seek recompense from you for the costs you have imposed on Electric Sports, Inc., John Conway and Mark Bortman.

Very truly yours,

Michele A. Whitham

cc:  Electric Sports, Inc.
     Gabriel M. Helmer, Esquire

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of January, 2005, I caused a true copy of the above document to be served upon plaintiffs SPORTBOX, LLC and WILLIAM V. FRABIZIO III by mail.

Gabriel M. Helmer, Esquire