UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SPORTBOX LLC, and<br>WILLIAM V. FRABIZIO III<br><br>        Plaintiffs,<br><br>v.<br><br>ELECTRIC-SPORTS, INC.,<br>JOHN E. CONWAY, and MARK BORTMAN<br><br>        Defendants. | CIVIL ACTION No. 04-12588 DPW |
| ELECTRIC SPORTS, INC.,<br>JOHN E. CONWAY, and MARK BORTMAN<br><br>        Plaintiffs in Counterclaim,<br><br>v.<br><br>SPORTBOX LLC, and<br>WILLIAM V. FRABIZIO III,<br><br>        Defendants in Counterclaim. | |

**EMERGENCY MOTION FOR IMMEDIATE DISCOVERY
TO OBTAIN ELECTRONIC RECORDS
FROM AMERICA ONLINE, INC.**

Defendants Electric Sports, Inc. ("Electric Sports"), John E. Conway ("Conway") and Mark Bortman ("Bortman") hereby respectfully move this Court to immediately allow Defendants to issue subpoenas directed to America Online, Inc. ("AOL") for specific, limited discovery already identified by AOL employees that may be destroyed at any time in the normal course of AOL's business. The Verified Counterclaims in this action allege, among other things, that Frabizio and Sportbox accessed Conway's AOL account to obtain the Defendants' confidential communications and files. AOL fraud detection personnel have already identified particular connections made to Conway's AOL account from phone numbers that may be traced

to Frabizio and Sportbox, but AOL has refused to release the records of these connections without a subpoena. Because AOL keeps these records for only a short amount of time, and is likely to delete them in February 2005 in the normal course of business, it is urgent that Defendants' obtain the Court's approval to obtain discovery from AOL immediately.

In further support of this Motion, Defendants state as follows:

### BACKGROUND

1. Conway worked as a consultant for Sportbox and as a member of Sportbox's Board of Advisors between April and August 10, 2004. *See* Affidavit of John E. Conway attached hereto as *Exhibit 1*, ¶ 4.

2. On or around April 15, 2004, Sportbox agreed to purchase a laptop computer for Conway in exchange for Conway providing Sportbox with access to his personal contacts. Conway did deliver his contacts to Sportbox and received a Hewlett-Packard laptop computer for his personal use. The computer belonged solely to Conway. *See Exhibit 1*, ¶¶ 5-6.

3. On August 10, 2004, Conway and Bortman attended a meeting with the New England Patriots to negotiate a possible license on behalf of Sportbox. When they returned to the Sportbox office, Conway was told by security personnel that his consulting services with Sportbox had been terminated and that he was not allowed to enter the office to retrieve his personal property including Conway's laptop computer. *See Exhibit 1*, ¶ 7.

4. Between August 10 and September 1, 2004, Frabizio and Sportbox maintained exclusive control over Conway's laptop computer and other personal property that Conway maintained in his office at Sportbox prior to the termination of his consulting arrangement. *See Exhibit 1*, ¶ 8.

5. On August 10, 2004, when Bortman discovered that Conway had been terminated, Bortman returned to the Sportbox offices. When Bortman entered the office, he

observed Frabizio connecting a Sportbox computer to Conway's laptop computer and transferring all of Conway's personal files from Conway's computer to one owned by Sportbox. Bortman warned Frabizio that such access was improper, but Frabizio continued to access, view and copy Conway's personal files.  *See* Defendants' Answer and Verified Counterclaims (Court Docket No. 7) at ¶ 30.

6. Between August 10 and September 1, 2004, Conway requested numerous times that Sportbox or Frabizio return his laptop computer.  *See Exhibit 1*, ¶ 9.

7. On September 1, 2004, after Conway repeated his written demands for return of his property, Frabizio returned Conway's laptop computer in damaged form.  Investigation of Conway's laptop computer revealed that between August 10 and September 1, 2004, Frabizio had obtained access to Conway's personal email account at America Online ("AOL"), and accessed Conway's personal files, including those files accessible only through Conway's AOL account.  *See Exhibit 1*, ¶ 10.

8. In September 2004, Conway and Bortman discovered that Frabizio had sent emails to several third-party investors that disparaged ESi, Bortman and Conway and accused them of the theft of Sportbox proprietary information.  These disparaging emails contained unauthorized, electronic copies of a certain version of the ESi business plan that Conway and Bortman had developed after their departures from Sportbox.  *See Exhibit 1*, ¶ 11.

9. Conway and Bortman investigated the disclosure of this version of the ESi business plan and discovered that the particular version of the ESi business plan that Frabizio has accessed had been stored within Conway's AOL account.  Conway accessed his AOL account primarily from his laptop computer which would log in to Conway's AOL account when Conway executed AOL software.  Conway concluded that Frabizio had obtained the ESi

business plan through Conway's personal laptop computer and personal AOL account. *See Exhibit 1*, ¶¶ 11-14.

10. In September 2004, Conway contacted AOL to determine whether his AOL account had been accessed without his authorization. AOL fraud detection personnel stated that Conway's AOL account had been accessed from three phone numbers during the time that Conway's laptop computer was held by Sportbox and Frabizio. The phone numbers identified by the AOL fraud detection personnel, contained telephone exchanges that were registered to locations in which Frabizio, Anna Mariani Frabizio (Frabizio's fiancée at the time) and a Frabizio family member maintain business offices or residences. *See Exhibit 1*, ¶ 17.

11. During Conway's telephone conversations with AOL, AOL personnel told Conway that they would not provide copies of AOL connection records unless Conway provided a subpoena requesting such records. *See Exhibit 1*, ¶¶ 15, 18.

12. Subsequent to this conversation with AOL, counsel for Conway contacted AOL and requested that AOL provide copies of the connection records demonstrating the fraudulent usage of Conway's AOL account. AOL did not respond to this communication. *See Exhibit 1*, ¶ 19.

13. On December 10, 2004, Frabizio initiated this lawsuit by filing the Complaint alleging, as though they were Frabizio's and Sportbox's own, the same legal claims asserted by Electric Sports, Conway and Bortman in the draft complaint provided to Frabizio on December 9. *Compare* Complaint (Court Docket No. 1), Amended Complaint (Court Docket No. 2) *with* Exhibit A to Defendants' Answer and Verified Counterclaims (Court Docket No. 7).

14. On January 14, 2005, Defendants filed their Answer and Verified Counterclaims asserting against Sportbox and Frabizio, among other things, Defendants' claims against

Sportbox and Frabizio for illegally accessing Conway's personal computer, Conway's AOL account as well as the confidential and proprietary files and communications contained in Conway's AOL account.

## ARGUMENT

15. Defendants require immediate discovery from AOL because the best evidence of Frabizio's and Sportbox's illegal conduct -- ephemeral electronic records that AOL personnel have already identified -- may be deleted at any time by AOL's automatic systems.

16. Defendants' extensive pre-filing investigation of the events underlying this matter revealed not only that Frabizio and Sportbox had obtained Defendants' confidential and proprietary files, but that Frabizio and Sportbox had most likely done so by accessing Conway's AOL account from phone numbers registered to Frabizio and his immediate family. During this investigation, AOL, through its fraud detection personnel, identified the connections used by Frabizio and Sportbox to access Conway's account, but would not release the records of these connections absent the issuance of a subpoena.

17. These records are directly relevant to Defendants' counterclaims, including claims for violations of the Computer Fraud and Abuse Act and Stored Communications Act, as well as claims for conversion, invasion of privacy, and misappropriation of trade secrets. *See generally* Answer and Verified Counterclaims (Court Docket No. 7).

18. AOL maintains the detailed electronic records at issue, but these records are likely to be deleted in the normal course of operation. Defendants are informed and believe that AOL detailed billing records identify each connection made to Conway's AOL account, but that the electronic files memorialize only the prior six (6) months of connections. In the normal course of operation, the electronic records relevant to this lawsuit are deleted day by day and, because

Frabizio's and Sportbox's unauthorized connections occurred in August 2004, the most relevant records are likely to be deleted in February 2005, if they have not been destroyed already.

19.  In light of these circumstances, the Court has ample justification to allow expedited discovery.  Pursuant to Federal Rule 26(d) and the Court's equitable powers, the Court may allow Defendants to take immediate discovery should fairness or justice so require.  "Upon a proper showing, [] the court could make whatever order about sequence and timing of discovery the necessities of a case require."   7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* §2047 (3rd ed. 2001).  Typically, courts allow parties to conduct such immediate discovery where a party establishes "good cause."  *See Semitool, Inc. v. Tokyo Electron Am., Inc.* 208 F.R.D. 273, 275-76 (N.D.Cal. 2002) (granting in part motion for expedited discovery).

20.  Where evidence may be consumed or destroyed with in the normal course of business, thereby disadvantaging one or more parties to the litigation, good cause exists for immediate discovery.  *Pod-Ners, LLC v. Northern Feed & Bean*, 204 F.R.D. 675, 676 (D.Colo. 2002) (allowing expedited discovery to inspect beans that could be sold or distributed at any time in the normal course of business).  Similarly, if limited discovery is not allowed immediately in this case, AOL's records of the events set forth in the Defendants' Verified Counterclaims may be lost forever.

21.  In addition, no one will be prejudiced by the preservation and recovery of Conway's AOL records.  AOL has represented their willingness to provide the records in response to a properly issued subpoena.  The only party with a proprietary interest in such records is Conway, who by this motion authorizes and seeks the immediate production of those

records. Frabizio and Sportbox, on the other hand, have absolutely no proprietary interest in the requested discovery.

WHEREFORE, Defendants respectfully request that this Court grant leave for Defendants to take immediate discovery from third party America Online, Inc. concerning John E. Conway's AOL account.

Respectfully submitted,

ELECTRIC SPORTS, INC.,

 /s/ Gabriel M. Helmer
Michele A. Whitham  (BBO No. 553705)
Gabriel M. Helmer (BBO No. 652640)
Foley Hoag LLP
155 Seaport Blvd.
Boston, MA  02210
(617) 832-1000

Dated: January 31, 2005                    ATTORNEYS FOR PLAINTIFFS

## LOCAL RULE 7.1 CERTIFICATION

The undersigned counsel for the plaintiffs hereby certifies that counsel for defendants attempted in good faith to confer on this motion with plaintiffs SPORTBOX, LLC and WILLIAM V. FRABIZIO III by telephone on January 31, 2005, but was unable to resolve or narrow the issues in dispute.

 /s/ Gabriel M. Helmer
Gabriel M. Helmer

- 8 -

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 31st day of January, 2005, I caused a true copy of the above document to be served upon SPORTBOX, LLC and WILLIAM V. FRABIZIO III by mail.


       **/s/ Gabriel M. Helmer**
       Gabriel M. Helmer

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SPORTBOX LLC, and<br>WILLIAM V. FRABIZIO III<br><br>    Plaintiffs,<br><br>v.<br><br>ELECTRIC-SPORTS, INC.,<br>JOHN E. CONWAY, and MARK BORTMAN<br><br>    Defendants. | CIVIL ACTION No. 04-12588 DPW |
| ELECTRIC SPORTS, INC.,<br>JOHN E. CONWAY, and MARK BORTMAN<br><br>    Plaintiffs in Counterclaim,<br><br>v.<br><br>SPORTBOX LLC, and<br>WILLIAM V. FRABIZIO III,<br><br>    Defendants in Counterclaim. | |

## AFFIDAVIT OF JOHN E. CONWAY

I, John E. Conway, hereby depose and state as follows:

1. I am over the age of 18 and am otherwise competent to make this Affidavit.

2. I have personal knowledge of the facts set forth in this Affidavit.

3. I currently am employed as the Chief Operating Officer of Electric Sports, Inc. ("Electric Sports").

4. Between April 2004 and August 10, 2004, I worked as a consultant for Sportbox LLC ("Sportbox") the Counterclaim Defendant in this action. I was also engaged as a member of Sportbox's Board of Advisors.

5.  On or around April 15, 2004, Sportbox agreed to purchase a laptop computer for me. In exchange, I agreed to provide Sportbox with access to my personal collection of business contacts.

6.  Shortly after the April 2004 agreement, I did deliver the collection of contacts to Sportbox and Sportbox provided me with a Hewlett-Packard laptop computer. It was agreed that the laptop computer would belong solely to me and would not be Sportbox property.

7.  On August 10, 2004, Mark Bortman ("Bortman") and I attended a meeting with the New England Patriots to negotiate a possible license on behalf of Sportbox. When we returned to the Sportbox office, I was told by security personnel that my consulting services with Sportbox had been terminated and that I was not allowed to enter the office to retrieve my personal property including my laptop computer.

8.  Between August 10 and September 1, 2004, Frabizio and Sportbox maintained exclusive control over my laptop computer and other personal property that I had maintained in my office at Sportbox prior to the termination of my consulting arrangement.

9.  Between August 10 and September 1, 2004, I requested numerous times that Sportbox or Frabizio return my laptop computer.

10. On September 1, 2004, after my attorney had repeated written demands for the return of my property, Frabizio returned my laptop computer in damaged form. Investigation of my laptop computer revealed that between August 10 and September 1, 2004, Frabizio had obtained access to my personal email account at America Online ("AOL"), and accessed my personal files as well as communications and files involving Electric Sports and Bortman.

11. In September 2004, Bortman and I discovered that Frabizio had sent emails to several third-party investors that disparaged ESi, Bortman and myself and accused us of the theft

of Sportbox proprietary information. These disparaging emails contained unauthorized, electronic copies of a particular version of the ESi business plan that Bortman and I had developed after our departures from Sportbox.

12. Bortman and I investigated the disclosure of the particular version of the ESi business plan and discovered that the version of the ESi business plan that Frabizio has accessed had been stored within my AOL account.

13. Prior to Frabizio's and Sportbox's seizure of my laptop computer, I typically accessed my AOL account from my laptop computer. AOL software was installed on my laptop computer so that when I executed the AOL software, my laptop computer would log in to my AOL account.

14. Because Frabizio and Sportbox had disclosed this particular version of the ESi business plan to third parties, and because the only way Frabizio could have accessed that version would have been by accessing my AOL account, I concluded that Frabizio had used my laptop computer to gain access to my personal AOL account.

15. In September 2004, I contacted AOL to determine whether my AOL account had been accessed without his authorization. Customer service representatives told me that I could not obtain that kind of information without a subpoena.

16. I later contacted AOL's fraud detection unit to determine whether my account had been accessed without my authorization during the time that Frabizio and Sportbox had sole custody and control over my laptop computer.

17. AOL fraud detection personnel stated that my AOL account had been accessed from three phone numbers during the time that Conway's laptop computer was held by Sportbox and Frabizio. The phone numbers identified by the AOL fraud detection personnel, contained

telephone exchanges that were registered to locations in which Frabizio, Anna Mariani Frabizio and a Frabizio family member maintain business offices or residences.

18. AOL fraud detection personnel told me that they would not provide copies of the connection records that identified these unauthorized connections unless I could provide AOL with a subpoena requesting such records.

19. Subsequent to this conversation with AOL, my attorney contacted AOL and requested that AOL provide copies of the connection records demonstrating the fraudulent usage of my AOL account. AOL did not respond to his communication.

20. I understand that AOL's electronic records of the connections to my AOL account is updated daily and that these updates may replace information and data already stored in those records.

Signed under the pains and penalties of perjury on this 31st day of January, 2005.

                                          **/s/ John E. Conway**
                                          John E. Conway