UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SPORTBOX LLC, and<br>WILLIAM V. FRABIZIO III<br><br>        Plaintiffs,<br><br>v.<br><br>ELECTRIC-SPORTS, INC.,<br>JOHN E. CONWAY, and MARK BORTMAN<br><br>        Defendants.<br><br>ELECTRIC SPORTS, INC.,<br>JOHN E. CONWAY, and MARK BORTMAN<br><br>        Plaintiffs in Counterclaim,<br><br>v.<br><br>SPORTBOX LLC, and<br>WILLIAM V. FRABIZIO III,<br><br>        Defendants in Counterclaim. | CIVIL ACTION No. 04-12588 DPW<br><br>**REQUEST FOR ORAL ARGUMENT** |

**MEMORANDUM OF LAW IN OPPOSITION TO
WILLIAM V. FRABIZIO III'S EMERGENCY MOTION
TO EXCUSE FOLEY HOAG LLP AS DEFENDANTS' COUNSEL**

      Defendants Electric Sports, Inc. ("Electric Sports"), John E. Conway ("Conway") and Mark Bortman ("Bortman") (collectively "Defendants") respectfully submit this memorandum of law in response to *pro se* Plaintiff William V. Frabizio III's ("Frabizio's") Emergency Motion to Excuse Foley Hoag as Defendants' Counsel (the "Emergency Motion"). Frabizio's scandalous and impertinent motion seeks to disqualify Defendants' law firm on the basis of ***demonstrably false allegations*** that Foley Hoag (a) was engaged in early July 2004 by putative

Plaintiff Sportbox LLC[1] and Frabizio in connection with a business matter; (b) had "direct and intricate knowledge of Plaintiffs' business, infrastructure and personal information about Plaintiffs;" and (c) is a party to "certain illegal activities, specifically wiretapping."[2]  As there are no facts underlying the motion at all, let alone facts establishing that Foley Hoag has a conflict of interest[3] that disqualifies it from its current representation of Electric Sports, Mr. Conway and Mr. Bortman, the motion should be dismissed forthwith and stricken from the record of this case, and Frabizio should be sanctioned for knowingly and willfully abusing process (in plain violation of Fed. R. Civ. P. 11[4]) by filing this Emergency Motion for the transparent purpose of seeking to harass Defendants by attacking their counsel.[5]  In addition, Frabizio should be barred

---

[1] In fact, Sportbox is not represented by counsel in this matter, as it must be under Massachusetts law as a corporate entity, and Defendants/Plaintiffs in Counterclaims have thus moved to dismiss the corporate party as improperly joined in this action.

[2] Frabizio attempts to advance a fourth reason for disqualifying Foley Hoag based on his alleged memory of the substance of a privileged attorney/client communication that was inadvertently electronically misdelivered to Mr. Bortman at an email account maintained by Sportbox.  As set forth more fully in this Opposition, Frabizio should be barred as a matter of law from relying on a privileged communication with Defendants that was intercepted by Sportbox.  Moreover, where -- as Frabizio would have it -- whatever he thinks he saw involved an attorney-client communication regarding possible legal tactics, such matter is not a basis for disqualification, as a matter of law, especially where, as here, Frabizio -- not the Defendants -- instituted the instant legal action.  See pp. 10-12 below.

[3] Although not presented as such, Frabizio's Emergency Motion may be construed as a motion to disqualify counsel pursuant to Rule 1.9(a) of the Massachusetts Rules of Professional Conduct concerning attorney conflicts of interest.  To expedite the resolution of this motion, Defendants will construe it as though it expressly set forth such a claim, even though Frabizio has not stated any particular legal grounds to justify the withdrawal of counsel.

[4] Counsel for Defendants delivered a formal Rule 11 demand letter to Frabizio on March 15, 2005, spelling out the failures of his filing and demanding that he withdraw his pleading.  Should the Court elect not to impose sanctions pursuant to Fed. R. Civ. P. 11(c) on the face of Frabizio's false pleading, Defendants request that a schedule for briefing the Rule 11 issue be established forthwith.  See Fed. R. Civ. P. 11(c)(1)(B) (court may "[o]n its own initiative, . . . enter an order describing the specific conduct that appears to violate [Rule 11(b)] and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto."); 11(c)(1)(B); see also EEOC v. Tandem Computers, Inc., 158 F.R.D. 224, 299 (D.Mass. 1994) (denying frivolous post-trial Rule 11 motion and sanctioning the movant sua sponte under Rule 11(c)(1)(B)).

[5] As set forth in the counterclaims filed in this matter by Defendants/Plaintiffs in Counterclaim Electric Sports, Conway and Bortman, Frabizio's original pleading in this case is a "knock off" of a draft complaint initially enclosed with a letter sent to Frabizio's counsel by Defendants/Plaintiffs in Counterclaims in an effort to resolve certain lingering business disputes between the parties.  Rather than respond to the concerns expressed in the letter, Frabizio responded by dismissing his attorney, creating a "copycat" version of Plaintiffs in Counterclaim's draft pleading (by simply reversing the roles of the parties and mimicking Plaintiffs in Counterclaims' allegations) and

from ever again attempting to introduce as evidence in this litigation a privileged email communication belonging to Defendants that he has improperly sought to add as an attachment (*i.e.*, Exhibit 18) to his Amended Complaint.[6]

### FACTUAL BACKGROUND

1.      On July 8, 2004, Mark Bortman, then an employee of Sportbox LLC, contacted Michele A. Whitham, Esquire, a partner of the law firm of Foley Hoag LLP, and inquired of Ms. Whitham whether Foley Hoag would agree to be interviewed to serve as outside counsel to Sportbox for the purpose of providing certain specialized legal services to the company, in particular licensing, intellectual property litigation and private equity financing services. Mr. Bortman was familiar with Foley Hoag and Ms. Whitham because he had retained their services from October 16, 2002 through April 11, 2003 to serve as his personal attorney in severance negotiations with a former employer. Before this telephone call, Ms. Whitham had never heard of Sportbox LLC and had not been in contact with Mr. Bortman for more than a year. The call itself was brief, lasting only a few minutes, and focused on Mr. Bortman's efforts to identify and interview candidates for an outside corporate counsel role. Mr. Bortman provided Foley Hoag with virtually no information about the company except that it sold radios branded with sports teams' logos. *See* Affidavit of Michele A. Whitham, Esquire Filed In Support of Opposition to Emergency Motion to Excuse Foley Hoag as Defendants' Counsel, dated March 18, 2005 ("Whitham Aff.") at ¶¶ 3-4 and Exhibits A and B.

---

filing this lawsuit. Among their counterclaims, Plaintiffs in Counterclaim request sanctions for Frabizio's evident abuse of process in filing the "copycat" pleading.

[6] Defendants have simultaneously opposed Frabizio's attempt to file a Second Amended Complaint with the Court without benefit of motion justifying the filing.

2. Promptly following the conversation with Mr. Bortman, Ms. Whitham undertook a conflicts check and identified a team of Foley Hoag lawyers qualified to provide the legal services Mr. Bortman had inquired about on behalf of Sportbox. Whitham Aff. ¶ 6.

3. The next day, on July 9, 2004, Mr. Bortman and Ms. Whitham emailed back and forth about scheduling the requested meeting. In addition, Ms. Whitham forwarded to Mr. Bortman the resumes of the members of the proposed legal team. Whitham Aff. ¶¶ 7-8 and Exhibits C, D, E, F and G.

4. Mr. Bortman and Ms. Whitham did not communicate again until three days later, on July 12, 2004, when they resumed their efforts to schedule a meeting via email. After a series of exchanges, they decided to put the meeting off until sometime in August given the press of business for all concerned. Whitham Aff. ¶ 9 and Exhibit H.

5. The single, brief telephone conversation between Mr. Bortman and Ms. Whitham, together with the emails attached at Exhibits A and Exhibits C through H to the Whitham Affidavit, constitute the entirety of Foley Hoag's communications with Mr. Bortman on behalf of Sportbox LLC and Mr. Bortman's colleagues at the company. In none of these communications did Mr. Bortman communicate to Foley Hoag any confidential, proprietary or trade secret information belonging to Sportbox. In particular, neither Foley Hoag nor Ms. Whitham was ever provided any inside information about Sportbox, including but not limited to business plans, financial information, or detailed knowledge of the company's business or infrastructure, nor did Foley Hoag or Ms. Whitham ever receive personal information about Sportbox or Frabizio. In addition, neither the name nor the subject of "Image Innovations," or of a possible partnership between Sportbox and Image Innovations, ever came up. In addition, there was never any discussion of taping a telephone conversation with Image Innovations, nor

was Ms. Whitham or Foley Hoag ever a party to any such taping. Further, at no time did Foley Hoag ever accept any assignment from, conduct any work for, bill any time to or collect any fees for services rendered from Sportbox or any of its agents. Whitham Aff. ¶¶ 10 - 11.

6. Following the July 12th exchange, Mr. Bortman initiated no further communications with Foley Hoag or Ms. Whitham for fully a month. Then, on August 13, 2004, Mr. Bortman asked Ms. Whitham via email to schedule time to speak. An appointment was scheduled for August 16, 2004, at which time Mr. Bortman informed Ms. Whitham that he was resigning his employment from Sportbox and that no meeting would be scheduled to interview Foley Hoag to represent that company. Whitham Aff. ¶ 12.

7. On or about August 17, 2004, following Mr. Bortman's resignation from Sportbox, Mr. Bortman retained Foley Hoag to represent him in negotiating his separation from Sportbox. Also on or about August 25, 2004, Electric Sports, a new company being formed by Mr. Bortman and John E. Conway, retained Foley Hoag to represent that company. At no time prior to its acceptance of the Electric Sports representation had anyone from Foley Hoag ever met or communicated with Frabizio or Sportbox. Whitham Aff. ¶ 13.

8. On or about September 13, 2004, Ms. Whitham directed a privileged communication to Mr. Conway and Mr. Bortman, in their capacities as agents of Electric Sports and pursuant to a joint defense agreement between them. Due, however, to an electronic communication "glitch" apparently caused by the operation of Foley Hoag's email system, rather than delivering the email directed to Mr. Bortman to his personal email address as intended, the email system apparently picked up from its archives Mr. Bortman's former email address at Sportbox and misdelivered the email to that address.[7] Whitham Aff. ¶ 14.

---

[7] The September 13th email was sent in response to a prior communication from Conway, copied to Mr. Bortman at his personal email address *bortman@comcast.net*. It remains unclear how a "Reply All" command to Mr. Bortman

9. In oral and written communications with counsel for Sportbox dating from early September, 2004, Ms. Whitham had informed Sportbox that it was continuing to maintain unchanged Mr. Bortman's email -- and voicemail -- addresses at Sportbox, thereby erroneously communicating to the world at large that Mr. Bortman was still an employee of Sportbox. In those communications, Ms. Whitham had requested that Sportbox immediately desist from this practice. Whitham Aff. ¶ 15.

10. By email dated September 15, 2005, counsel for Sportbox (David P. Hutchinson of Taylor, Ganson & Perrin, L.L.P.) informed Ms. Whitham about the misdelivered email, acknowledging in his email that the delivery to Sportbox was "erroneous[]." Whitham Aff. ¶ 16 and Exhibit I.

11. Thereafter, counsel for Sportbox agreed to delete all copies of the email from Sportbox's and counsel's systems, stating in relevant part, " . . . out of continuing professional courtesy we have deleted all instances of the email in question on our system and I have a confirmation from my client that they have done the same." Whitham Aff. ¶ 17 and Exhibit J. Despite counsel's representation, Mr. Frabizio apparently has retained, at the minimum, the email's header and is now attempting to use it.

## ARGUMENT

Frabizio's Emergency Motion is an outrageous flight of fantasy, filled with bald-faced lies and false accusations regarding the conduct of counsel for Defendants/Plaintiffs in Counterclaim and improperly advanced in violation of Rule 11. Where as here there are no facts

---

at his personal address could have been delivered to Sportbox. In view of the allegations asserted in this case by Plaintiffs in Counterclaim regarding Mr. Frabizio's interference with electronic communications, this misdelivery will be a subject of discovery in the litigation.

whatsoever that support the conflict of interest Frabizio apparently alleges, the Emergency Motion should be dismissed out of hand.

I. **FRABIZIO'S REQUEST TO EXCUSE FOLEY HOAG IS GROUNDLESS AND MUST BE DENIED**

Frabizio's claim that Foley Hoag should be disqualified as counsel, based on an alleged attorney-client relationship with Frabizio and Sportbox, is not supported by any facts whatsoever, is contrary to existing law and was brought purely to continue Frabizio's campaign of harassment against the Defendants. See generally Verified Counterclaims (Court Docket No. 7). "Disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary." ebix.com, Inc. v. McCracken, 312 F.Supp.2d 82, 91 (D.Mass 2004) (quoting Adoption of Erica, 426 Mass 55, 58 (1997)). Indeed, courts have observed that "cautious scrutiny" should attend motions to disqualify counsel precisely because, as here, they are often brought to harass. See Cañada v. Rey Hernández, 193 F.Supp.2d 409, 411 (D.P.R. 2002); ebix.com, 312 F.Supp.2d at 91; Adoption of Erica, 426 Mass. at 64. Frabizio's motion cannot survive such scrutiny because, as set forth in the Affidavit of Michele A. Whitham, Esquire, accompanying this Opposition, it is entirely unsupported by any facts.

Rule 1.9(a) of the Massachusetts Rules of Professional Conduct provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

The Rule would forbid serial representations in this case if the following three factors existed: (1) an attorney-client relationship had previously existed between Foley Hoag, Frabizio and Sportbox; (2) that prior representation was "substantially related" to Foley Hoag's current

representation of Electric Sports, Conway and Bortman; and (3) the current representation is adverse to the interests of Sportbox and Frabizio. See Howe Inv., Ltd. v. Perez Y Cia. De Puerto Rico, Inc., 96 F.Supp.2d 106, 109 (D.P.R. 2000) (denying motion to disqualify); Ageloff v. Noranda, Inc., 936 F.Supp. 72, 75 (D.R.I. 1996) (reversing magistrate judge's denial of motion to admit attorneys *pro hac vice*). Disqualifying a "party's chosen attorney is a serious matter which could not be supported by the mere possibility of a conflict." Somascan Plaza v. Siemens, 187 F.R.D. 34, 37 (D.P.R.1999) (citing Richmond Hilton Assoc. v. City of Richmond, 690 F.2d 1086, 1089 (4th Cir.1982)). Where, as here, Frabizio cannot demonstrate the existence of an attorney-client relationship and thus even the "mere possibility of a conflict" -- let alone an actual conflict of interest -- it would be grossly improper to disqualify present counsel.

Foley Hoag has never represented either Frabizio or Sportbox, never executed any engagement agreement with Frabizio or Sportbox, and never received any compensation from Frabizio or Sportbox. Foley Hoag has never appeared on behalf of Frabizio or Sportbox or performed any services for Frabizio or Sportbox. Most importantly, Foley Hoag never engaged in privileged or confidential communications with Frabizio or Sportbox and, in fact, never learned any information about Sportbox in connection with being asked to sit for an interview (except generally that it sold sports radios). "It is self-evident that for the attorney-client privilege to attach, there must first be a communication." Epstein, The Attorney-Client Privilege and the Work Product Doctrine (3rd ed. 1997), at 35. Moreover, even if communication between Frabizio, Sportbox and Foley Hoag had occurred -- which it did not -- "the court must inquire into the substance of the information that passed between the party and the attorney" to determine whether "confidences were disclosed to the attorney bearing on the subject matter of the representation." Howe Inv., 96 F.Supp.2d at 110 (quoting Kevlik v. Goldstein, 724 F.2d 844,

850 (1st Cir. 1984) and Polyagro Plastics, Inc. v. Cincinnati Milacron, Inc., 903 F.Supp. 253, 257 (D.P.R. 1995)). Since Bortman made no such disclosures to Foley Hoag on behalf of Sportbox, or Fabrizio has not established that he and Sportbox had *any* communications with Foley Hoag, let alone communications about the subject matter in dispute, Frabizio has not satisfied the burden to demonstrate that he and Sportbox enjoyed an attorney-client relationship with Defendants' counsel.

As support for his Emergency Motion, Frabizio relies solely upon an email dated July 9, 2004 sent from Michele A. Whitham, Esquire of Foley Hoag, to Bortman. The email contained no legal advice, legal analysis or confidential information of any kind. Rather, it contained the resumes of attorneys who would be available to meet with Bortman's "colleagues at Sportbox" in response to an invitation to interview. All that may be reasonably inferred from the document that Frabizio relies upon is that, in the beginning of July 2004, Bortman invited attorneys in litigation, corporate transactions and intellectual property to meet with Frabizio and Sportbox. The record demonstrates, however, that this meeting was postponed and ultimately cancelled because the prospective participants were too busy to meet. Frabizio and Sportbox thus never met or communicated with attorneys from Foley Hoag. On these facts, there is not the hint or a whiff of an attorney-client relationship ever existing between Foley Hoag, Frabizio and Sportbox.

To the contrary, at all times relevant to this lawsuit, Frabizio and Sportbox were and, at least with regard to some matters, still are jointly represented by David P. Hutchinson, Esquire of Taylor, Ganson & Perrin, L.L.P. "While not determinative, the fact that the [Plaintiffs] retained separate counsel and did not pay [Defendants'] lawyers for services are indicia that an attorney-client relationship did not exist." Ageloff, 936 F.Supp. at 75. Similarly, not only have Frabizio

and Sportbox retained their own attorney to represent their interests, but they have never paid Foley Hoag for legal advice. More to the point, prior to Frabizio's March 2nd email demanding that Foley Hoag withdraw as counsel, Frabizio and Sportbox have never indicated any interest in retaining Foley Hoag. Instead, before Foley Hoag could ever meet or communicate with Frabizio and Sportbox, relations between Bortman and Sportbox became adverse and the suggested interview never happened. See Emergency Motion at p. 1 (admitting "Foley was not retained by Plaintiffs….").

## II. FRABIZIO'S ALLEGED MEMORY OF A PRIVILEGED COMMUNICATION DIRECTED TO BORTMAN IS NEITHER DISCOVERABLE NOR ADMISSIBLE AND, IN ANY EVENT, IS IRRELEVANT TO THE MOTION TO EXCUSE

Frabizio also resorts to trying to advance his Emergency Motion by reciting his alleged memory of a privileged email communication between Foley Hoag and Mr. Bortman,[8] apparently in an effort to suggest that Foley Hoag should be disqualified because the firm has engaged in some kind of abuse of process, and threatening to attack "Foley's credentials" before "all bar associations, overseers, and any other organization." As an initial matter, this Court should not credit Mr. Frabizio's purported memory of an email he long ago destroyed. As plainly set forth in Defendants Opposition and the Affidavit filed in support thereof, Mr. Frabizio has flatly misstated the facts in his Emergency Motion and is not a credible source.

In any event, to whatever extent the email at issue were discoverable -- which it is not -- as described, it has no bearing on whether or not a conflict of interest sufficient to disqualify

---

[8] To the extent that Frabizio's Emergency Motion improperly seeks to use Frabizio's contrived recollection of the privileged email to compel discovery of "all records of [Foley Hoag's] contact with Bortman during his time of employ with Sportbox,," the short answer is that they are attached as exhibits to the Whitham Affidavit. In any event, Frabizio is certainly not entitled to production of the privileged email he purports to describe. Even if he had properly made and briefed a motion to compel pursuant to Federal Rule 26, which he has not, Frabizio is only entitled to the production of such documents "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). Frabizio has not made any such showing.

Foley Hoag exists. Even if the abuse alleged had occurred -- which it did not -- such an occurrence, even if discoverable, would only be relevant to the issue of sanctions, not disqualification. Moreover, the abuse alleged by Frabizio -- *i.e.*, counsel allegedly saying "I like the way you think" in response to an email in which counsel's clients purportedly discussed the possibility that Electric Sport's claims would put Plaintiffs "in to [sic] receivership" -- is not an abuse of process as a matter of law for several reasons. No "process" whatsoever is encompassed by the alleged discussion of potential legal action and even if any such discussions *had* led to the filing of a complaint, there would be no abuse of process. For obvious reasons, courts do not permit abuse of process claims to proceed where the "process" asserted is merely the filing of a civil lawsuit. According to the First Circuit, "[f]iling of a lawsuit is a 'regular' use of process, and therefore may not on its own fulfill the requirement of an abusive act, even if the decision to sue was influenced by a wrongful motive, purpose or intent." Simon v. Navon, 71 F.3d 9, 16 (1st Cir. 1995) (reversing jury verdict because plaintiff failed to produce evidence independent of motive to prove that the lawsuit was filed for an improper, collateral purpose). And, of course, it is Frabizio, not Defendants/Plaintiffs in Counterclaim, who initiated litigation here, eliciting only a defensive filing from Electric Sports, Conway and Bortman -- a response that was required by the Federal Rules.

Furthermore, the Defendants are entitled to assert legal claims to obtain legally mandated relief without becoming liable for abuse of process. As the United States District Court for the District of Massachusetts made clear in Broadway Management Services Ltd. v. Cullinet Software, Inc., 652 F. Supp. 1501, 1503 (D. Mass. 1987) (dismissing abuse of process claim on grounds that claim not stated by alleging mere commencement of litigation to enforce claim that

person commencing litigation knows or reasonably should have known to be groundless, and granting motion to dismiss abuse of process claim):

> [N]o Massachusetts case has held that an intention to cause a party to expend substantial time and money to defend against the claims in a suit constitutes an 'ulterior motive.' . . . [T]he cases show that 'ulterior motive' is more than the intent to harass; there must be intention to use process for coercion or harassment to obtain something not properly part of the suit.

See also Vahlsing v. Commercial Union Ins. Co. Inc., 928 F.2d 486, 490 (1st Cir. 1991) ("When process is employed for the purpose for which the law intends its use, no abuse of process occurs even though the person using the process may have an improper motive in addition to his lawful intention.").

Moreover, the purported email is irrelevant as a factual matter. Frabizio apparently seeks these communications to demonstrate that Frabizio and Sportbox engaged Foley Hoag. An attorney-client relationship, however, may only be established through communications between counsel and the alleged clients, in this case, Frabizio and Sportbox. Where, as here, Frabizio has not even asserted that he and Sportbox actually obtained legal advice from Foley Hoag or ever contemplated such an attorney-client relationship, no grounds whatsoever exist for the introduction of a privileged communication that admittedly only passed between Bortman and Foley Hoag only after the firm was retained as counsel to Bortman and Electric Sports. As Frabizio's wild assertions about the remembered substance of a privileged communication inadmissible in this matter are wholly irrelevant to any motion to disqualify Foley Hoag based on an alleged conflict of interest, they should be disregarded entirely in deciding the motion and this Court should rebuff Frabizio's attempt to sabotage the Defendants' relationship with their litigation counsel by dismissing the Emergency Motion.

**CONCLUSION**

Wherefore, because there is no evidence whatsoever of any attorney-client relationship ever existing between Foley Hoag and Frabizio and Sportbox, no conflict of interest exists as a matter of law. Accordingly, there is no basis for disqualifying Foley Hoag from representing the Defendants in this case. The motion should be denied and Defendants should be awarded all fees and costs in opposing this baseless motion.

**REQUEST FOR ORAL ARGUMENT**

Defendants respectfully request that the Court schedule oral argument of ten (10) minutes per side to clarify and resolve this matter.

> Respectfully submitted,
>
> ELECTRIC SPORTS, INC., MARK
> BORTMAN and JOHN E. CONWAY,
>
>
>    /s/ Gabriel M. Helmer
> Michele A. Whitham (BBO No. 553705)
> Gabriel M. Helmer (BBO No. 652640)
> Foley Hoag LLP
> 155 Seaport Blvd.
> Boston, MA 02210
> (617) 832-1000

Dated: March 18, 2005　　　　　　　　　　　　ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of March, 2005, I caused a true copy of the above document to be served upon SPORTBOX, LLC and WILLIAM V. FRABIZIO III by mail.

>    /s/ Gabriel M. Helmer
> Gabriel M. Helmer

B3003727.2