UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SPORTBOX LLC, and<br>WILLIAM V. FRABIZIO III<br><br>        Plaintiffs,<br><br>v.<br><br>ELECTRIC-SPORTS, INC.,<br>JOHN E. CONWAY, and MARK BORTMAN<br><br>        Defendants. | CIVIL ACTION No. 04-12588 DPW |
| ELECTRIC SPORTS, INC.,<br>JOHN E. CONWAY, and MARK BORTMAN<br><br><br>        Plaintiffs in Counterclaim,<br><br><br>v.<br><br>SPORTBOX LLC, and<br>WILLIAM V. FRABIZIO III,<br><br><br>        Defendants in Counterclaim. | |

**DEFENDANTS'/PLAINTIFF IN COUNTERCLAIM'S REQUEST FOR
JUDICIAL NOTICE OF
WILLIAM V. FRABIZIO III'S HISTORY OF ABUSIVE LEGAL FILINGS,
FILED IN SUPPORT OF DEFENDANTS'
LOCAL RULE 16.1 STATEMENT (SEEKING COURT INSTRUCTION TO
FRABIZIO REGARDING LITIGATION PROTOCOLS AND MOTION PAPERS)[1]**

Defendants/Plaintiffs in Counterclaim Electric Sports, Inc., John E. Conway and Mark

Bortman (collectively, the "Electric Sports Parties") respectfully request that, in connection with

the March 24, 2005 Scheduling Conference, this Court take judicial notice of prior proceedings

in which *pro se* Plaintiff William V. Frabizio ("Frabizio") demonstrated a pattern of improper

---

[1] See Defendants'/Plaintiff in Counterclaim's Statement Pursuant to Local Rule 16.1 (Court Docket No. 19) at II.C
and II.D.

and vexatious conduct and court filings paralleling that evidenced in this proceeding.  In

particular, the Electric Sports Parties request that the Court take notice of the official records of

Massachusetts Athletic Club, Inc. v. Racquetball Investment Association, et al., Civil Action No.

00-CV-2175 (Middlesex Sup. Ct.),  In re Massachusetts Athlete Club, Inc., Case No. 00-13525

(Bank. D.Mass.), Massachusetts Athletic Club v. Burlington Recreation Group LLC, Adv. P. No.

00-1237 (Bank. D.Mass.), Massachusetts Athletic Club v. Burlington Recreation Group LLC,

Adv. P. No. 00-1239 (Bank. D.Mass.) and Massachusetts Athletic Club v. McConchie, et al.,

Adv. P. No. 00-1509 (Bank. D.Mass.).[2]

As in these prior proceedings, Frabizio has in this case also filed a series of baseless

pleadings and motions that contain defamatory and unsubstantiated claims against the Electric

Sports Parties and their counsel, including most recently the utterly baseless Motion to Excuse

Foley Hoag as Defendants' Counsel (Court Docket No. 17) asserting, without any evidentiary

support whatsoever, that counsel for the Electric Sports Parties has engaged in unethical and

criminal conduct.  Also, as in earlier matters, Frabizio has repeatedly attempted to act as legal

counsel for Sportbox LLC, a corporation owned and operated by Frabizio that has not appeared

through an attorney in this case.  In addition, Frabizio has not begun to confer in good faith with

opposing counsel or undertake many of the requirements of the Federal Rules designed to elevate

litigation from mere gamesmanship.  As evidenced by his copycat conduct in the earlier cases,

Frabizio's missteps are not the innocent mistakes of a well-intentioned *pro se* party with no

experience in litigation.  Rather, as described in detail by counsel in these earlier proceedings,

Frabizio's conduct is "improper and part of a long history of delay and obstruction by which

---

[2] These civil actions were filed apparently in a campaign to undermine the judgment against Frabizio's company, MAC, in Racquetball Investment Association v. Massachusetts Athletic Club Inc., Civil Action No. MICV2000-00430 (Middlesex Sup. Ct.), in which MAC was evicted from its rented location and found liable for damages.

[Frabizio] seeks to obtain unwarranted concessions from the defendants in order to keep [his] failing business alive." See Exhibit A, Defendant's Memorandum Opposing Motion For Preliminary Injunction Staying Summary Process Execution.  Defendants therefore respectfully request that during the March 24th scheduling conference, and in resolving the motions currently pending before the Court, this Court take judicial notice of Frabizio's prior vexatious conduct and take steps to assist the Electric Sports Parties in achieving the ordinary administration of this case.

## **BACKGROUND**

In May 1999, Massachusetts Athletic Club, Inc. ("MAC"), a company founded and run by Frabizio, apparently operated a gymnasium in Burlington, Massachusetts.  See Exhibit A at 2-6; Exhibit B, Adversarial Emergency Motion For Possession of Premises.  In early 2000, when business profits failed to materialize, MAC was evicted from its premises for failure to meet its rent obligations.  See Exhibits A & B.  In response to the eviction, Frabizio initiated a legal campaign against the creditors from whom MAC acquired its business and leased commercial space.  First, in February 2000, Frabizio approached the Burlington Police Department to accuse the owner of the commercial property of theft.  See Exhibit C, Affidavit of James H. McConchie dated March 21, 2000; Exhibit D, Affidavit of Nelson P. Lovins dated March 21, 2000.  The police elected not to pursue the matter which they described as a civil dispute.  See Exhibits C & D.

In May 2000, MAC and Frabizio filed papers to begin civil legal proceedings in both United States Bankruptcy Court for the District of Massachusetts and Middlesex Superior Court.  MAC filed a complaint in Middlesex Superior Court on May 5, 2000, in which MAC asserted claims for breach of contract, promissory estoppel, "breach of good faith dealing," negligent misrepresentation, fraud and violation of Mass. Gen. Laws ch. 93A.  See Exhibit E, Verified

Complaint. The named defendants included the company that had rented space and equipment to MAC as well as the director of that company. See Exhibit E.

Just over two weeks later, Frabizio filed numerous papers in United States Bankruptcy Court, including a petition for Chapter 11 bankruptcy on May 18, 2000 (Case No. 00-13525), as well as two adversary proceedings filed on May 22nd (Adv. P. No. 00-1237) and May 23rd (Adv. P. No. 00-1239) in identical attempts to regain possession of the commercial space from which MAC had been lawfully evicted. See Exhibit F, Massachusetts Athlete Club Inc. Voluntary Chapter 11 Petition (Case No. 00-13525); Exhibit B, Adversary Proceeding Cover Sheet and Emergency Motion For Possession of Premises (Adv. P. No. 00-1237); Exhibit G, Adversary Proceeding Cover Sheet and Adversarial Motion to Quash Eviction Execution And For Remedies Enumerated In Acquisition Agreements (Adv. P. No. 00-1239).

Finally, in September 2000, Frabizio initiated an additional action in Bankruptcy court (Adv. P. No. 00-1509) against the director of one of MAC's corporate creditors seeking to obtain damages that allegedly occurred when MAC was lawfully evicted from its commercial space and its creditors repossessed rented equipment. See Exhibit H, Adversary Proceeding Cover Sheet and Emergency Adversarial Motion to Compel Attorney James McConchie, Racquetball Investment Association, and Burlington Recreation Group, LLC., To Indemnify Debtor And For Order Allowing Debtor To Recover Its Personal Property (Adv. P. No. 00-1509).

Even though MAC was at one time represented by counsel, Richard W. Hynes, Esquire, Frabizio at some point apparently began personally drafting and filing pleadings and motions on behalf of MAC. Frabizio's filings contain numerous confused attempts to bolster MAC's legal arguments by accusing the defendants and their counsel of improper, unethical and criminal conduct. For instance, in one of Frabizio's actions before U.S. Bankruptcy Court, Frabizio

asserted that opposing counsel had made "intentionally false statements to the Court."  See Exhibit I, Debtor's Supplemental Memorandum In Support Of Its Motion to Deny Trustee's Motion to Dismiss Case In Response to Burlington Recreation Group, L.L.C. at 1, 2, 4.  Frabizio asserted that "[the defendant] and its attorney have deceived the Court system in its efforts to violate the rights of MAC . . . ." and that "[counsel] and his clients have taken this opportunity to unethically testify and lie to the Court."  See Exhibit I, at 3 & 5.  Frabizio accused counsel of "continuously work[ing] to destroy the founding of a young company" and described counsel's conduct as "despicable, unethical, and most likely illegal."  See Exhibit I, at 5.  In response to Frabizio's defamatory motion and upon request by the bankruptcy trustee, the court dismissed the case with prejudice in view of Frabizio's failure to comply with any procedures and his apparent goal of delaying the proceedings.  See Exhibit J, Order dated November 30, 2000.   In addition, on at least one occasion, the Bankruptcy court expressly rejected filings by Frabizio on the ground that he was not licensed to practice law and could therefore not represent MAC.  See Exhibit K, Order dated November 6, 2000.

All of Frabizio's legal actions were ultimately dismissed because Frabizio failed to follow the courts' procedures.  The Superior Court action was dismissed with prejudice two months after it was filed in light of MAC's and Frabizio's failure to prosecute his legal claims. See Exhibit L, Judgment of Dismissal dated July 12, 2000.  In August 2000, two of MAC's three adversary proceedings in Bankruptcy court were dismissed in view of MAC's failure to show cause why MAC's claims should not be dismissed as moot, based on the orders obtained in other proceedings.  See Exhibits M & N.  Also in August 2000, Frabizio's case was converted from a Chapter 11 proceeding to a Chapter 7 proceeding and thereafter the United States Trustee moved to dismiss the case because "[t]he debtor has unreasonably delayed the administration of this

estate, all to the detriment and prejudice of the trustee and the creditors," based upon Frabizio's

failure to appear or comply with the rules of procedure and the court's orders.  See Exhibit O,

Trustee's Motion to Dismiss the Case.  The Bankruptcy court dismissed Frabizio's bankruptcy

petition as well as his third and final adversary proceeding in late 2000 and early 2001 for failure

to prosecute.  See Exhibit J; Exhibit P, Orders dated October 10, 2000 and January 9, 2001.

## DISCUSSION

In the matter at hand, the record shows Frabizio has adopted an abusive strategy similar

to that undertaken in the MAC litigation.  First, Frabizio's onslaught of repetitive and baseless

legal filings in the prior proceedings were, as here, undertaken for improper purposes.  In the

MAC litigation, Frabizio initiated no fewer than five court actions in an effort to regain

possession of real property from which he had been lawfully evicted after failing to pay rent for a

series of months.  All of these actions were ultimately dismissed upon Frabizio's failure to

pursue his unsupported claims.  Similarly, Frabizio has rushed to court in this case with baseless

legal claims and defamatory accusations of illegal conduct in a thinly veiled attempt to damage

and harass the Electric Sports Parties while deflecting them from seeking legitimate redress for

Frabizio's conduct.  See Verified Counterclaims (Court Docket No. 7).  Second, in both the

MAC and Sportbox matters, Frabizio has repeatedly made scandalous as well as wholly

unsupported and unsupportable allegations that opposing counsel was a party to unethical, even

criminal, conduct.  See Plaintiff's Motion to Excuse Foley Hoag As Defendants' Counsel (Court

Docket No. 17).  Third, Frabizio has continued to improperly file legal papers on behalf of a

corporation (i.e., MAC and Sportbox), and has failed over several months to take steps to secure

counsel to represent the company.  See Defendants' Motion to Dismiss Complaint As To

Sportbox LLC For Failure To Appear (Court Docket No. 5).  In this regard, at least one prior

court has warned Frabizio that it is improper for him to attempt to represent a corporate party, as

he has attempted to do in this case with Sportbox.  Nonetheless, he knowingly employs the same tactic here.  Moreover, Frabizio has demonstrated that he will not readily comply with the rules of procedure (*e.g.*, the requirement that the parties confer with regard to disputes pursuant to Local Rule 7.1) or orders of the Court (*e.g.*, the Court's Notice of Scheduling conference requiring, *inter alia*, that the parties file a Joint Statement pursuant to Local Rule 16.1 in connection with the March 24th Scheduling Conference and that parties file all papers electronically).  In sum, Frabizio's conduct evidences a recidivist's contempt for appropriate use of the judicial process and a ready willingness to abuse process to harass and damage real or imagined opponents.

The Court may take judicial notice of facts that are capable of accurate and ready determination, such as the events in prior legal proceedings.  See In re Mailman Steam Carpet Cleaning Corp., 196 F.3d 1, 8 (1st Cir. 1999) (finding that court properly took judicial notice of its own docket); Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matter at hand.").  Frabizio's history of abusive litigation tactics are relevant to determine, for instance, whether Frabizio is entitled to significant leeway as a *pro se* litigant with regard to his repeated failure to abide by the Federal Rules or whether his pleadings and motions have been brought for improper purposes and thus, should be denied.

In view of Frabizio's familiarity with litigation and his history of making significant use of dilatory and vexatious litigation tactics, the Electric Sports Parties are reasonably concerned that, if this Court does not take judicial notice of Frabizio's prior conduct as well as immediate action to set reasonable limits on Frabizio's conduct, Frabizio will continue intentionally to delay and multiply the costs of this litigation to harass and damage the Electric Sports Parties, who

have already expended a significant proportion of their scarce resources opposing Frabizio's

baseless claims.  For these reasons, the Electric Sports Parties respectfully request that this Court

take judicial notice of Frabizio's prior vexatious conduct during the March 24th Scheduling

Conference and in resolving the motions currently pending before the Court.

Respectfully submitted,

ELECTRIC SPORTS, INC.,
MARK BORTMAN and JOHN E. CONWAY,

By their attorneys,


 /s/ Gabriel M. Helmer
Michele A. Whitham  (BBO No. 553705)
Gabriel M. Helmer (BBO No. 652640)
Foley Hoag LLP
155 Seaport Blvd.
Boston, MA  02210
(617) 832-1000

Dated: March 23, 2005                     ATTORNEYS FOR DEFENDANTS

## LOCAL RULE 7.1 CERTIFICATION

The undersigned counsel for the plaintiffs hereby certifies that counsel for defendants
attempted in good faith to confer on this motion with plaintiffs SPORTBOX, LLC and
WILLIAM V. FRABIZIO III by telephone on March 23, 2005, but was unable to resolve this
issue.


 /s/ Gabriel M. Helmer
Gabriel M. Helmer

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 23rd day of March, 2005, I caused a true copy of the above document to be served upon SPORTBOX, LLC and WILLIAM V. FRABIZIO III by mail and hand delivery.

**/s/ Gabriel M. Helmer**
Gabriel M. Helmer

**EXHIBIT A**

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                    MIDDLESEX SUPERIOR COURT
                                                 C.A. No.: 2000-02175

```
                                          )
MASSACHUSETTS ATHLETIC CLUB, INC.,        )
                                          )
                   Plaintiff,             )        DEFENDANT'S MEMORANDUM
                                          )        OPPOSING MOTION FOR
          V.                              )        PRELIMINARY INJUNCTION
                                          )        STAYING SUMMARY PROCESS
RACQUETBALL INVESTMENT                    )        EXECUTION
ASSOCIATION ET ALS,                       )
                                          )
                   Defendants.            )
                                          )
```

### I. Introduction

The defendants James H. McConchie ("McConchie"), Racquetball Investment Association ("RIA") and Burlington Recreation Group ("BRG") hereby submit this memorandum in opposition to the motion of the plaintiff Massachusetts Athletic Club, Inc ("MAC") for a preliminary injunction seeking to stop BRG from obtaining possession of certain premises in accordance with a judgment duly issued by the Woburn District Court after trial.

As demonstrated below, this motion is improper and part of a long history of delay and obstruction by which MAC seeks to obtain unwarranted concessions from the defendants in order to keep its failing business alive. MAC had adequate remedies at law and in equity in two separate actions pending in this and another court. It permitted a default judgment to enter against it in this Court, then, all without appeal or an equity suit to stay the summary process case, unreasonably delayed until after the Woburn District Court held a summary process trial, issued a binding judgment and then, after the appeal period had lapsed, issued execution for past rental due and for possession. Further, the plaintiff is not entitled to injunctive relief under the

standards for the issuance of preliminary injunction set forth in GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993), and Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 615-17 (1980) because it does not have a reasonable likelihood of success on the merits, its claims is not well grounded in fact, it will not suffer irreparable harm if the injunction is denied, the balance of harms favors the defendants, and the public interest does not favor the injunction.

## II. The Facts

In or around the early part of 1999, William V. Frabizio, III ("Frabizio") approached McConchie about the possibility of MAC purchasing the Mad Maggie's Health and Racquetball Club/Burlington ("Mad Maggie's"). McConchie Affidavit, ¶1. In the course of discussions with McConchie concerning the purchase, Frabizio and his agents (including CPA's) were given full access to all of Mad Maggie's books and records, including all items which Frabizio requested of Mad Maggie's bookkeeper. Exhibit A: McConchie Affidavit, ¶ 5, 6; Exhibit C: Caira Affidavit, ¶¶ 2-5; Exhibit D: Young Affidavit, ¶¶ 4-5; see also Complaint, Exhibit 6, Dinopoulos Affidavit, ¶ 5.

After performing its investigation and receiving the opinion of its accountant, Complaint Exhibit 6, Dinopoulos Aff., ¶¶ 5-6, in May of 1999, MAC entered into two separate asset purchase agreements for the assets of Mad Maggie's. One agreement was with RIA, the owner of most of the assets of Mad Maggie's; this agreement set forth representations concerning the accuracy of certain financial statements. Frabizio Affidavit, Exhibit A. The other, which contained no such representations, was with BRG, which owned some few of the assets, and which was also the landlord of the real estate at 12 A Street, Burlington, Massachusetts (the "Premises") where Mad Maggie's did business. Frabizio Affidavit, Exhibit B.

Negotiations concerning MAC's possible purchase of the Premises continued even after the asset agreements had been executed. By July of 1999, the asset purchase agreements had not been closed, and MAC was struggling to make arrangements for the purchase of the property. Exhibit E. Finally, in September of 1999, MAC took possession of the Premises and entered into two additional agreements, this time with BRG: a written Lease for the Premises with a term of just over four months, and a purchase and sale agreement for the Premises under which the closing was to occur on the same day that the Lease expired. Complaint, Exhibits 7 and 8.

Immediately after MAC took possession of the facility, it began to change the manner in which the facility operated, both firing personnel, and limiting services. Exhibit F: Edson Affidavit, ¶ 2. Customers soon had numerous complaints about the manner in which Frabizio was operating the health club, from refusing to honor memberships, to refusing to honor membership cancellations. Customers complained consistently about Mr. Frabizio being arrogant, rude and nasty. Exhibit G: Cullen Affidavit, ¶¶ 2-5; Exhibit C: Caira Aff., ¶ 7; Exhibit D: Young Aff., ¶ 6. Members began to resign. Exhibit C: Caira Aff., ¶ 7. As customer complaints continued to mount, it began to look like the attorney general's office would step in, and both McConchie and other staff members of the Norwood Mad Maggie's who had worked at the Burlington facility attempted to contact Frabizio to address the complaints, but to no avail. Exhibit D: Young Aff., ¶ 6; Exhibit G: Cullen Affidavit, ¶ 7; Frabizio Aff., Exh. Z;

Apparently, in or around November of 1999, Frabizio recognized his inability to successfully run the health club, and began to create a record of self-serving memoranda and letters to use against McConchie, RIA and BRG, setting forth in substance the same complaints he now presents to this Court. Frabizio Aff., Exhibits O, P, X. Despite this, Frabizio undertook renovations at the Premises, albeit without first obtaining the necessary building permits.

Frabizio Aff., Exhibit W. In addition, MAC stopped paying rental under its Lease for the Premises while remaining in possession. Exhibit A: McConchie Aff., ¶ 9.

January 10, 2000 was the agreed date for the termination of the Lease and for the closing on the purchase of the real estate, but that date came and went without a closing while MAC remained in possession of the Premises. On or about January 24, 2000, Frabizio agreed to enter into a new Lease for six months, which could be extended for an additional six months, and further agreed to a new purchase and sale agreement, both conditioned on payment of back rental owed, plus six month's rental in advance. Exhibit H: Rezendes Affidavit, Exhibit entitled "LETTER OF INTENT TO LEASE." The new Lease was to be executed, and required payments made, by February 1, 2000. Id.

Once again, MAC and Frabizio allowed the deadline to pass; the new Lease was not signed and payments were not made. Anticipating this, McConchie had hired counsel, who had written to counsel for Frabizio and MAC asking for documents in advance of the closing. Exhibit I. When the closing did not occur, RIA commenced suit under the asset purchase agreement between RIA and MAC, for damages arising from MAC's failure to make payments on certain equipment leases as required by the asset purchase agreement. Exhibit A: McConchie Aff., ¶¶ 10-13; Exhibit J: Complaint in Middlesex Superior Court Civil Action No. 2000-0430; Frabizio Aff., Exh. A, page 2, section 1.3. At or about the same time, BRG instituted summary process proceedings to evict MAC, which was now a tenant at sufferance, holding over illegally and contrary to the terms of the written lease. Exhibit K: Summary process summons and complaint; Complaint, Exhibit 7, sections 2.3 (p. 3), 4.5 (p. 6) and 13 (p. 11).

On February 11, 2000, MAC moved to dissolve an attachment on trustee process which RIA had obtained after notice and hearing. At the hearing on February 15, 2000, MAC argued

that it had counterclaims to assert in the case, presenting the same claims which it asserts here. Its motion was denied, without prejudice, the Court inviting reconsideration upon the filing of a counterclaim. Exhibit H: Rezendes Aff., ¶ 8. Exhibit L: papers and notices concerning motion to dissolve attachment. This Court might notice that the Frabizio affidavit attached to the Complaint in this action as Exhibit I is dated *February 4, 2000*, i.e., several days before the hearing on that motion to dissolve.

MAC never filed its counterclaim. Instead, it defaulted, and default judgment has since been entered against it in that suit after notice of application therefor. Exhibit M.

The summary process action in the Woburn District Court also resulted in a judgment against MAC, but not by default. MAC answered the complaint, and raised as affirmative defenses substantially the same claims as are now raised. Further, the answer specifically requested that the summary process action be stayed. Exhibit N: Summary process answer and counterclaim. Originally scheduled for trial on February 24, 2000, the matter was continued for a week at the request of counsel for MAC. Exhibit O: motion to continue and confirming letter from counsel for BRG. Trial was held on March 2, 2000. Mr. Frabizio's testimony raised substantially the same issues as he now raises, i.e., allegations of fraud and concerns about the condition of the leased building. Exhibit A: McConchie Aff., ¶ 15; Exhibit H: Rezendes Aff., ¶¶ 1, 2.

Despite Mr. Frabizio's testimony and MAC's explicit request for a stay, judgment for possession and past rental entered on April 26, 2000. Exhibit P: Memorandum of decision and notice of entry of judgment. At no time, either before or after entry of judgment, did MAC commence an Ace Trophy-style case to enjoin the summary process and for a declaration of rights, notwithstanding that MAC and Frabizio had been accusing McConchie, RIA and BRG of

fraud since, at the latest November of 1999. MAC did not appeal the judgment. Exhibit H:
Rezendes Aff., ¶ 7.

After the summary process trial, but before judgment had entered, Mr. McConchie sought
entry to the Premises with an appraiser for the purpose of obtaining refinancing of a mortgage
loan. Despite the fact that the written lease under which MAC originally held possession
specifically permitted such entry (Complaint Exhibit 7 p.12, sections 15.1, 15.2) Frabizio,
through MAC's employees, barred Mr. McConchie's entry, called the police to the scene, and
asserted falsely that Mr. McConchie was the subject of an ongoing criminal investigation. BRG
then moved for and obtained an order from the Woburn District Court permitting entry. Exhibit
Q: order of the Woburn District Court and motion and supporting papers. MAC did not oppose
or appear in opposition to the motion. By brute force, then, MAC caused BRG unnecessary
delay and expense to exercise a right of entry against which MAC had no legal basis for
opposition.

McConchie sought entry on behalf of BRG because a balloon payment under a mortgage
loan secured by the Premises had fallen due, and an inspection and appraisal was necessary to
obtain refinancing. Exhibit Q. Permanent re-financing is necessary to avoid foreclosure, but
permanent financing is not reasonably available while MAC continues to hold possession and the
Premises are not income-producing. MAC's continued possession, then, threatens BRG with
foreclosure and loss of the real estate. Exhibit A: McConchie Aff., ¶ 16.

Were MAC to vacate the Premises, relief to BRG would be virtually immediate. A
successor tenant has already signed a lease with BRG, contingent on MAC vacating the
Premises. Exhibit R: Livingstone Aff., ¶ 2; Exhibit A: McConchie Aff., ¶ 16. BRG has
obtained a mortgage commitment conditioned on the fulfillment of the conditions of the Lease

with the new tenant, including the condition that possession be delivered free of MAC. Exhibit A: McConchie Aff., ¶ 16.

Current members of the MAC health club would not be appreciably harmed by the eviction of MAC for a number of reasons. First, it appears that their memberships are all on a month-to-month basis, at least with respect to payment terms, according to a letter written by Frabizio; members could simply sign up at one of the many health clubs in and around Burlington. Exhibit H: Rezendes Aff., ¶ 6 and attached letter dated January 27, 2000 by Frabizio. Second, the successor tenant, a reputable entity associated with an established and well-known health club in the area, is prepared to provide MAC members with a month of free use in the Woburn Gold's Gym during the transition period while a new health club is established in the Premises. Exhibit R; Livingstone Aff., ¶ 3. Finally, MAC is required by law to have posted a bond as security for its members. Therefore, it appears that the impact on current members will be minimal.

The procedural posture in which this matter comes before this Court, then, is as follows. MAC has lost a summary process action in which it had a full and fair opportunity to raise, and did raise, the legal and equitable issues it now asserts, which it had been asserting informally for at least three months and about which, according to Mr. Frabizio, MAC had been instructed to "document everything" for just as long, with the result that Mr. Frabizio's affidavit had been prepared as early as February 4, 2000. Presented with another opportunity to raise those issues by way of counterclaim in an action in this Court concerning the same facts and circumstances, it instead allowed an adverse judgment to enter against it by default. It failed to bring its own action for declaratory and equitable relief to stay the summary process action, despite having a full month between service of the summary process complaint and the trial date. It failed to

appeal the summary process action, despite the fact that an appeal of itself would have stayed any execution. Rather than being the victim it falsely attempts to portray, MAC is causing unlawful and unjustified delay as part of what appears to be an effort to force price concessions from Mr. McConchie and BRG, so that it can purchase the Premises at a price lower than that which it twice bargained for. On these facts, those stated above, and the further facts adduced below as they become pertinent, the defendants oppose the motion for an injunction.

## III. Argument

MAC should be denied the injunction sought because it cannot satisfy the requirements for a preliminary injunction, and because it is unfairly attempting a collateral attack on a valid judgment after failing and refusing to seek the proper and lawful remedies available to it. In the absence of a specific statute conferring jurisdiction, equity does not intervene where the plaintiff may obtain the same relief in an action at law. Spector v. Loreck, 342 Mass. 685, 175 N.E.2d 262, 264 (1961); Frank J. Linhares Co., Inc. v. Reliance Insurance Co., 4 Mass. App. 617, 357 N.E.2d 313, 316 (1976). MAC had that remedy in the form of an appeal, which would have automatically stayed any execution. Mass. Gen. Laws, c. 239, §§ 5,6; Mass. R. Civ. P. 62(a),(d); Uniform Summary Process Rule 1. The injunction should be denied.

### A. MAC Does Not Enjoy a Reasonable Likelihood of Success on the Merits

MAC's injunction should be denied because it does not meet the requirement of showing a reasonable likelihood of success on the merits. GTE Products Corp. v. Stewart, 414 Mass. 721 (1993), and Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609 (1980). In addition to failing to make a credible showing in its complaint and motion papers, MAC is barred from

bringing this complaint by the doctrines of claim and issue preclusion as a result of two prior actions in which judgments have been entered against it.

As discussed above, in the summary process action in the Woburn District Court MAC raised the very same claims by way of defense against BRG, the primary target of the injunction in its capacity as the party holding the execution and owner of the Premises. Further, MAC was entitled to bring counterclaims in that action. Mass. Gen. Laws, c. 239, § 8A. The facts that MAC actually litigated the same issues against the same party, and that litigation and decision thereon was necessary to the summary process trial, means that MAC is barred by issue preclusion and may not raise those issues again before this court. Morgan v. Evans, 39 Mass. App. Ct. 465, 657 N.E.2d 764 (1995); McSorely v. Hancock, 11 Mass. App. Ct. 563, 417 N.E.2d 982, 984 (1981).

Further, and equally dispositive, MAC had available to it the same claims in the prior civil action in this Court, Civil Action No. 2000-0430 (the "Prior Action"), and those claims were compulsory counterclaims in that action. As a result of MAC's failure to raise them in that action, and as a result of the default judgment against it which has now become final, MAC is barred from raising these claims in this action by the doctrine of claim preclusion. The Prior Action was brought on the basis of the very same asset purchase agreement between RIA and MAC which MAC now says was infected by fraud. The default judgment entered against MAC in the Prior Action acts as a judgment on the merits against MAC and is the basis for the application of the doctrine of res judicata. Beserosky v. Mason, 269 Mass. 325, 168 N.E. 726, 727 (1929).[1] There were no bars to MAC bringing its counterclaim and none of the exceptions

---

[1] Because MAC seeks an injunction against BRG for misrepresentations and breaches allegedly committed in connection with the asset purchase agreement between MAC and RIA, MAC concedes the privity between RIA and BRG sufficient for BRG to be protected by claim preclusion arising from litigation between MAC and RIA.

to Mass. R. Civ. P. 13(a) applied. Thus, the claims now raised were compulsory counterclaims in that action, and the failure to raise them bars their being raised now. Buckley v. John, 314 Mass. 719, 721, 51 N.E.2d 317, 319 (1943)(dictum); Mass. R. Civ. P. 13, Reporter's Notes, 6th para; Smith & Zobel, Rules Practice, 6 Mass. Prac. § 13.24.

Even were MAC's claims not barred, by issue preclusion or collateral estoppel, the injunction should be denied because MAC's factual showing is inadequate.

The Court should consider, that Frabizio's affidavit is replete with mischaracterization and exaggeration. See, e.g., ¶ 13, asserting that McConchie had "bled *all* of the potential revenues out of the business for nearly a year and a half," (emphasis supplied) despite the fact that memberships included those requiring monthly payments, and despite the fact that nothing prevented Frabizio from seeking new members of renewal of old members whose memberships were scheduled to expire. See also, Exhibit H: Rezendes Aff., attached letter of January 27, 2000 from Frabizio, in which Frabizio stated:

> [MAC] is pleased to announce that we have recently achieved a sufficient amount of Electronic Fund Transfer (EFT) membership contracts to support the purchase of the property at 12 "A" Street. All of the EFT's are yearly contracts and the revenues will offer solid investment, and ensure prompt and reliable payment to the mortgagees. We are commencing with the purchase and sales agreement with the current owner, thus making MAC a sound financial investment for all parties interested.

The fact is that two of MAC's largest complaints -- about the memberships which had been sold and about the condition of the Premises -- are all barred by the terms of the documents he signed, which contained integration clauses.

MAC's accusation that RIA and McConchie violated the asset purchase agreement by improper sales of memberships is barred by the terms of the RIA asset purchase agreement. That agreement does not prohibit the sale of discounted memberships. Rather, it only prohibits

---

Brunson v. Wall, 405 Mass. 446, 450-51, 541 N.E.2d 338 (1989); Home Owners Federal Savings and Loan

carrying on business in some manner other than how Mad Maggie's had been run in the past, up to the closing. Had Mad Maggie's not continued to sell discounted memberships, it would have been changing its business practices and threatening its good will, in violation of the asset purchase agreement. Frabizio Aff., Exhibit A, p. 15, Article IV, section 4.1; Exhibit A: McConchie Aff., ¶ 7. Significantly, MAC appears to rely on an alleged prior unwritten promise by McConchie (which McConchie credibly denies making), in direct contradiction to the integration clause of the asset purchase agreement, Frabizio Aff., Exhibit A, p. 21, section 8.7.[2]

MAC makes no showing whatsoever that Mad Maggie's acted any differently than it had in the past. Putting aside the rhetoric of "bleeding" the business which MAC offers instead of proof, the only evidence MAC offers about membership sales is a notebook which was available to Frabizio at the time of his investigation (Frabizio Aff., Exhibit M; Exhibit C: Ciara Aff., ¶ 5), and graphically represented data concerning membership sales at Complaint exhibits 2-5. While MAC seeks to characterize that data as showing membership sales that should not have been made, it does not show that these sales were out of the ordinary course of business or any different than sales made in the past. In fact, the evidence of 14 and 18 month memberships at complaint Exhibit 3 during March and April of 1999 is consistent with Mad Maggie's prior practice. Exhibit D: Young Aff., ¶¶ 2-3. Significantly, although MAC admits that it has access to Mad Maggie's prior records, there is no showing whatsoever that the data at Complaint Exhibits 2-5 was inconsistent with prior practice.

MAC also makes a number of complaints about the condition of the Premises. MAC fails to point out, however, that the asset purchase agreements specifically excluded the Premises, and related only to business assets. Frabizio Aff., Exhibit A, Article I, section 1.1;

---

Association v. Northwestern Fire and Marine Ins. Co., 354 Mass. 448, 238 N.E.2d 55, 58-59 (1968).

Frabizio Aff., Exhibit B, Article 1.1, 1.2. With respect to those assets, they were sold subject to any reasonable wear and tear, and were represented only not to require any "major overhaul or repair". Id at p. 5, sections 2.4. MAC presents absolutely no evidence that the business assets required any major overhaul or repair, or that the conditions reflected anything other than reasonable wear and tear. With respect to the Premises themselves, they were specifically leased in "as-is" condition. Exhibit B: McConchie Supplemental Affidavit, ¶ 6.

MAC's accusations that it was provided with fraudulent books and records is not only flatly contradicted by numerous affidavits presented by the defendants, but is also unsupported by anything other than conclusory assertion. The affidavit of MAC's accountant is based on a comparison between the books and records he reviewed before the asset purchase and the records of MAC's own operation of the business after it took control of the facility. Complaint Exhibit 6: Dinopoulus Aff., ¶ 8. That is a false comparison precisely because MAC so fundamentally changed the operations after it took over the facility, including the intolerable treatment afforded its members, as discussed above. Nowhere in any of the papers properly before the Court does MAC identify the books and records which purportedly show that the defendants had misrepresented business expenses, etc. Those papers have not been brought before the Court. Equally revealing, although MAC had the time to prepare graphs and charts concerning the sale of memberships, there are no charts or tables comparing the two sets of financial data which MAC claims disclose the alleged fraud. The fact of the matter is that there is no convincing evidence of fraud; this Court is presented only with the conclusory say-so of MAC's principal, whose testimony is clearly exaggerated where not outright false.

---

[2] The asset purchase agreement with BRG, Frabizio Exhibit B, does not contain any representations concerning the conduct of the business, but does contain a parallel integration clause. Id at p. 5: section 8.6.

Ffor the foregoing reasons, MAC does not enjoy a reasonable likelihood of success on the merits, and the injunction should be denied.

## B.  No Irreparable Harm or Inadequate Remedy at Law

MAC should also be denied the injunction because it was not left without a remedy at law and odes not face irreparable harm.

To the extent MAC has not lost or waived its rights as a result of prior adjudication, it may still bring an action at law for damages.  MAC makes no showing why that remedy is inadequate.  Therefore, it is not entitled to seek an injunction.  GTE Products Corp. v. Stewart, 414 Mass. 721 (1993), and Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609 (1980).

Further, and wholly aside from the res judicata issues, it would be completely contrary to basic principles of equity jurisdiction to allow MAC to come into this court seeking what it could and should have sought in prior actions.  It had the opportunity to present counterclaims and seek equitable relief in the Prior Action knowing, as it did, that BRG was pursuing summary process relief.  It did not.  It had the opportunity to appeal the summary process judgement and to automatically stay the execution.  It did not.  Having thus failed to pursue legal remedies, it may not now seek equitable relief.  Spector v. Loreck, 342 Mass. at ---, 175 N.E.2d at 264; Frank J. Linhares Co., Inc. v. Reliance Insurance Co., 4 Mass. App. at ---, , 357 N.E.2d at 316.  MAC was not so without a remedy that it needed or should be allowed to wait until after judgment to come to this court for equitable relief.

In addition, MAC had the option of pursuing an equitable suit before judgment entered in the summary process case.  A lessee, facing disputes with a landlord, need not await a summary process action, but may bring an anticipatory action seeking an injunction against eviction and a

declaration of the parties' respective rights under the lease. Ace Trophy Co. v. Gordon, 354 Mass. 767, 238 N.E.2d 363 (1968). and see Lawless-Mawhinney Motors, Inc. v. Mawhinney, 21 Mass. App. Ct. 738, 741 (1986), collecting cases. This right extends even to situations when another action has already been commenced seeking to recover possession. Ace Trophy Co. v. Gordon, 354 Mass. at ---, 238 N.E.2d at 364. Cf. Bancroft Trust Co. v. Canane, 271 Mass. 191, 199, 171 N.E. 281, 284 (1930) (sustaining demurrer to declaratory and equitable relief action was error when former owner, ousted by foreclosing mortgagee, brought writ of entry, and foreclosing mortgagee then sued for declaratory and equitable relief). Thus, staying a summary process action and avoiding having to answer in one is a recognized and legitimate reason for bringing a suit for declaratory and injunctive relief. MAC instead chose to await final judgment and the issuance of execution before bringing its claims to this court.

The only inference to be drawn is that MAC is pursuing a strategy of delay. That does not equate to irreparable harm or inadequate legal remedy.

## C. The Balance of Harms Favors Denial of the Injunction

Should MAC be evicted, there is no evidence that it is unable to locate other facilities and move the business. While there might be some temporary disruption in the business, that could be compensated in an action for damages (to the extent such is not barred). On the other hand, the landlord, BRG, stands to lose its property entirely in the event it cannot re-finance, and MAC's continued possession is a bar to re-financing. Loss of real estate is firmly established as the kind of irreparable harm which equity seeks to avoid. Greenfield Country Estates Tenants Association, Inc. v. Deep, 423 Mass. 81, 88, 666 N.E.2d 988, --- (1996); Thibbets v. Crowley, 405 Mass. 222, 539 N.E.2d 1035 (1989); Kozdras v. Land/Vest Properties, Inc., 382 Mass. 34, --

- n. 13, 413 N.E.2d 1105,1112 n.13 (1980); Chesarone v. Pinewood Builders, Inc., 345 Mass 236, ---, 186 N.E.2d 712, 714-15 (1962); Franchi v. Boulger, 12 Mass. App. Ct. 376, ---, 425 N.E.2d 372, 374-75 (1981). The balance of harms clearly favors denial of the injunction.


### D. The Public Interest Does Not Favor The Injunction

Despite his improper treatment of his members, Mr. Frabizio's affidavit seeks to raise the interests of his members as an argument for remaining on the Premises. That argument fails for a number of reasons. His members may seek to join another club. They may also seek to take advantage of the free use of the Woburn's Gold's Gym that has been offered during the transition to the new health club tenant. Finally, should the members suffer any harm, they are protected by the statutory bond which is required of all health clubs before they commence operations. Mass. Gen. Laws, c. 93, § 79.


### IV. Conclusion

The plaintiff has had adequate opportunity to present its claims, but has failed to do so. Careful review of its evidence demonstrates not only that its claims are without adequate support, but also that MAC had a fundamentally different view of health club membership from Mad Maggie's (Exhibit H: Rezendes Aff., Frabizio letter attached as an exhibit thereto) and is seeking to use this suit to enforce that business vision under the rubric of fraud. MAC has had two opportunities to buy the Premises, but, despite announcing to its "Associates" that it was prepared to proceed with the Purchase, it did not do so. Instead, having failed to pursue clearly defined remedies at law and in equity, it asks this Court to collaterally attack and render nugatory

a valid judgment of another court of this commonwealth in order to keep it in real estate for which it owes considerable back rent and for which it has not paid for more than half a year. This Court should decline MAC's invitation to join in its stalling tactics. The injunction should be denied.

Respectfully submitted,
Defendants
by their attorneys

Paul M. Rezendes, BBO #417850
Lovins & Metcalf
Ten Cedar Street
Chestnut Green
Woburn, MA 01801
(781) 938-8800

Dated: May 17, 2000

**EXHIBIT B**

B 104
(Rev. 8/87)    **ADVERSARY PROCEEDING COVER SHEET**
(Instructions on Reverse)

| ADVERSARY PROCEEDING NUMBER (Court Use Only) |
| --- |

**PLAINTIFFS**

MASSACHUSETTS ATHLETIC CLUB, INC

**Filing Fee Paid**

**DEFENDANTS**

BURLINGTON RECREATION GROUP LLC

**00-1237**

**ATTORNEYS** (Firm Name, Address, and Telephone No.)

RICHARD W. HYNES, ESQ
2 HARVARD ST, #230
BROOKLINE MA 02445

**ATTORNEYS** (If Known)

PAUL M. RICCIARDI, ESQ
TEN CEDAR ST, CHESTNUT GREEN
WOBURN, MA 01801

**PARTY** (Check one box only)    ☐ 1 U.S. PLAINTIFF    ☐ 2 U.S. DEFENDANT    ☐ 3 U.S. NOT A PARTY

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

To REGAIN POSSESSION OF THE PREMISES @ 12"A ST. BURLINGTON MA. PURSUANT
TO FED R. BANKRUPTCY PROCEDURE: RULE 7001(1) A PROCEEDING TO RECOVER PROPERTY OR
A PROCEEDING TO RECOVER § 554(b) OR §725 OF THE CODE, RULE 2017, OR RULE 6002,
TO PROTECT ASSETS DURING A 93A PROCEEDING IN THE SUPERIOR COURT IN
WHICH BURLINGTON RECREATION GROUP IS A DEFENDANT    HELP!

**NATURE OF SUIT**

(Check the one most appropriate box only.)

☒ 454 To Recover Money or Property
☐ 435 To Determine Validity, Priority, or Extent of a Lien or Other Interest in Property
☐ 458 To obtain approval for the sale of both the interest of the estate and of a co-owner in property
☐ 424 To object or to revoke a discharge 11 U.S.C. §727

☐ 455 To revoke an order of confirmation of a Chap. 11 or Chap. 13 Plan
☐ 426 To determine the dischargeability of a debt 11 U.S.C. §523
☒ 434 To obtain an injunction or other equitable relief
☐ 457 To subordinate any allowed claim or interest except where such subordination is provided in a plan

☐ 456 To obtain a declaratory judgment relating to any of foregoing causes of action
☐ 459 To determine a claim or cause of action removed to a bankruptcy court
☐ 498 Other (specify)

**ORIGIN OF PROCEEDINGS**
(Check one box only.)

☒ 1 Original Proceeding
☐ 2 Removed Proceeding
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another Bankruptcy Court
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

| **DEMAND** | NEAREST THOUSAND $ | OTHER RELIEF SOUGHT | ☐ JURY DEMAND |

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

| NAME OF DEBTOR MASSACHUSETTS ATHLETIC CLUB, INC | BANKRUPTCY CASE NO. 00-13525 |
| DISTRICT IN WHICH CASE IS PENDING MASSACHUSETTS | DIVISIONAL OFFICE | NAME OF JUDGE JUDGE FEENY |

**RELATED ADVERSARY PROCEEDING (IF ANY)**

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |

**FILING FEE** (Check one box only.)    ☒ FEE ATTACHED    ☐ FEE NOT REQUIRED    ☐ FEE IS DEFERRED

| DATE 5-22-00 | PRINT NAME WILLIAM V. FRABIZIO | SIGNATURE OF ATTORNEY (OR PLAINTIFF) William V. [signature] |

# UNITED STATES BANKRUPTCY COURT

IN RE:                                    DISTRICT OF MASSACHUSETTS
MASSACHUSETSS ATHLETIC CLUB, INC.    **00-13525** JNF
                                          CHAPTER 11

# 00-1237

### ADVERSARIAL EMERGENCY MOTION FOR POSSESSION OF PREMISES

The Massachusetts Athletic Club, Inc. ("MAC") **DEBTOR**, in the above action move

that this Honorable Court issue and Order entitling Debtor to regain possession of the

premises at 12 "A" Street, Burlington Massachusetts pursuant to Federal Rules of

Bankruptcy Procedure: Rule 7001 (1) a proceeding to recover money or property, except

to compel the debtor to deliver property to the trustee, or a proceeding under § 554(b) or

§ 725 of the Code, Rule 2017, or Rule 6002.  For its reasons the Debtor states as follows:

1. It is a Massachusetts Corporation and lessee of the premises at 12 "A" Street,
   Burlington Massachusetts.

2. The premises were let by Debtor from Burlington Recreation Group, LLC ("BRG").

3. The premises were used as a modern health club and fitness facility geared to service
   youth and senior citizens.

4. There have been various disputes and resulting litigation among the parties in the
   several Courts of the Commonwealth.

5. One of these judicial forums BRG obtained and execution for possession of the
   premises and had it served upon Debtor at approximately 4:50PM on Wednesday
   May 17, 2000.



6.  Debtor filed the aforementioned petition with this Court on May 18, 2000.

7.  Debtor has no access to the premises and the facility is closed.

8.  Debtor requires the ability to operate the premises to generate revenue to fairly satisfy creditors including BRG.

9.  BRG prevents the Debtor from the only means available for the Debtor to fulfill its financial obligations pursuant to an Order and supervised reorganization plan.

**WHEREFORE** Debtor prays that this Court issue an Order in the following manner:

1.  Staying all State Court proceedings, executions, and order pending a full hearing of the issues by this Court.

2.  Requiring the Deputy Sheriff Middlesex County to hand over to Debtor at the earliest possible time the keys to the premises above described.

3.  Establishing the Debtor as a Debtor in possession of the premises of 12 "A" Street Burlington Massachusetts.

4.  Do whatever else this Court may deem necessary to fairly adjudicate rights of the parties.

Respectfully submitted
MASSACUSETTS ATHLETIC
CLUB, INC.

By its Attorney:

Richard W. Hynes
7 Harvard Street Suite 230
Brookline, MA 02445
Tel:    617-264-9800
BBO # 246620

Date:

| | DATE FILED | TIME STANDARDS TRIAL REQUEST DEADLINE | | DOCKET NUMBER |
|---|---|---|---|---|
| **Trial Court of Massachusetts**<br>**District Court Department** | 2/14/00 | February 28 | 2 | 0053CV0401 |

| PLAINTIFF | DEFENDANT |
|---|---|
| Burlington Recreation<br>Group, LLC | Massachusetts Athletic<br>Club, Inc. |

Woburn District Court
30 Pleasant Street
Woburn, MA. 01801

| PLAINTIFF ATTORNEY | DEFENDANT ATTORNEY |
|---|---|
| Nelson P. Lovins, Esq.<br>Paul M. Rezendes, Esq.<br>Lovins & Metcalf<br>Ten Cedar Street, Chestnut Green<br>Woburn, MA 01801 | Richard W. Hynes, Esq.<br>7 Harvard Street, #230<br>Brookline, MA  02445 |

MONEY DAMAGE ACTION (TIME STANDARDS)

☐ Remand    ☐ District Court Filing    ☒ SUMMARY PROCESS    ☐ VICTIM VIOLENT CRIME    ☐ OTHER CIVIL

## WRIT OF EXECUTION ON MONEY JUDGMENT AND FOR POSSESSION
## INVOLVING PREMISES NOT LEASED OR RENTED AS A DWELLING

To the Sheriffs of the several counties of the Commonwealth or their deputies, or any Constable of any city or town within the Commonwealth:

The plaintiff named above has recovered judgment against the defendant in the amount shown below, and has also recovered judgment for possession of the premises shown below.

WE COMMAND you, therefore, to cause payment to be made to the plaintiff in the amount of the judgment total shown below, plus postjudgment interest thereon until the date of payment as provided by G.L. c. 235 § 8, and to collect your own fees as provided by law, from out of the value of any real or personal property of the defendant found within your territorial jurisdiction.

WE ALSO COMMAND you to cause the plaintiff to have possession of the premises shown below without delay.

This execution is valid for twenty years from the date of judgment. It must be returned to the court along with your return of service within ten days after this judgment has been satisfied or discharged, or after twenty years if this judgment remains unsatisfied or undischarged.

LOCATION OF PREMISES

12 "A" Street  Burlington, MA

| FIRST JUSTICE | DATE OF ISSUE | CLERK-MAGISTRATE OR ASSISTANT CLERK |
|---|---|---|
| WITNESS: Marie O. Jackson-Thompson | 5/11/00 | X Paul K. McSoy |

OFFICER'S RETURN         DATE OF SERVICE:

Fees  _____
_____
_____
_____

TOTAL FEES _____

SIGNATURE OF OFFICER _Nid Hen_
5/17/00   Sheriff's Office

| DATE OF ENTRY OF JUDGMENT | | |
|---|---|---|
| April 26, 2000 | ☐ CIVIL | ☒ SUMMARY PROCESS |

☒ Judgment for  Plaintiff

☒ $ 33,905.08 damages, plus $ _____ prejudgment interest and $ 138.33 costs
plus $ _____ interest from date of judgment entry to date of execution  May 11, 2000

☐ Possession

| JUDGMENT TOTAL |
|---|
| $ 34,043.41 |
| EXECUTION TOTAL |
| $ 34,043.41 |

COUNTERCLAIM

05/18/00  THU 16:09 FAX 617 726 7541        MGH OUT.PT.PYSCH.                    ☒006

# CERTIFICATE OF SERVICE

I Richard W Hynes do hereby serve that I serve all necessary interested parties to the matters involved in this motion by a copy thereof by facsimile to:

Deputy Sheriff
Chief Deputy Breen
Middlesex County
160 Cambridge St
Cambridge MA
Fax: 617-868-7244

Paul M Rezendes
Lovins & Metcalf
10 Cedar St
Woburn MA
Fax: 781-938-4753

FILED
IN CLERK'S OFFICE
MAY 22 12 03 PM '00
U.S. BANKRUPTCY COURT
DISTRICT OF MASS.

**EXHIBIT C**

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURTS OF THE COMMONWEALTH

MIDDLESEX, SS

WOBURN DIVISION of the
DISTRICT COURT
Summary Process No.: 0053CV0401

|  |  |
|---|---|
| BURLINGTON RECREATION GROUP, LLC<br>Plaintiff,<br><br>v.<br><br>MASSACHUSETTS ATHLETIC CLUB, INC.,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | AFFIDAVIT OF JAMES<br>MCCONCHIE IN<br>SUPPORT OF MOTION<br>FOR INJUNCTION |

I, James H. McConchie, hereby depose and say as follows:

1. I am the manager of Burlington Recreation Group, LLC ("BRG"). I make this affidavit in support of BRG's motion for a preliminary injunction to permit access to 12 A Street, Burlington, Massachusetts (the "Premises"). I make this affidavit on the basis of personal knowledge or on information and belief which I consider to be reliable.

2. BRG is the owner of the Premises. The Premises are subject to a mortgage to the Norwood Cooperative Bank. Recently, a balloon payment of $630,000 fell due under the note secured by that mortgage.

3. I am in negotiations with the Norwood Cooperative Bank (the "Bank") for the refinancing of that mortgage. BRG does not have sufficient funds to make the balloon payment, and is threatened with foreclosure if it cannot refinance.

4. In connection with the refinancing, the Bank requires that there be an appraisal of the buildings and improvements at the Premises.

5. In addition, I continue to attempt to sell the Premises, and need access to show them to prospective purchasers. Although Mr. Frabizio has stated that he is interested in buying the property, he has not signed a purchase and sale agreement for it, or tendered one, since the purchase and sale agreement he signed in September of 1999 lapsed on January 10, 2000. He had agreed to sign a new lease and a revised

purchase and sale agreement on February 1, 2000, but he did not produce one for my review or signature on that date or before, despite his agreement to do so.

6. The Premises are currently occupied by Massachusetts Athletic Club, Inc. ("MAC"). MAC is the defendant in this summary process action, and is in possession without a written lease, the lease between BRG and MAC having expired by its terms on January 10, 2000.

7. On March 13, 2000, I notified MAC and its attorney in this matter that at 10:00 a.m. on March 14, 2000, I would enter the Premises with a bank appraiser to obtain the appraisal. Notification was provided by a fax sent to William Frabizio, president of MAC, at 4:00 p.m. A true copy of that notice is attached hereto as an exhibit.

8. I did not receive MAC's written response to this letter until the next day, after I had been to the Premises with the appraiser.

9. On March 14, 2000, I arrived at the Premises with the appraiser. Upon my arrival, I was stopped at the door by an employee who told me that it was "illegal for me to be on the property." Three cruisers from the Burlington Police Department arrived, and two more MAC employees came outside. One of the employees asked an officer to speak to Mr. Frabizio on a cell phone. The officer declined, commenting that he thought this looked like a civil matter and was only there in case "fists started flying." The employee then told the officer that I was in the process of being charged with the theft of equipment, and that Detective Aloisi of the Burlington Police knew all about it.

10. I told the police that I represented the owner, and that MAC was on the property after the expiration of a written lease, but all I wanted was for the appraiser to go inside and look at the building's interior. The police asked if that was agreeable, but the employee with the cell phone said that no-one could enter, not even the appraiser alone, and that I was on the property illegally.

11. At this point, the appraiser and I left the Premises.

12. Upon return to my office, I learned that Mr. Frabizio had faxed to me a copy of a letter addressed to my attorney, refusing my request to enter the Premises. A true copy of this letter is attached hereto as an exhibit. This fax was sent to me at my

office at approximately 9:30 p.m. on Monday night. Although the letter indicates that it was faxed to my attorney, I am informed by my attorney that it did not arrive.

13. I am shocked and surprised by Mr. Frabizio's refusal to allow me onto the Premises with an appraiser. Section 15.1 of the expired Lease stated: "Landlord reserves, and shall at all times, have the right to re-enter the Premises to inspect the same and to show said Premises to prospective purchasers, mortgagees or tenants, provided that the business of Tenant shall not be interfered with unreasonably." Section 15.2 allowed me to keep a key to the Premises.

14. I am also surprised to hear Mr. Frabizio still accusing me of being the subject of an on-going criminal investigation because, to my knowledge, Mr. Frabizio's accusations of criminal conduct have not resulted in any on-going investigation.

15. In early February of this year, I learned that Mr. Frabizio had contacted the Burlington Police and accused me of theft. I informed my attorneys of this and, to my knowledge, the matter was closed with the comment that it appeared to be a civil matter. To my knowledge, no criminal complaint has issued against me, and I have heard nothing further from the Burlington Police.

16. I have been informed that the locks have been changed on the Premises, and in the current posture of things, I am not able to gain access to the building in the absence of a Court order.

Signed under the penalties of perjury this 21ˢᵗ day of March, 2000

James H. McConchie

**EXHIBIT D**

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURTS OF THE COMMONWEALTH

MIDDLESEX, SS
WOBURN DIVISION of the
DISTRICT COURT
Summary Process No.: 0053CV0401

BURLINGTON RECREATION GROUP, LLC )
                         Plaintiff, )
                                    )
v.                                  )
                                    )
MASSACHUSETTS ATHLETIC CLUB, INC.,  )
                        Defendant.  )

AFFIDAVIT OF NELSON
P. LOVINS IN
SUPPORT OF MOTION
FOR INJUNCTION

I, Nelson P. Lovins, hereby depose and say as follows:

1.  I am an attorney at law licensed to practice in the Commonwealth of Massachusetts. I
    make this affidavit on the basis of my own personal knowledge.

2.  I am attorney of record for Racquetball Investment Association ("RIA"), a limited
    partnership, in an action in the Middlesex County Superior Court against
    Massachusetts Athletic Club, Inc. ("MAC") styled Racquetball Investment
    Association v. Massachusetts Athletic Club, Inc. and BankBoston, National
    Association, No. 2000-MICV00430. On February 2, I obtained a trustee process writ
    on behalf of RIA against MAC in that action.

3.  Shortly after that writ was served, I learned that William Frabizio, president of MAC,
    had contacted the Burlington Police Department and accused James McConchie, the
    general partner of RIA, of theft of some equipment.

4.  In response to this news, I contacted the person at the Burlington Police Department
    whom I understood to have been assigned to the matter, Detective Robert Aloisi.
    After we had discussed the contractual relationships underlying this matter, Detective

Aloisi said that he thought this was a civil matter, and not criminal. At his request I sent to him the contract between RIA and MAC indicating that this was, indeed, a civil matter.

5. Since that telephone conversation, I have heard nothing further from Detective Aloisi.

Signed under the penalties of perjury this 21st day of March, 2000

Nelson P. Lovins

**EXHIBIT E**

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

MIDDLESEX SUPERIOR COURT
C.A.

# 00-2175

)
MASSACHUSETTS ATHLETIC CLUB, INC.    )
    Plaintiff    )
    )
    vs.    )
    )    **VERIFIED COMPLAINT**
RACQUETBALL INVESTMENT ASSOCIATION )    **AND DEMAND FOR**
JAMES H. McCONCHIE    )    **JURY TRIAL**
BURLINGTON RECREATION GROUP LLC    )
    Defendants    )
    )

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

MAY 0 5 2000

## INTRODUCTION

1.    The Plaintiff Massachusetts Athletic Club, Inc. (hereinafter "MAC") respectfully submits this Complaint for damages and equitable relief arising out of Acquisition Agreements dated May 20, 1999 (hereinafter "Agreements") and a Lease Agreement (hereinafter "Lease") and Purchase and Sale Agreement (hereinafter "P&S") both of which agreements were contemplated by the Acquisition Agreements.

2.    Plaintiff asserts that Defendants dealt in bad faith with MAC, specifically that certain financial data pertaining to past operating figures were grossly false and misleading; that MAC reasonably relied upon the material delivered to make an informed judgment to purchase the business; and, that by doing so MAC has suffered considerable financial loss including the inability to both pay the existing Lease payments and perform on the P&S to own the real estate both of which events depended on the reasonable accuracy of the operating figures supplied to MAC; that Defendants working in concert knew that these figures were inaccurate but supplied them nevertheless to the prospective Buyer in their eagerness to sell off a business that they had intentionally mismanaged to the precarious point of closing the facility.

3.    MAC also contends that Defendants have seriously misrepresented the efficiency of the mechanical systems and created building code violations and as a result deprived the Plaintiff of the use of a crucial nursery room which impacted the use of aerobics which by their nature escaped the due diligence efforts of MAC.

4.    The Plaintiff also brings this action for its injuries and damages, and for equitable relief against the Defendants as follows:

    a)    promissory estoppel/detrimental reliance;

    b)    breach of the implied covenant of good faith and fair dealings;

    c)    negligent misrepresentation; and,

    d)    fraud and deceit

    e)    quantum meruit

5.    The Plaintiff respectfully requests a trial by jury, and asks that a judgment be entered on all Counts against each Defendant, and that he be awarded his actual damages and lost economic opportunity together with temporary, preliminary and permanent equitable relief, plus costs, interest, reasonable attorney fees, and any other relief as this Honorable Court deems just and appropriate.

## II. PARTIES

6.    The Plaintiff, MAC is a corporation duly organized under the laws of the Commonwealth of Massachusetts with an usual place of business as 12"A" Street, Burlington, Massachusetts.

7.    Defendant Racquetball Investment Association (hereinafter "RIA") a Massachusetts Limited Partnership formed under the laws of the Commonwealth of Massachusetts doing business in Norwood, Massachusetts.

8.    Defendant Burlington Recreation Group LLC (hereinafter "BRG") is also a limited liability comparing formal under the laws of the Commonwealth of Massachusetts and doing business in Norwood, Massachusetts.

9.    Defendant James H. McConchie is an attorney at law and President and Trustee of the Defendant BRG and General Partner of RIA. He lives and also works to some extent in Lincoln, Massachusetts. RIA Partner's Identification Number 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.

10.    Defendant David J. Hand of 113 Western Avenue Sherborn MA, 01170. RIA Partner's Identification Number 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.

11.    Defendant Dennis Keshishian of 11990 Glenview Drive Plymouth Michigan 48170. RIA Partner's Identification Number 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.

12.    Defendant Gary C. Cooper of 1426 Charlesworth Dearborn Heights Michigan 02021. RIA Partner's Identification Number 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.

13.    Defendant Gerald S. Garon of 5 Old Ridge Road Canton Massachusetts 02021. RIA Partner's Identification Number 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.

14.    Defendant Harry J. Garon (C/O GS Garon) of 5 Old Ridge Road Canton Massachusetts 02021. RIA Partner's Identification Number 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.

15.    Defendant James S. Sidel of 4 Falmouth Road Wellesley Hills Massachusetts 02181.
       RIA Partner's Identification Number 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.

16.    Defendant Judy Damon of 11807 Upton Road Bath Michigan 48808.  RIA Partner's
       Identification Number 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.

17.    Defendant Leonard Kane of PO Box 156 Waban Massachusetts 02168.  RIA Partner's
       Identification Number 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.

18.    Defendant Melvyn Keshishian of Brighton Electric 7041 West Grand River Brighton
       Michigan 48114.  RIA Partner's Identification Number 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.

19.    Defendant Rodney Broder of 25327 Bridle Path Lane Farmington Hills Michigan 48335-
       1703.  RIA Partner's Identification Number 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.

20.    Defendant Steven B. Turnbiner of 45 Gulfshore Blvd. North APT. 104 Naple Florida
       34103.  RIA Partner's Identification Number 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.

21.    Defendant Stewart J. Garber of 11 Royal Oak Court Rockville Maryland 20854-2654.
       RIA Partner's Identification Number 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.

22.    Defendant Susan Diane Colcher of 99 Pond Avenue APT 611 Brookline Massachusetts
       02146.  RIA Partner's Identification Number 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.

23.    Defendant Thomas Damon of 11807 Upton Road Bath Michigan 48808.  RIA Partner's
       Identification Number 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.


### III. VENUE AND JOINDER

24.    Pursuant to M.G.L. Chapter 223, § 1, the Plaintiff contends that this action is
       appropriately brought in Middlesex County, which is the County in which Defendants
       reside and do business.

25.    The Plaintiff states that the Defendants are properly joined together in this action, in that,
       as set out herein, he has asserted a right to relief arising out of the P&S, and that the
       series of transactions and occurrences, and that questions of law and fact common to both
       the Plaintiff and Defendants exist in his action.


### IV. FACTS AND BACKGROUND

26.    In mid-January of 1999 the MAC was contacted by the Defendants to initiate
       negotiations that resulted in the Acquisition Agreement that MAC entered into with the

3

Defendant RIA on or about May 20, 1999, to purchase the assets of RIA used in the operation of the business known as Mad Maggie's Health and Racquet Club/Burlington (hereinafter "MMHR"). ((See Exhibit 1). **Affidavit of William Frabizio, President/CEO of MAC and exhibits referenced and attached thereto.)**

27.    In mid-January of 1999 the MAC was contacted by the Defendants to initiate the negotiations that resulted in the Acquisition Agreement that MAC entered into with the Defendant BRG on or about May 20, 1999, to purchase the good will and ownership of the business MMHR, an all-purpose health club situated in Burlington, Massachusetts.

28.    As part of the Agreements, RIA and BRG were required to furnish in advance certain financial data in the nature of operating statements which illustrated the overall income and expenses of the Club in a non-aggregate month to month basis illustrating specifically the non-reoccurring revenues.

29.    These statements which were supplied by in part all three of the Defendants and upon which MAC relied as true and accurate contained information crucial to Plaintiff's decision to purchase the assets of MMHR.

30.    In relying upon this information, Plaintiff incorporated it as part of his business plan, which was then presented publicly to various private and public lenders.

31.    After Plaintiff purchased the assets and took over the actual management of the MMHR, it began to observe that the figures showing in its own fledgling operating statement differed markedly with and were inconsistent with the figures as shown in the operating statements supplied to it by the Defendant.

32.    After several weeks of close observation and record-keeping it became clear that the operating statement of the Defendant were untrue and inaccurate in the following areas:

a)    The prepaid membership to the MMHR were grossly sold at 33% less than the price list provided to MAC during the period in which the business was under agreement to be sold (**See Exhibit 2**). Additionally, only 30% of the reoccurring membership were actually paying monthly membership dues. Individuals and Corporations had surreptitiously been sold long term memberships, terms that extended far past any stipulated to the Plaintiff during the months of negotiations of the Agreements, up to and until the day before the actual closing (**See Exhibit 3**). Deals were made, prices cut and membership contracts were extended well beyond the time stipulated to the Plaintiff and that was usual in the common practice of the business. In short, the business was secretly "bled" of any future profits for a period of 18 future months (**See Exhibit 4**). The Defendant secretly sold prepaid memberships at heavily discounted rates for unreasonably long periods thus diminishing the overall equity of MMHR (**See Exhibit 5**).

b)    The payroll expense figures were egregiously inflated. Plaintiff ascribed these figures to be the result of poor managerial judgment. It depended on cutting those

expenses to a normal amount thus saving a substantial amount of income to operate the MMHR.

c)      The cost and expenses of running MMHR as indicated on the material above referral were substantially deflated. What the figures indicate on the material turns out to be what costs and expenses MMHR was actually paying, rather than the true figures that MMHR was continually accruing.

d)      In attempts to attain a proper perspective of the Plaintiffs claims, all of the Plaintiffs operating figures were presented for review to Dean Dinopoulos a professional accountant. **(See Exhibit 6)** Mr. Dinopoulos concluded that MMHR, RIA, and BRG had committed fraud and furthered deceptive and inaccurate information to the Plaintiff.

33.    In addition, upon closer inspection of the premises there appeared to be several building code violations outstanding which Defendants assured Plaintiff had been or would have no need to be repaired.

34.    Moreover, the Mechanical Systems including Heating, Ventilation and Air-Conditioning had intentionally been only temporarily repaired by Defendants in anticipation of the sale; since the sale they each began to fail in varying degrees from the patch work maintenance of Defendants and had to be permanently repaired by the Plaintiff at his cost and in direct violation of the Agreements.

35.    The execution of the Acquisition Agreements was executed in conjunction with and in anticipation of the execution the Lease of the Premises. These misrepresentations made it impossible for Plaintiff to continue to pay rent under the Lease.

36.    The Lease **(See Exhibit 7. Lease Agreement §19 Quiet Enjoyment Provision)** of the premises in which the Defendants are an affiliated entity contains a Quiet Enjoyment Provision which has been seriously breached by Defendants. In fact Defendant occupied the Plaintiffs premises without Plaintiffs consent or a Lease of any fashion and were consequently had to be forcibly removed from the property in late January of 2000; six months after the initiation of the Agreements.

37.    If the Defendant had not committed such acts alleged within this complaint, then the Plaintiff would have been able to fulfill the Purchase and Sales Agreement **(See Exhibit 8)** that was dependent on the truth, validity, provisions, and promises of the Defendant outlined within all of the preceding Agreements.

## V. VIOLATIONS OF LAW

### COUNT I – BREACH OF CONTRACT – ACQUISITION AGREEMENT

38.    The Plaintiff reasserts Paragraphs 1 through 37 above, and incorporates them by reference.

39.    Defendants have breached the Agreements with Plaintiff.

40.    As a direct and proximate cause of the Defendant's breach of the Agreements, the Plaintiff has suffered harm, injuries and damages in an amount to be determined.

## COUNT II – PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE

41.    The Plaintiff reasserts Paragraphs 1 through 40 above, and incorporates them herein by reference.

42.    The Plaintiff, in reliance upon the promises and assurances of the Defendants provided money for the purchase of the assets to the Defendants.

43.    The Defendants breached their promises and assurances to the Plaintiff in that, without limitation:

      a)    the Defendants, its agents or assignees, provided crucial, but misleading, information other assets as described abovesaid; and

      b)    the Plaintiff relied upon the information given to his detriment.

44.    As a direct and proximate cause of the Defendants breach of the contract/promissory estoppel and detrimental reliance, the Plaintiff has suffered harm, injuries and damages in an amount to be determined, but in the tens of thousands of dollars, to its detriment.

## COUNT III - BREACH OF GOOD FAITH DEALING

45.    The Plaintiff reasserts Paragraphs 1 through 44 above, and incorporates them herein by reference.

46.    A covenant of good faith and fair dealing was implied and existed in the business relationship between the parties.

47.    The Defendants had a duty of good faith and fair dealing in their dealings with the Plaintiff; and, pursuant to the promises, contracts, statements, information and materials made to Plaintiff to induce it to do business with each of the Defendants.

48.    Under the covenant, the Defendants were obligated to good faith performance of the Plaintiff's written contracts and to be faithful and consistent to the justified expectations of the Plaintiff.

49.   As described above, each of the Defendants have breached the implied covenant of good faith and fair dealings with the Plaintiff.

50.   As a direct and proximate cause of the Defendants' breach of the implied covenant of good faith and fair dealing, the Plaintiff has suffered harm, injuries and damages in an amount to be determined, but in the tens of thousands of dollars, to its detriment.

## IV. – NEGLIGENT MISREPRESENTATION

51.   The Plaintiff reasserts Paragraphs 1 through 50 above, and incorporates them herein by reference.

52.   The conduct of the Defendants as described herein constitute negligent misrepresentation in that the Defendants negligently provided the Plaintiff with false and misleading information which it relied upon to his detriment

53.   The false statements made were in breach of the Defendants' duty to exercise due care to reasonable determine that the statements made were true and accurate at the time they were made, and that true and accurate statements were made to the Plaintiff regarding its dealings with the Defendants.

54.   As a direct and proximate cause of the Defendants negligent misrepresentations, the Plaintiff suffered harm, injuries and damages in an amount to be determined but in the tens of thousands of dollars, to his detriment.

## COUNT V – FRAUD AND DECEIT

55.   The Plaintiff reasserts Paragraphs 1 through 54 above, and incorporates them herein by reference.

56.   The actions, omissions, misrepresentations, practices and courses of conduct, as described herein, of the Defendants constitutes fraud and deceit in that, without limitation:

   a)   the Defendants and other made numerous false statements, misrepresentations, and omissions of material facts to the Plaintiff and others, intentionally, willfully, knowingly and/or with reckless disregard as to whether they were true or false;

   b)   the Defendants and others made said misrepresentations and omissions for the purpose of inducing reliance from the Plaintiff; and,

   c)   the Plaintiff did rely upon said misrepresentations and omissions, to his detriment.

57.   The Defendants' false statements, fraudulent acts, omissions, and practices, without limitation, were:

a)     made as to facts, susceptible of actual knowledge with the actual or constructive knowledge of their untruth or with reckless disregard as to their truth;

b)     promissory in nature, but made with a present intent not to comply therewith;

c)     promissory in nature and involved predictions as to future events, but were made by parties with superior bargaining power as to matters of which said parties should have had superior knowledge; and/or,

d)     the knowing utterance of half-truths which were, in effect, false statements and lies.

58.     As a direct and proximate cause of the Defendants' fraud and deceit, the Plaintiff suffered harm, injuries and damages in an amount to be determined, but in the tens of thousands of dollars, to his detriment.

## Count VI – VIOLATION OF MASS G.L.C. 93A

59.     The Plaintiff reasserts paragraphs 1-58 above and incorporates them herein by reference.

60.     The practices and conduct used by the Defendants as described herein amounts to violations of M.G.L. C. 93A § 2, 9, and 11 in that said practices were fraudulent, deceptive and unfair.

61.     Defendants were duly notified by Plaintiff by certified mail return receipt requested of the violations and Defendants responded to Plaintiff by letter denying all claims and refusing to proffer a settlement of any kind or amount.

62.     As a direct and proximate cause of Defendants violation of M.G.L. 93A the Plaintiff suffered harm treble damages in an amount to be determined, but in the tens of thousands of dollars to his determent.

## VII. REQUESTS FOR RELIEF

WHEREFORE, the Plaintiff requests that this Honorable Court grant him the following relief:

a)     render judgment on behalf of the Plaintiff, on all counts, and issue findings of fact and rulings of law, as necessary and appropriate, that the Defendants herein are reliable, in all respects;

b)     order, decide, adjudge and determine that the Defendants' liability is for all losses, injuries and damages, special, consequential, general, punitive and/or otherwise, and for all interest, costs, and reasonable attorney fees, as alleged herein;

c)     determine, order, find, rule attach such real and personal property, restrain and enjoin the Defendants, and provide the Plaintiff with temporary, preliminary and permanent equitable and injunctive relief as this Honorable Court deems just and proper;

d)   order, decide, adjudge, determine and award the Plaintiff the actual losses sustained by it as a result of all of the causes of action alleged against the Defendants, including, but not limited to: promissory estoppel/detrimental reliance; breach of the implied covenant of good faith and fair dealing; negligent misrepresentation; and, fraud and deceit;

e)   order, decide, adjudge, determine and award the Plaintiff the losses suffered by him in an amount to be determined, but in tens of thousands of dollars, by the Defendants' violations of law, as set out above;

f)   determine, order, find, rule, attach such real and personal property, restrain and enjoin the Defendants, and provide the Plaintiff with temporary, preliminary and permanent equitable and injunctive relief for the Defendants' violation of law, as set out above;

g)   award the Plaintiff his costs in bringing this action, plus reasonable attorney fees;

h)   award the Plaintiff punitive damages in an amount to be determined; and,

i)   any additional relief which this Honorable Court deems just and proper.

j)   award Plaintiff treble damages pursuant to M.G.L. C. 93A.

THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS.

Respectfully submitted,
Massachusetts Athletic Club
By their attorney

Richard W. Hynes, Esq.
7 Harvard Street #230
Brookline, MA 02445
BBO #246620
(617) 264-9800

Dated: 5-5-0

9

**EXHIBIT F**

 Form B1, P2 (12-94)   *Julius Blumberg, Inc. NYC 10013* 

 00-13525

Name of Debtor: _MASSACHUSETTS ATHLETIC CLUB INC._   Case No. _____
(Court use only)

## FILING OF PLAN   For Chapter 7, 11, 12 and 13 cases only. Check appropriate box.

☐ A Copy of debtor's proposed plan dated _____ is attached.   ☒ Debtor intends to file a plan within the time allowed by statute, rule, or order of the court.

### PRIOR BANKRUPTCY CASE FILED WITHIN LAST 6 YEARS (If more than one, attach additional sheet)

| Location Where Filed | Case Number | Date Filed |
|---|---|---|
| N/A | | |

### PENDING BANKRUPTCY CASE FILED BY ANY SPOUSE, PARTNER, OR AFFILIATE OF THIS DEBTOR (If more than one, attach additional sheet.)

| Name of Debtor | Case Number | Date |
|---|---|---|
| N/A | | |
| **Relationship** N/A | **District** | **Judge** |

### REQUEST FOR RELIEF   Debtor is eligible for and requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

## SIGNATURES

ATTORNEY   Signature   X _Richard W. Hymes_   Date _5-18-00_

### INDIVIDUAL/JOINT DEBTOR(S)

I declare under penalty of perjury that the information provided in this petition is true and correct

X _____
Signature of Debtor

Date _____

X _____
Signature of Joint Debtor

Date _____

### CORPORATE OR PARTNERSHIP DEBTOR

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

X _____
Signature of Authorized Individual

_PRESIDENT WILLIAM V. FRARETTO_
Print or Type Name of Authorized Individual

_PRESIDENT_
Title of Individual Authorized by Debtor to File this Petition

_5-18-00_
Date

If debtor is a corporation filing under chapter 11, Exhibit "A" is attached and made part of this petition.

### TO BE COMPLETED BY INDIVIDUAL CHAPTER 7 DEBTOR WITH PRIMARILY CONSUMER DEBTS (See P.L. 98-353 § 322)

I am aware that I may proceed under chapter 7, 11, or 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7 of such title.

If I am represented by an attorney, exhibit "B" has been completed.

X _____
Signature of Debtor                          Date _____

X _____
Signature of Joint Debtor                    Date _____

### CERTIFICATION AND SIGNATURE OF NON-ATTORNEY BANKRUPTCY PETITION PREPARER (See 11 U.S.C. § 110)

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I have prepared this document for compensation, and that I have provided the debtor with a copy of this document.

_____
Printed or Typed Name of Bankruptcy Petition Preparer

_____
Social Security Number

_____
Address                                   Tel.No.

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

### EXHIBIT "B"

(To be completed by attorney for individual chapter 7 debtor(s) with primarily consumer debts.)

I, the attorney for the debtor(s) named in the foregoing petition, declare that I have informed the debtor(s) that (he, she, or they) may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under such chapter.

X _____
Signature of Attorney                        Date _____

If more than one person prepared this document, attach additional signed sheets conforming to the appropriate Official Form for each person.

X _____
Signature of Bankruptcy Petition Preparer

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.

# **VOTE**

On May 17, 2000, the Board of Directors and Shareholder of the Massachusetts Athletic Club, Inc. met at the office of their attorney Richard W. Hynes and the following unanimous vote was recorded:

VOTED:    Thus the President of Massachusetts Athletic Club, Inc. William V. Frabizio be authorized to initiate a Bankruptcy proceeding under Chapter 11 of the United States Bankruptcy Laws and to do all thing necessary in his judgment to best protect the interests of the Corporation.

Dated the 17th day of May 2000.

William V. Frabizio
President/Treasurer
Board of Directors

I Richard W. Hynes do attest that this is a true and accurate vote taken on May 17, 2000 is still in force and effect.

Richard W. Hynes
Clerk

Dated:        May 18, 2000

**EXHIBIT G**

B 104
(Rev. 8/87)

## ADVERSARY PROCEEDING COVER SHEET
(Instructions on Reverse)

ADVERSARY PROCEEDING NUMBER
(Court Use Only)

**00-1239**

**PLAINTIFFS**

Massachusetts Athletic Club, Inc.

**DEFENDANTS**

Burlington Recreation Group LLC

**Filing Fee Paid**

**ATTORNEYS** (Firm Name, Address, and Telephone No.)

Richard W. Hynes, Esq.
7 Harvard Street, #230
Brookline, MA 02445

**ATTORNEYS** (If Known)

Paul M. Rezendes, Esq.
Ten Cedar Street, Chestnutgreen
Woburn, MA 01801

**PARTY** (Check one box only)  ☐ 1 U.S. PLAINTIFF   ☐ 2 U.S. DEFENDANT   ☐ 3 U.S. NOT A PARTY

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

To regain possession of the premises at "12"A Street, Burlington MA.  Pursuant to Federal Rules of Bankruptcy Procedure:  Rule 7001 (1) a proceeding to recover money or property or a proceeding under §554(b) or §725 of the Code, Rule 2017, or Rule 6002.

To Quash Eviction Execution and fulfill provisions of the Acquisition Agreements as described herein.

### NATURE OF SUIT
(Check the one most appropriate box only.)

☒ 454 To Recover Money or Property
☐ 435 To Determine Validity, Priority, or Extent of a Lien or Other Interest in Property
☐ 458 To obtain approval for the sale of both the interest of the estate and of a co-owner in property
☐ 424 To object or to revoke a discharge 11 U.S.C. §727

☐ 455 To revoke an order of confirmation of a Chap. 11 or Chap. 13 Plan
☐ 426 To determine the dischargeability of a debt 11 U.S.C. §523
☒ 434 To obtain an injunction or other equitable relief
☐ 457 To subordinate any allowed claim or interest except where such subordination is provided in a plan

☐ 456 To obtain a declaratory judgment relating to any of foregoing causes of action
☐ 459 To determine a claim or cause of action removed to a bankruptcy court
☒ 498 Other (specify)

**ORIGIN OF PROCEEDINGS** (Check one box only.)
☒ 1 Original Proceeding
☐ 2 Removed Proceeding
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another Bankruptcy Court

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

| DEMAND | NEAREST THOUSAND $ | OTHER RELIEF SOUGHT | |
|---|---|---|---|
| | | | ☐ JURY DEMAND |

### BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

NAME OF DEBTOR
MASSACHUSETTS ATHLETIC CLUB, INC.

BANKRUPTCY CASE NO.
00-13525

DISTRICT IN WHICH CASE IS PENDING
MIDDLESEX (MASSACHUSETTS)

DIVISIONAL OFFICE

NAME OF JUDGE
JUDGE FEENEY

### RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
|---|---|---|---|
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE | |

**FILING FEE** (Check one box only.)   ☐ FEE ATTACHED   ☐ FEE NOT REQUIRED   ☐ FEE IS DEFERRED

| DATE | PRINT NAME | SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|---|---|
| 5-23-01 | R. W. HYNES | Richard W. Hynes |

00-1239

# UNITED STATES BANKRUPTCY COURT

IN RE: MASSACHUSETTS ATHLETIC CLUB, INC.

**Filing Fee Paid**

DISTRICT OF
MASSACHUSETTS
CASE NO: .00-13525
CHAPTER 11
JUDGE: HONORABLE JOAN FEENEY

### ADVERSARIAL MOTION TO QUASH EVICITION EXECUTION AND FOR REMEDIES ENUMERATED IN ACQUISITION AGREEMENTS

Now comes the Massachusetts Athletic Club, Inc. ("MAC") DEBTOR, in the above action move that this Honorable Court Quash the Execution issued and order Burlington Recreation Group LLC ("BRG") to carry out the provisions in Article VI of the Acquisition Agreements entitling Debtor to regain possession of the premises at 12 "A" Street, Burlington Massachusetts and pursuant to Federal Rules of Bankruptcy Procedure: Rule 7001 (1) a proceeding to recover money or property, except to compel the debtor to deliver property to the trustee, or a proceeding under §554(b) or §725 of the Code, Rule 2017, or Rule 6002.

For its reasons therefore the Debtor relies upon the Memorandum attached hereto.

Respectfully submitted
Massachusetts Athletic Club, Inc.
**(DEBTOR)**

By its attorney:

Richard W. Hynes
7 Harvard Street #200
Brookline MA 02445
Tel:    617-264-9800
BBO # 246620



**EXHIBIT H**

B 104
(Rev. 8/87)

**ADVERSARY PROCEEDING COVER SHEET**
(Instructions on Reverse)

ADVERSARY PROCEEDING NUMBER
(Court Use Only)

**PLAINTIFFS**

*Massachusetts Athletic Club, Inc*
*DEBTOR*

**DEFENDANTS**

*James McConchie*
*Racquetball Investment Association*
*Burlington Recreation Group LLC*

**00-1509**

**ATTORNEYS** (Firm Name, Address, and Telephone No.)

*Richard W. Hynes, Esq*
*17 Harvard St, Suite 230*
*Brookline, MA 02445*

**ATTORNEYS** (If Known)

*Paul M. Reeuwdes*

**PARTY** (Check one box only)  ☐ 1 U.S. PLAINTIFF   ☐ 2 U.S. DEFENDANT   ☐ 3 U.S. NOT A PARTY

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

*Plaintiff/Debtor Moves To Compel Contractual Indemnification*
*As Provided By Agreements Signed On May 20th, 1999.*

**NATURE OF SUIT**
(Check the one most appropriate box only.)

☑ 454 To Recover Money or Property
☐ 435 To Determine Validity, Priority, or Extent of a Lien or Other Interest in Property
☐ 458 To obtain approval for the sale of both the interest of the estate and of a co-owner in property
☐ 424 To object or to revoke a discharge 11 U.S.C. §727

☐ 455 To revoke an order of confirmation of a Chap. 11 or Chap. 13 Plan
☐ 426 To determine the dischargeability of a debt 11 U.S.C. §523
☐ 434 To obtain an injunction or other equitable relief
☐ 457 To subordinate any allowed claim or interest except where such subordination is provided in a plan

☐ 456 To obtain a declaratory judgment relating to any of foregoing causes of action
☐ 459 To determine a claim or cause of action removed to a bankruptcy court
☐ 498 Other (specify)

**ORIGIN OF PROCEEDINGS**
(Check one box only.)

☑ 1 Original Proceeding
☐ 2 Removed Proceeding
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another Bankruptcy Court

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND**   **NEAREST THOUSAND**
$ *200,000.00*

**OTHER RELIEF SOUGHT**
*Indemnification From Creditors*

☐ JURY DEMAND

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

**NAME OF DEBTOR**
*Massachusetts Athletic Club, Inc*

**BANKRUPTCY CASE NO.**
*00-13525-JNF*

**DISTRICT IN WHICH CASE IS PENDING**
*Massachusetts*

**DIVISIONAL OFFICE**
*Eastern*

**NAME OF JUDGE**
*Feeney*

**RELATED ADVERSARY PROCEEDING (IF ANY)**

**PLAINTIFF**

**DEFENDANT**

**ADVERSARY PROCEEDING NO.**

**DISTRICT**

**DIVISIONAL OFFICE**

**NAME OF JUDGE**

**FILING FEE** (Check one box only.)

☐ FEE ATTACHED   ☑ FEE NOT REQUIRED   ☐ FEE IS DEFERRED

**DATE**
*9-28-00*

**PRINT NAME**
*William V. Langford*

**SIGNATURE OF ATTORNEY (OR PLAINTIFF)**

*William V. Langford*
*FRAB1210*

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

**00-1509**

In Re:

MASSACHUSETTS ATHLETIC CLUB, INC
(Debtor)

Case No. 00-13525-JNF
Chapter 7

## EMERGENCY ADVERSARIAL MOTION TO COMPEL ATTORNEY JAMES MCCONCHIE, RACQUETBALL INVESTMENT ASSOCIATION, AND BURLINGTON RECREATION GROUP, LLC., TO INDEMNIFY DEBTOR AND FOR ORDER ALLOWING DEBTOR TO RECOVER ITS PERSONAL PROPERTY

Now comes the Massachusetts Athletic Club, Inc. ("MAC") DEBTOR requests that this Honorable Court Order Attorney James McConchie ("McConchie"), Racquetball Investment Association ("RIA"), and Burlington Recreation Group LLC ("BRG") to strictly adhere to its contractual obligations as provided in the Acquisition Agreements ARTICLE VI: Indemnification: 6.1 Indemnification of Buyer

> "The Seller will jointly and severally indemnify and hold Buyer, it subsidiaries and their respective directors, officer, employees and agents (collectively, the "Buyer Parties") harmless from any and all liabilities, obligations, claims, contingencies, damages, costs and expenses, including all Court costs and reasonable attorney fees (collectively, "Claims"), that any Buyer Party may suffer or incur as a result of or relating to: the breach or inaccuracy, **or any alleged breach or inaccuracy**, of any of the representations, warranties, covenants or agreements made by the seller in this Agreement or pursuant thereto..." **(EMPHASIS SUPPLIED)**

DEBTOR, also request that this Honorable Court Order McConchie, RIA, and BRG to carry out the provisions of the Acquisition Agreements entitling Debtor to return possession of all of Debtor's personal property from premises at 12 "A" Street and Order the Sheriff of Middlesex County to regain possession of all of their personal property from the storage facility in Somerville MA, and release of the like.

In support of its Motion the Debtor provides the Memorandum as attached hereto.

Respectfully submitted
Massachusetts Athletic Club, Inc.
**(DEBTOR)**

By its attorney:

Richard W. Hynes
7 Harvard Street #230
Brookline MA 02445
Tel:   617-264-9800
BBO # 246620

Date:  9-28-00

# UNITED STATES BANKRUPTCY COURT
## FOR THE
### DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

# 00-1509



In Re:

MASSACHUSETTS ATHLETIC CLUB, INC
(Debtor)

Case No. 00-13525-JNF
Chapter 7

---

**MEMORANDUM IN SUPPORT OF DEBTORS ADVERSARIAL MOTION TO COMPEL ATTORNEY JAMES MCCONCHIE, RACQUETBALL INVESTMENT ASSOCIATION, AND BURLINGTON RECREATION GROUP, LLC., TO INDEMNIFY DEBTOR AND FOR ORDER ALLOWING DEBTOR TO RECOVER ITS PERSONAL PROPERTY**

## I. INTRODUCTION

1. The Plaintiff/Debtor, Massachusetts Athletic Club, Inc. (hereinafter "MAC"), respectfully submits this Memorandum for relief arising out of Acquisition Agreements dated May 20, 1999 (hereinafter "Agreements") and Purchase and Sale Agreement (hereinafter "P&S") which contemplated by the Acquisition Agreements.

## II. JURISDICTION

2. On May 18, 2000 MAC rendered a petition in the United States Bankruptcy Court under Chapter 11 of the Code.

3. On August 2, 2000, the Debtor's reorganization proceedings were converted to a Chapter 7 of the Bankruptcy Code.

4. The Plaintiff/Debtor also submits this Memorandum for relief pursuant to Federal Rules of Bankruptcy Procedure: Rule 7001 (1) §554(b) or §725 of the Code, Rule 2017, or Rule 6002.

## III. FACTS

5. The MAC entered into the two Agreements dated May 20, 1999 with Attorney James McConchie (hereinafter "McConchie").

6. McConchie is the principal of Racquetball Investment Association (hereinafter "RIA"), the principal of Burlington Recreation Group LLC (hereinafter "BRG"), and an Attorney at Law.

7.  The Agreements dated May 20, 1999, signed by McConchie, between RIA, BRG and MAC are attached hereto as **Exhibit A and Exhibit B** states as follows:

ARTICLE I
Exchange of Cash For Assets

1.1   <u>Purchase of Assets</u> -- At the Closing, the Seller agrees to sell, transfer, assign and deliver to Buyer the Assets (as defined below), and Buyer agrees to purchase and take the Assets, on the terms and subject to the conditions set forth in this Agreement. Subject to the provisions of Section 1.2, the "Assets" mean various tangible and intangible assets of the Seller used in the operation and ownership of the Business know as MAD MAGGIES HEALTH AND RACQUET CLUB/BURLINGTON, including **(1) Seller's equipment, cabinets, counter, shelving and the like (Emphasis Supplied);** (2) all of Sellers goodwill; (3) all of Seller's customer lists, sales records, sales data, signs, sales literature, inventory lists, invoices on any other printed or computer materials, including computer software and licenses; (4) all of Seller's inventory; **(5) prepaid assets, fixtures, leasehold rights, leasehold improvements, contracts, customers, telephone numbers, permits, licenses, proprietary information, intellectual property, and trade secrets (EMPHASIS SUPPLIED).**

ARTICLE VI
Indemnification

6.1   <u>Indemnification of Buyer</u> -- The Seller will jointly and severally indemnify and hold Buyer, it subsidiaries and their respective directors, officer, employees and agents (collectively, the "Buyer Parties") harmless from any and all liabilities, obligations, claims contingencies, damages, costs and expenses, including all Court costs and reasonable attorney fees (collectively, "Claims"), that any Buyer Party may suffer or incur as a result of or relating to:

(a)   the breach or inaccuracy, **or any alleged breach or inaccuracy,** of any of the representations, warranties, covenants or agreements made by the seller in this Agreement or pursuant thereto... **(EMPHASIS SUPPLIED).**

8.  MAC brought a civil complaint in the Middlesex Superior Court on or about May 5, 2000 **No: 00-2175 (Exhibit D)** against RIA, BRG, and McConchie based on:

a) promissory estoppel/detrimental reliance;
b) breach of implied covenant of good faith and fair dealings;
c) negligent misrepresentation; and,
d) fraud and deceit;
e) quantum meruit;

9.  That McConchie, RIA, and BRG are properly joined and to provide for the provisions of Indemnification as stipulated by Attorney McConchie in his Affidavit dated May 15, 2000 (attached hereto as **Exhibit C, ¶ 8**) where he states:

"In my negotiations with Mr. Frabizio, I acted on behalf of two business entities, Racquetball Investment Association ("RIA"), a limited partnership that operated Mad Maggie's and owned most of its assets, and Burlington Recreation Group, LLC ("BRG"), a limited liability company that owned a few pieces of equipment used by Mad Maggie's and which owned the real estate on which Mad Maggie's was run. As a result, two separate agreements were entered into with MAC for the purchase of assets, one with RIA and one with BRG. **Each of these documents had an integration clause.**" **(EMPHASIS SUPPLIED)**

10. Aside from the charges contained in the 93A suit, McConchie, RIA, and BRG breached the Acquisition Agreements by entering into by conferring and signing agreements, while MAC was still the operating entity of the property. Specifically by disclosing any Confidential Information, including the MAC's financial status, to certain persons and making use of Confidential Information for its own purposes or for the benefit of any other person than the MAC; as fully set forth in *§ 4.8 Non-competition* of the Acquisition Agreements signed and dated May 20, 1999 by and between MAC and McConchie, RIA, and BRG.

11. Also aside from the charges contained in the 93A suit, McConchie, RIA, and BRG breached the Acquisition Agreements by:

> *directly or indirectly, on his or her own behalf or as an officer, director, employee, consultant or other agent of any person: (a) engaged in the health, fitness or racquetball business of any kind in any area located with ten (10) miles of 12 "A" Street, Burlington, Massachusetts; (b) influence or attempt to influence any customer or potential customer of the seller in the Territory to acquire services offered by the MAC from another; or, (c) affiliate himself or herself with, be a lender to or own any economic interest of any kind in , any business or person engaged in the Business in the Territory;*

As fully set forth in *and § 4.8 Non-competition,* of the Acquisition Agreements signed and dated May 20, 1999 by and between MAC and McConchie, RIA, and BRG.

12. McConchie, RIA, and BRG were in business with David Livingstone, Gold's Gym in Woburn Massachusetts and National Fitness Center, Inc. (NFCI), thus breaching, or allegedly breaching, **§ 4.8 Non-competition and/or § 4.8 Non-competition** as set forth in the aforementioned and attested to in the Affidavit of David Livingstone dated May 16, 2000 (See **Exhibit E**).

> **"In early April of this year, NFCI entered into a written lease with Burlington Recreation Group, LLC for the lease of the real estate at 12 "A" Street Burlington, Massachusetts,** conditioned on delivery of the premises free of possession of Massachusetts Athletic Club, Inc. ("MAC"). NFCI plans to open a health club at 12 A Street, Burlington, as soon as possible after MAC vacates."

13. There exists an **alleged breach or inaccuracy** of the Agreements as aforesaid.

14. McConchie, RIA, and BRG are fully aware of, and financially capable, to fulfill its contractual obligations as McConchie has stated publicly that: *"I have seven million dollars ($7,000,000.00). I am not afraid. I can handle it"* (SEE **EXHIBIT F**) when confronted with the charges contained herein.

## IV. ARGUMENT

15. McConchie, RIA, and BRG are contractually obligated, and have more than enough financial means, to Indemnify Debtor in full.

16. McConchie, RIA, and BRG were in business with David Livingstone, Gold's Gym in Woburn Massachusetts and National Fitness Center, Inc. (NFCI), while MAC was still the operating entity of the property

17. McConchie, RIA, and BRG falsely instructed the Sheriff of Middlesex that Debtor was not entitled to regain possession of all of their personal property

18. That as a result of McConchie, RIA, and BRG's false representations, the Sheriff did not allow Debtor to recover these assets.

19. That pursuant to Federal Rules of Bankruptcy Procedure: Rule 7001 (1) a proceeding to recover money or property, except to compel the debtor to deliver property to the trustee, or a proceeding under §554(b) or §725 of the Code, Rule 2017, or Rule 6002 this Honorable Court Order McConchie, RIA, and BRG to carry out the provisions of the Acquisition Agreements and entitling Debtor to regain possession of all of their personal property from premises at 12 "A" Street

20. This Honorable Court Order McConchie, RIA, and BRG to carry out the indemnification provisions of the Acquisition Agreements entitling Debtor to regain possession of all of their personal property from premises at 12 "A" Street and Order the Sheriff of Middlesex County to release all equipment presently being stored in Somerville MA.

21. That the personal property to which the Debtor refers that is still being held in the premises at 12 "A" Street is as follows, but not limited to:

   1) Three (3) television sets and mounting systems.
   2) All of the black mats used on the weight room floor (approximately 60-70).
   3) All nine (9) ceiling fans.
   4) All of the mirrors in the entire building.
   5) All of the metal halide light bulbs installed in the courts and weight room.
   6) Three (3) free standing air conditioner units.
   7) All of the Stereo Equipment including speakers throughout the property.

22. This Honorable Court, pursuant to the aforementioned article I. and the Federal Rules of Bankruptcy Procedure: Rule 7001 (1) under §554(b) or §725 of the Code, Rule 2017, or Rule 6002 this Honorable Court Order that Burlington Recreation Group LLC to allow Debtor to regain possession of all of their personal property from the premises at 12 "A" Street, Burlington Massachusetts as provided by the Agreements including, but not limited to equipment, cabinets, counters, shelving and the like; prepaid assets, fixtures, leasehold rights, leasehold improvements.

23. Pursuant to the aforementioned article VI. MAC is contractually Indemnified, and should be granted relief and held "**harmless from any and all liabilities, obligations, clams, contingencies, damages, costs and expenses, including all Court costs and reasonable attorney fees or claims (Emphasis Supplied)**, that MAC may suffer or incur as a result of or relating to **any alleged breach or inaccuracy or any representations (Emphasis Supplied)**, warranties, covenants or agreements made by the seller."

**WHEREFORE** Debtor requests:

1. That this Honorable Court Order McConchie, RIA, and BRG to Indemnify DEBTOR as stipulated in the aforementioned articles of the Acquisition Agreements dated May 20, 1999 and Order that the contracts are adhered to and as specifically contained therein:

    *The Seller will jointly and severally indemnify and hold Buyer, it subsidiaries and their respective directors, officer, employees and agents (collectively, the "Buyer Parties") **harmless from any and all liabilities, obligations, claims contingencies, damages, costs and expenses, including all Court costs and reasonable attorney fees (collectively, "Claims")**, that any Buyer Party may suffer or incur as a result of or relating to said agreements*

2. That this Honorable Court Order McConchie, RIA, and BRG to additionally Indemnify Debtor from all *CLAIMS* (Emphasis Supplied) from Creditors as set forth above, here and after, and as set forth and contemplated by the aforementioned Agreements.

3. That this Honorable Court Order the Sheriff of Middlesex County to regain possession of all of Debtor's personal property from the storage facility in Somerville MA, and release of the like.

4. That this Honorable Court assesses the costs of the remedies afforded Debtor as seems appropriate by the Court.

Respectfully submitted
Massachusetts Athletic Club, Inc.
**(DEBTOR)**

By its attorney:

Richard W. Hynes
7 Harvard Street #230
Brookline MA 02445
Tel:    617-264-9800
BBO # 246620

Date:

**UNITED STATES BANKRUPTCY COURT**
**FOR THE**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

In Re:

MASSACHUSETTS ATHLETIC CLUB, INC
                (Debtor)

Case No. 00-13525-JNF
              Chapter 7

## CERTIFICATE OF SERVICE

The undersigned, Richard W. Hynes, does hereby represent that he has served a copy of this Motion by First class mail, postage prepaid, on this 28th day of September 2000 upon the service list below:

Office of the United States Trustee
Federal Building, Room 1184
10 Causeway Street
Boston, MA 02222

Paul M. Rezendes, Esq.
Lovins & Metcalf
Ten Cedar Street
Woburn, MA 01801

Clerk's Office
U.S. Bankruptcy Court
10 Causeway Street
Boston, MA 02222

Richard W. Hynes, Esq.

**EXHIBIT I**

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

In Re:                                         Chapter 7

MASSACHUSETTS ATHLETIC CLUB, INC.
                              (Debtor)         Case No. 00-13525-JNF

## DEBTOR'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION TO DENY TRUSTEE'S MOTION TO DISMISS CASE IN RESPONSE TO BURLINGTON RECREATION GROUP, LLC.

Massachusetts Athletic Club, Inc., DEBTOR, requests that the Court denies the Trustee's Motion to Dismiss this case. Burlington Recreation Group, LLC. ("BRG"); makes no legitimate Assent to the Trustee's Motion, but only uses this issue as a vehicle to assault the debtor and further an agenda against the debtor. BRG also continues with its intentionally false statements to the Court in order to shield itself from the issue of indemnification that it must, by law, provide to the debtor. BRG offers no evidence in support of its claims and has never offered any argument whatsoever why it should not have to indemnify the debtor. The Debtor responds and states the following in support of its original Motion not to dismiss:

1. Debtor has no recognizable debt to Racquetball Investment Association ("RIA"), as eluded to in attorney Rezendes's memorandum, due to the facts contained in, but not limited to the following:

   — RIA unlawfully took the property listed in RIA's memorandum Exhibit A, and therefore has recovered assets in the amount of, or, exceeding judgment;

   — RIA stole the property from the premises when the debtor lost possession of the property to BRG and has either sold it or used it for its own purposes;

   — The Sheriff of Middlesex County, Steven Donnolly was present at the time the equipment in question was fraudulently taken by attorney James McConchie ("McConchie") and will testify, in Court, to these facts in support of the debtor;

   — Attorney Rezendes only represents BRG in the aforementioned Assent To And Filing In Support Of Trustee's Motion to Dismiss as he represents with his

1   DOCKETED                    48

signature upon the closing of his Assent, therefore RIA is not correctly represented by Mr. Rezendes;

— The issues before the Court now are subject to Chapter 7 provisions. Attorney Rezendes has improperly filed his Assent under the provisions and heading of Chapter 11 case;

— The fact that BRG was not listed as a creditor in the matrix is because MAC understood that landlords were not to be listed in the matrix, and RIA clearly can bring no cause of action against MAC as well as it had more than satisfied by stealing equipment while the property at 12 "A" Street was repossessed;

— RIA and BRG's actions and statements, amount to nothing less than fraud, perjury, and the theft of property form the premises at 12 "A" Street in Burlington.

2.  The arguments set forth by BRG, concerning the occupancy of the property at 12 "A" Street, and any motions furthered by the MAC in which to do so was, as attorney Rezendes says, "moot". All motions were rendered moot by the Court because the Sheriff had duly served the eviction before the MAC was able to gain protection under the law. The issues of protection from financial burden under the provisions of Indemnification, upon review of the Court records, were not adjudicated. Hence, the present indemnification issues before the Court, **which have now been fully accepted by RIA, BRG, and McConchie because, at least, they have failed to proffer any argument(s) to the contrary are of significant interest to all creditors** (EMPHASIS SUPPLIED). All issues before the Middlesex Superior Court were halted due to the bankruptcy proceedings. No arguments for indemnification of debt were ever made prior Adv. Proc. No. 00-01509, only issues of occupancy or to quash or rescind the order of eviction.

3.  The debtor only attempted to obtain injunctive relief with respect to the <u>eviction</u>. The "Motion To Deny The Motion Of Fleet National Bank For Relief From the Automatic Stay and Debtor's Motion For Order to Recover Its Personal Property," was moot because Fleet had already attained said relief and debtor's motion was late in its filing. Adv. Proc. No. 00-01509 has been appealed and due to the fact that there was never any objection to its filing prior, or the facts contained therein, and the MAC stands a reasonable likelihood of success on the merits as all arguments against Adv. Proc. No. 00-01509 should be barred by the Rule of Preclusion.

2

4. The issues of Fraud and Perjury, again were never objected to nor was an argument to the contrary ever proffered. Therefore, the issue of Fraud and Perjury are now a matter of fact before the Court. The only reason the debtor could not attain a judgment for possession of the property is because the time for appeal had passed, and the Court could not, because of precedent only, entertain arguments to the contrary. Again, the issues of Fraud and Perjury against RIA, BRG, and McConchie were never denied, and therefor are now a matter of fact, and if they now wish to bring those proceedings into question, as they have, in this forum then they are subject to facts pertaining thereto.

5. Once again, RIA, BRG, and McConchie commits Perjury and Fraud now in this Honorable Court by stating that "***BRG removed all personality of the debtor located at the premises and placed it into storage, where it awaits action by this Court***…". The aforementioned is false. In fact, BRG took a significant amount of property and moved it to its facilities in Norwood. The aforementioned Sheriff Steven Donnolly bore witness to these acts and reported them to MAC. MAC has attempted to attain these items, but to no avail. Therefore, again RIA, BRG, McConchie, and its attorney have deceived the Court system in its efforts to violate the rights of MAC and its creditors. Sheriff Donnolly will testify in support of the assertions of the debtor and the actions of RIA, BRG, and McConchie in this matter.

6. MAC did not have "*ample opportunity to obtain the materials it needed for the requisite schedules and statements*", as all of this data is contained on two computers that are, presumably in storage, in Somerville, that is if RIA, BRG and its affiliates did not take these items. Therefore, MAC can not presently obtain the materials it needs for the requisite schedules and statements unless its property is released.

7. Again BRG falsely states to the Court issues of fact. BRG states, "*BRG believes, **and therefore avers**, that debtor obtained and removed all files and materials necessary for the filings required by this Court.*" If BRG "avers" or "*to make or prove true*" as defined in Black's Law Dictionary, as it does, then BRG again perjures itself, as the MAC has clearly not had access to its files that are being held under lock and key in Somerville. BRG's continuous false statements and deceptive actions are injurious, and have, and will continue to cause the MAC great harm. The MAC can prove that

3

BRG misstates facts in order to gain injurious and harmful judgments and to renege on its contractual obligations of indemnification.

8.  The debtor has requested numerous times the use and release of its property in almost all of its correspondence with the Court, the Sheriff, and the like. One just need review any of the pleadings to the Court to notice the MAC's continuous plea for its property. Whatever so-called token efforts in which are referred to by BRG would **not** be too late, if allowed. It would also seem that BRG has taken it upon itself to act as a Judge and forego the Court by adjudicating the requests of the debtor.

9.  The debtor never received an invitation to remove its property. Once again BRG lies to the Court. BRG further insults and attempts to prejudice the Court, as it does not even attach any exhibits that would support its claims. At no point did MAC have the option to remove its property; in fact, Sheriff Steve Donnolly was instructed to repossess the property at 12 "A" street and not allow the debtor into the property or to allow the debtor to remove any property therefrom. Again Mr. Rezendes misstates himself, as he has provided no evidence either to support his outrageous claims, or to defend the serious claims against him and his clients. Again, Sheriff Donnolly will testify in support of the assertions of the debtor and the actions of RIA, BRG, and McConchie in this matter.

10. Without using such a demeaning vernacular, the MAC's agenda is to provide its creditors with their contractually bound protection under the Acquisition Agreements that provide for full and unfettered indemnification. Unless clairvoyant, BRG again misstates falsely issues to the Court. **The MAC has no interest in harassment, but only to attain its contractual protection under the aforementioned agreements, and to make sure that RIA, BRG, and McConchie provide the MAC's creditors with their due protection. (EMPHASIS SUPPLIED)**

11. MAC's opposition through Mr. Frabizio is duly authorized due to the MAC's proximate position financially and in Bankruptcy. The MAC has no official property and therefor does not exist as an operating business entity. The MAC's use of counsel, or not, does not take from the substance put forth in this Court. As well Mr. Frabizio has resigned his position as President and CEO of the MAC.

4

12. Through its acknowledgment of Mr. Frabizio's pleadings, BRG, RIA, and McConchie have therefore made Mr. Frabizio's participation germane and admissible. **In addition, BRG, RIA, McConchie still fail, although it would be barred by the Rule of Preclusion, in accordance with Fed. R. Civil P. 37(b)(2)(B), now to offer an argument why they are not contractually bound to indemnify the debtor in full, thus satisfying all debts thereof.** (EMPHASIS SUPPLIED)

13. BRG, RIA, and McConchie again, through Mr. Rezendes, have seriously breached their oath to the Court. BRG, RIA, and McConchie, through Mr. Rezendes have continued with their pattern of misstatements of non-contextual utterances to contaminate this Honorable Court with their definitive perjury throughout these proceedings.

14. Finally BRG, RIA, and McConchie make no formal prayer or pleading for relief or in support of their Assent to the Trustee's Motion, but only seem attempt to prejudice this Honorable Court with their contemptuous behavior. Insofar as they purport to Assent to the Trustees Motion to Dismiss, they make no legitimate Assent to the Motion and the heading of the aforementioned document is false and should be stricken from the record.

RIA, BRG, McConchie have an ulterior motives of harassment and the reneging of its obligation to indemnify the debtor. It is clear that Mr. Rezendes does not respect the Court, or the system for which it stands. Mr. Rezendes and his clients have taken this opportunity to unethically testify and lie to the Court. Mr. Rezendes and his clients have continuously worked to destroy the founding of a young company. The tactics employed by RIA, BRG, McConchie are despicable, unethical, and most likely illegal. Proof has been provided to the Court of the "$7,000,000.00" of which the aforementioned boasts and the clear provisions of Indemnification that they are contractually bound to oblige. Not once has RIA, BRG, or McConchie been able to argue legitimately about the ability to indemnify with their "$7,000,000.00" or against the issue that they must provide indemnification to the debtor and satisfy all debts to the creditors.

RIA, BRG, McConchie now are attempting to lie to the Court, in efforts to avoid the indemnification issues. This practice of illegal behavior has become much too frequent,

5

and must stop. Court records, reliable testimony of Court Officers, and legal contracts with RIA, BRG and McConchie will prove the debtor's case definitively.

**WHEREFORE**, the Debtor requests that this Honorable Court:

1. Denies the trustees motion to dismiss this case;

2. Hereby Order that all motions and actions on behalf of RIA, BRG, and McConchie be stricken from the record;

3. Denies the Motion of BRG due to its factual inaccuracies, malicious intent, and technical inadequacies;

4. Bar any arguments by or for BRG, RIA, or McConchie with respect to Adv. Proc. No. 00-01509 in accordance with Fed. R. Civil P. 37(b)(2)(B);

5. Order that BRG, RIA, and McConchie uphold the provisions of Indemnification as contained in the Acquisition Agreements;

6. Grant an Order of Indemnification through BRG, RIA, and McConchie;

7. Sanction BRG, RIA, McConchie and its legal counsel for its actions as clearly illustrated above;

8. That this Honorable Court Stay all issues that have been, and are now, before the Court pending the adjudication of the of the Appeal in accordance with prior Motions thereto;

9. That this Honorable Court Order the Sheriff of Middlesex County to regain possession of all of Debtor's personal property from the storage facility in Somerville MA, and release of the like so that the Debtor may comply with the wishes of the Court and the Chapter 7 Trustee to file schedules and statements of financial affairs;

10. That this Honorable Court assesses the costs of the remedies afforded Debtor as seems appropriate by the Court.

Respectfully submitted
Massachusetts Athletic Club, Inc.
**(DEBTOR)**

William V. Frabizio III

William V. Frabizio III
7 Harvard Street #230
Brookline MA 02445
Tel:    617-264-9800

6

# WILLIAM V. FRABIZIO III
### 108 WEST STREET
### NEWTON, MASSACHUSETTS 02495

_____

PHONE (617) 512-1131
FAX (617) 734-4990

November 1, 2000

**BY FIRST CLASS MAIL, POSTAGE PREPAID**

Clerk's Office
U.S. Bankruptcy Court
10 Causeway Street
Boston, MA 02222



Re:    **Debtor, Massachusetts Athletic Club, Inc.,
Case No. 00-13525 JNF**

Dear Sir or Madam:

Please find the following:

1. Debtor's Supplemental Memorandum in Support Of Its Motion To Deny
   Trustee's Motion to Dismiss Case;

2. Certificate of service sent to all attorneys of record.

Kindly docket and file the same.

Thank you.

Very truly yours,

William V. Frabizio III

Enc.:

**EXHIBIT J**

**United States Bankruptcy Court**
**District of Massachusetts**
PROCEEDING MEMORANDUM/ORDER

In re _Massachusetts Athlete_  Chapter _7_  Hearing Date _11/30/00_
_Club, Inc_   Case No. _00-13525_
   Adv. P. No._____

**Counsel Present:**
For Debtor(s)_____  ~~For Plaintiff~~/Movant(s) _Paul Reyender, Burlington Rec Group._
~~For Trustee~~ _John Desmond_  For Defendant/Respondant(s)_____
For United States Trustee_____

**Nature of Proceedings:**
_43_
____ Motion for Relief from Stay  _#45 Objection By the Debtor_
____ Motion of the ~~U.S.~~ Trustee to
   ~~Convert~~/Dismiss
____ Motion for Authority to Sell/  _#46 Assent to and Filing In Support_
   Notice of Intended Sale(Private/Public)  _OF (#43) By Racquetball Invest._
____ Adequacy of Disclosure Statement  _Assoc. and Burlington Rec. Group LLC._
____ Objections to Claims
____ Order to Show Cause  _#48- Supplemental Memorandum In Support_
____   _To (#45) By Debtor_
____   _#50- Opposition By Burlington Rec. Group,_
____   _Racquetball Investment Assoc. & James_
**Court Action:**  _McConchie To (#48)_
____ _#3_ Granted_____  Approved ____ Denied ____ Sustained
____ Overruled ____ ____ Withdrawn ____ ____ Moot
____ Continued to _____
____ Taken Under Advisement/ Briefs due _____
____ Stipulation between _____ to be filed by _____
____ Order to Show Cause: Released/Enforced
____ Proposed Order to be submitted by _____
Other Decision: _The dismissal is with prejudice_
   _under § 109 (g) (1)._
_____
_____
_____
_____
_____

So Noted:     So Ordered:    Dated: _11/30/00_

_Jeanette_     _Joan N. Feeney_
Courtroom Deputy    United States Bankruptcy Judge
ENTERED ON DOCKET
_11/30/00_

**DOCKETED**     _51_

**EXHIBIT K**

# United States Bankruptcy Court

## District of Massachusetts

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MASSACHUSETTS ATHLETIC CLUB, INC.,**
    Debtor

Chapter 7
Case No. 0-13525-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MASSACHUSETTS ATHLETIC CLUB, INC.,**

v.

Adv. P. No. 00-1509

**ATTORNEY JAMES McCONCHIE,
RACQUETBALL INVESTMENT ASSOCIATION
and BURLINGTON RECREATION GROUP, LLC,**
    Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

### ORDER

Upon consideration of 1) the Motion to Grant Immediate Stay Pending Appeal filed by William V. Frabizio ("Frabizio"), President of the above-captioned Debtor;[1] 2) the Motion for the Court to Issue an Order to Preclude filed by Frabizio; and 3) the Oppositions to the Motions filed by Attorney James McConchie, Racquetball Investment Association

---

[1] The Court observes that Frabizio appears to have confused his personal interests with those of the Debtor corporation. In Section II of the Memorandum accompanying the Motion for Immediate Stay Pending Appeal, he states, "Debtor may lose his family home...."

1





and Burlington Recreation Group, the Court finds that Frabizio is not the attorney of

record, does not represent that he is an attorney, and therefore cannot represent the Debtor

corporation pursuant to Massachusetts Local Bankruptcy Rule 9010-1(c). The Court further

finds that the Frabizio failed to mention, let alone address, the substantive grounds for the

dismissal of the above-captioned adversary proceeding, namely the Debtor's lack of

standing to pursue causes of action that are property of the Chapter 7 bankruptcy estate

and the doctrine of res judicata. Accordingly, the Court denies the Motion to Grant

Immediate Stay Pending Appeal. The Motion for the Court to Issue an Order to Preclude

is moot.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: November 6, 2000
cc: John O. Desmond, Esq., Richard W. Hynes, Esq., Paul M. Rezendes, Esq.

2

**EXHIBIT L**

MIDDLESEX, ss.    # Commonwealth of Massachusetts    SUPERIOR COURT

NO. 2000 - 2175

_Massachusetts Athletic Club Inc._    Plaintiff(s)

vs.

_Racquetball Investment Association_    Defendant(s)
_et als_

## JUDGMENT OF DISMISSAL
~~ORDER OF DEFAULT~~

This action came on to be heard at this sitting,

*And the Plaintiff(s) _____
having failed to appear and prosecute, and the defendant
appearing, it is ORDERED AND ADJUDGED that this action be
and hereby is DISMISSED, _with Prejudice_

*And the Defendant(s) _____
having failed to appear and defend this action, and the
plaintiff appearing, it is ORDERED AND ADJUDGED that a
default be and hereby is ENTERED.

BY THE COURT ___Zobel___ , J.

_Constance _____
Assistant Clerk

ENTERED: __7-12-00__

*Eliminate section not applicable

Form No.Sup.31a

**EXHIBIT M**

# United States Bankruptcy Court

## District of Massachusetts

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**MASSACHUSETTS ATHLETIC
CLUB,**
    Debtor

**Chapter 11
Case No. 00-13525-JNF**

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MASSACHUSETTS ATHLETIC
CLUB,**
    Plaintiff

**Adv. P. No. 00-1237**

v.

**BURLINGTON RECREATION
GROUP, LLC.,**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## ORDER

It appearing that the Defendant has obtained relief from the automatic stay, and, it further appearing that the relief requested by the Plaintiff/Debtor in the above captioned adversary proceeding is moot, the Debtor's Complaint shall be dismissed within 15 days of the date of this Order, unless within that time the Plaintiff/Debtor shows why the Complaint should not be dismissed.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: July 12, 2000
cc: Richard W. Hynes, Esq., Paul M. Rezendes, Esq.

ENTERED ON DOCKET
7/13/00

**DOCKETED**

7

# United States Bankruptcy Court

## District of Massachusetts

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**MASSACHUSETTS ATHLETIC
CLUB,**
     Debtor

Chapter 11
Case No. 00-13525-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MASSACHUSETTS ATHLETIC
CLUB,**
     Plaintiff

v.

Adv. P. No. 00-1237

***BURLINGTON RECREATION
GROUP, LLC,***
     Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## ORDER

Upon consideration of the Court's Order dated July 12, 2000 and no responses having been filed, the above captioned adversary proceeding is hereby dismissed.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: August 3, 2000
cc: Richard W. Hynes, Esq., Paul M. Rezended, Esq.

ENTERED ON DOCKET
8/3/00

# DOCKETED



# **EXHIBIT N**

United States Bankruptcy Court

District of Massachusetts

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
In re
**MASSACHUSETTS ATHLETIC
CLUB,**
     Debtor
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Chapter 11
Case No. 00-13525-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**MASSACHUSETTS ATHLETIC
CLUB,**
     Plaintiff

v.

**BURLINGTON RECREATION
GROUP, LLC.,**
     Defendant
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Adv. P. No. 00-1239

## ORDER

It appearing that the Defendant has obtained relief from the automatic stay, and,

it further appearing that the relief requested by the Plaintiff/Debtor in the above

captioned adversary proceeding is moot, the Debtor's Complaint shall be dismissed

within 15 days of the date of this Order, unless within that time the Plaintiff/Debtor

shows why the Complaint should not be dismissed.

By the Court,

*Joan N. Feeney*

_____

Joan N. Feeney
United States Bankruptcy Judge

Dated: July 12, 2000
cc: Richard W. Hynes, Esq., Paul M. Rezendes, Esq.

ENTERED ON DOCKET

7/13/00

# DOCKETED

8

# United States Bankruptcy Court

## District of Massachusetts

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**MASSACHUSETTS ATHLETIC
CLUB,**
      Debtor
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**Chapter 11
Case No. 00-13525-JNF**

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MASSACHUSETTS ATHLETIC
CLUB,**
      Plaintiff

v.

**BURLINGTON RECREATION
GROUP, LLC.,**
      Defendant

**Adv. P. No. 00-1239**

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

### ORDER

Upon consideration of the Court's Order dated July 12, 2000 and no responses

having been filed, the above captioned adversary proceeding is hereby dismissed.

By the Court,

_Joan N. Feeney_

_____
Joan N. Feeney
United States Bankruptcy Judge

Dated: August 3, 2000
cc: Richard W. Hynes, Esq., Paul M. Rezended, Esq.

ENTERED ON DOCKET
8/3/00

# DOCKETED

9

# **EXHIBIT O**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re                                      Chapter 7

Massachusetts Athlete Club, Inc.          Case No. 00-13525-JNF
        Debtor

### TRUSTEE'S MOTION TO DISMISS CASE

John O. Desmond, Trustee, requests that the Court
dismiss this case, and enter an order enjoining the Debtor
from filing another bankruptcy petition for 180 days
pursuant to §109(g), and the trustee states the following in
support of the motion:

1.    The debtor filed a voluntary petition under Chapter
11 of the Bankruptcy Code on May 18, 2000.  The court set a
deadline of June 2 for the filing of schedules and statement
of financial affairs.  No schedules or statement of
financial affairs have been filed in this case.

2.    The case was converted to Chapter 7 on the motion
of the U.S. Trustee on August 2, 2000.  The §341 meeting was
scheduled for September 5, 2000.  Neither an officer of the
debtor nor its counsel was present at the §341 meeting.
Attorney Paul Rezendes was present at the §341 meeting.

3.    The Debtor has failed to comply with the court's
order to file schedules.  The Debtor has failed to cooperate
with the trustee's investigation of the debtor's affairs.
The debtor has unreasonably delayed the administration of
this estate, all to the detriment and prejudice of the
trustee and the creditors.

WHEREFORE, the trustee requests that the Court dismiss
this case, and enter an order enjoining the Debtor from
filing another bankruptcy petition for 180 days pursuant to
§109(g)

Dated:        10/19/00

John O. Desmond (BBO 554580)
Trustee
24 Union Avenue
Framingham, MA 01702
Telephone (508) 879-9638

DOCKETED

43

**<u>EXHIBIT P</u>**

𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔅𝔞𝔫𝔨𝔯𝔲𝔭𝔱𝔠𝔶 𝔔𝔬𝔲𝔯𝔱

𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔐𝔞𝔰𝔰𝔞𝔠𝔥𝔲𝔰𝔢𝔱𝔱𝔰

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MASSACHUSETTS ATHLETIC CLUB, INC.,**
Debtor

Chapter 7
Case No. 0-13525-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MASSACHUSETTS ATHLETIC CLUB, INC.,**

v.

Adv. P. No. 00-1509

**ATTORNEY JAMES McCONCHIE,
RACQUETBALL INVESTMENT ASSOCIATION
and BURLINGTON RECREATION GROUP, LLC,**
Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

### ORDER

Whereas, on May 18, 2000, the Debtor filed a voluntary Chapter 11 petition; and

Whereas, on May 23, 2000, the Debtor filed an adversary proceeding (Adv. P. No. 00-1239) against the Burlington Recreation Group LLC, captioned "Adversarial Motion to Quash Eviction Execution and for Remedies Enumerated in Acquisition Agreements" (the "Motion to Quash"); and

Whereas, in Adv. P. No. 00-1239, the Debtor referenced two agreements with Attorney James McConchie ("McConchie"), principal of Burlington Recreation Group LLC

1

DOCKETED          5

("BRG") and Racquetball Investment Association ("RIA"), specifically Article VI of the Agreements pursuant to which McConchie allegedly agreed to indemnify the Debtor; and

Whereas, on May 23, 2000, the Court granted the BRG relief from the automatic stay; and

Whereas, on May 25, 2000, Bankruptcy Judge William C. Hillman denied the Debtor's Motion to Quash; and

Whereas, on July 12, 2000, the Court entered an order in Adv. P. No. 00-1329 requiring the Debtor to show cause in writing within 15 days of the date of the order why its complaint against the BRG should not be dismissed; and

Whereas, on August 2, 2000, the Court converted the Debtor's Chapter 11 case to a case under Chapter 7; and

Whereas, on August 3, 2000, the Court dismissed Adv. P. No. 00-1329 as the Debtor had failed to file a response to the Court's order to show cause; and

Whereas, on September 28, 2000, the Debtor filed a "complaint" (Adv. P. No. 1509), captioned "Emergency Adversarial Motion to Compel Attorney James McConchie, Racquetball Investment Association, and Burlington Recreation Group, LLC to Indemnify Debtor and for Order Allowing Debtor to Recover Its Personal Property" (the "Motion to Compel") in which cited Article VI of two Acquisition Agreements; and

Whereas, on September 28, 2000, the Court entered the following order:

> The Court shall treat this motion, in part, as a motion to compel the Trustee to abandon property. The motion is denied for failure to serve the Chapter 7 Trustee. To the extent the motion purports to be an adversary proceeding, the motion is denied for failure to use Official Form 16D;

2

and

Whereas, on October 3, 2000 the Debtor refiled the Motion to Compel, naming James McConchie, RIA and BRG as defendants; and

Whereas, counsel to the Debtor indicated in a cover letter that he had served the Chapter 7 Trustee, but he did not file a certificate of service reflecting service of the Motion to Compel on the Chapter 7 Trustee; and

Whereas, the Debtor has failed to file Schedules and a Statement of Financial Affairs and thus has failed to identify potential causes of action against McConchie, RIA and BRG; and

Whereas, any causes of action against McConchie, RIA and BRG are property of the Debtor's bankruptcy estate, 11 U.S.C. § 541; and

Whereas, the Chapter 7 Trustee, not the Debtor, has standing to pursue any such causes of action; and

Whereas, the Debtor seeks essentially the same relief through Adv. P. No. 00-1509 as it did in Adv. P. No. 00-1329; and

Whereas, the Debtor lacks standing to pursue Adv. P. No. 00-1509 as the Chapter 7 Trustee has not abandoned assets of this bankruptcy estate; and

Whereas, the Debtor has failed to demonstrate that the dismissal of Adv. P. No. 00-1329 is not *res judicata* with respect to its purported claims in Adv. P. No. 00-1509; and

Whereas, the Debtor has failed to demonstrate that it is not equitably estopped from asserting claims that it has failed to schedule,

3

Now, therefore, the Court *sua sponte* dismisses Adv. P. No. 00-1509 with prejudice.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: October 10, 2000
cc: John O. Desmond, Esq., Richard W. Hynes, Esq., Paul M. Rezendes, Esq.

4



UNITED STATES BANKRUPTCY APPELLATE PANEL
FOR THE FIRST CIRCUIT

```
In re:                          *
MASSACHUSETTS ATHLETIC          *     BAP NO. MB 00-114
   CLUB, INC.,                  *
        Debtor.                 *
-----------------------------*
MASSACHUSETTS ATHLETIC          *     Bankruptcy No. 00-13525-JNF
   CLUB, INC.,                  *
        Appellant,              *
                                *
           v.                   *
                                *
ATTORNEY JAMES MCCONCHIE,       *
RACQUETBALL INVESTMENT,         *
   ASSOCIATION and              *
BURLINGTON RECREATION           *
   GROUP, L.L.C.,               *
        Appellees.              *
-----------------------------*
```

A TRUE COPY ATTEST
CLERK
U.S. BANKRUPTCY APPELLATE
PANEL OF THE FIRST CIRCUIT
BY _Pamela Rendel_ 1/9/01
DEPUTY CLERK

### ORDER OF DISMISSAL

For failure of the appellant to comply with the Conditional Order of Dismissal, issued on November 30, 2000, it is hereby ORDERED that the above-entitled appeal is DISMISSED for failure to prosecute pursuant to Fed. R. Bankr. P. 8001(a) and 1st Cir. BAP R. 8070-1.

A certified copy of this order sent to the Bankruptcy Court shall constitute the mandate of the Panel.

FOR THE PANEL:

PAMELA L. RENDEL
Deputy Clerk

DATED: January 9, 2001

DOCKETED

21